Jim Mackie, SBN 013314
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., SBN 00504800
3430 E. Sunrise Drive, Suite 220
Tucson, AZ 85718
Telephone: 520.544.0300
Fax: 520.544.9675
jim.mackie@ogletreedeakins.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Stone,<br><br>        Plaintiff,<br><br>  vs.<br><br>JPMorgan Chase Short-Term Disability Plan; JPMorgan Chase & Company; JPMorgan Chase Short-Term Disability Plan Appeals Committee; JPMorgan Chase Disability Management Services,<br><br>        Defendants. | No.<br><br>**EXHIBITS TO NOTICE OF REMOVAL** |

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
3430 E. SUNRISE DRIVE, SUITE 220
TUCSON, AZ 85718
TELEPHONE: 520.544.0300

# EXHIBIT A

Jim Mackie, SBN 013314
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., SBN 00504800
3430 E. Sunrise Drive, Suite 220
Tucson, AZ  85718
Telephone:  520.544.0300
Fax:  520.544.9675
jim.mackie@ogletreedeakins.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Elizabeth Stone, | No. |
|---|---|
| Plaintiff, | **DECLARATION OF MAY YANG-LEE** |
| vs. | |
| JPMorgan Chase Short-Term Disability Plan; JPMorgan Chase & Company; JPMorgan Chase Short-Term Disability Plan Appeals Committee; JPMorgan Chase Disability Management Services, | |
| Defendants. | |

May Yang-Lee, pursuant to 28 U.S.C. §1746(2), declares under penalty of perjury the following:

1.  I am over the age of 18, and I have personal knowledge of, and am fully competent to testify to, the matters set forth herein.

2.  I am the Manager of Disability Management Services for JPMorgan Chase Bank, N.A.

3.  Through my position with Disability Management Services, I am familiar with the

EXHIBIT A

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
3450 E. Sunrise Drive, Suite 220
Tucson, AZ 85718
Telephone: 520.544.0300

JPMorgan Chase Short-Term Disability Plan ("STD Plan") applicable to Plaintiff. Copies of the documents governing the STD Plan at times relevant to Plaintiff's lawsuit are attached as "Exhibit 1."

4.  The STD Plan provides that STD benefits may continue beyond an individual's employment termination date. Specifically, it states, "If you voluntarily end your employment during a period of short-term disability leave or if you are terminated due to job elimination, you will continue to receive short-term disability pay for the remainder of the leave duration for which you are eligible under the JPMorgan Chase Short-Term Disability Plan." [Exhibit 1 - Summary Plan Description, p. 22] The STD Plan also allows for terminated employees who are disabled on their employment termination dates to apply and qualify for plan benefits after they terminate employment.

5.  I am familiar with and the administration of and regulatory filings for the STD Plan. The Plan Administration document applicable to the STD Plan is attached as "Exhibit 2."

6.  The Plan Sponsor files form 5500 Annual Returns/Reports of Employee Benefit Plan for the STD Plan.

7.  Plaintiff's claim under the STD Plan was administered in accordance with the established procedures. The letter advising Plaintiff that her claim had been denied (attached as "Exhibit 3") included specific information about her ERISA rights, including the right to appeal the decision.

8.  Plaintiff exercised her rights and appealed the denial of her short-term disability

2

claim and her appeal was considered and decided by the Plan Appeals Committee. The final decision letter ("Exhibit 4") again advised Plaintiff of her rights under ERISA.

9. The STD Plan is administered in New York, Illinois, and Florida.

Pursuant to 28 U.S.C. § 1746, the undersigned declares under the penalty of perjury that the foregoing is true and correct.

Executed this 12 day of January, 2017.

May Yang-Lee

# The Short-Term Disability Plan

The JPMorgan Chase Short-Term Disability Plan (the "STD Plan") is designed to provide you with time off and short-term disability pay if you become unable to work because of an approved disability caused by illness or injury.

Based on your years of recognized service, the plan may provide short-term disability pay equal to all or a portion of your eligible compensation for up to 25 weeks per qualified disabling event. Employees in New Jersey may be entitled to 26 weeks of paid statutory STD benefits.

This section of *Your Guide to Benefits at JPMorgan Chase* will provide you with a better understanding of how the Short-Term Disability Plan works, including how and when benefits are paid. Other types of leave may be applicable to your situation; for more information, please consult the Leave of Absence policies, available at **me@jpmc** > HR Policies > Leaves of Absence.

Leave taken under the STD Plan may run concurrently with other types of leave, including qualifying leave under the Family and Medical Leave Policy. The requirements for each type of leave must be satisfied in order for leaves to run concurrently.

> **Update: Your Guide to Benefits at JPMorgan Chase**
>
> *This document is your summary plan description of the JPMorgan Chase Short-Term Disability Plan. The U.S. Department of Labor requires JPMorgan Chase to routinely provide benefits plan summaries to plan participants. Please retain this information for your records.*
>
> *This document does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is a discrepancy between the official plan documents and this summary, the official plan documents will govern.*
>
> *Be sure to read the "About This Guide" section and the "Plan Administration" section for more important details about the plan and this description.*

## Questions?

For questions about the Short-Term Disability Plan or to report a short-term disability, contact *accessHR*:

- 1-877-JPMChase (1-877-576-2427)
- Choose option 4, then option 2

If calling from outside the United States:

- 1-212-552-5100 (GDP# 352-5100)

Service Representatives are available from 8 a.m. to 8 p.m. Eastern Time, Monday through Friday, except certain U.S. holidays.

You can also obtain answers to your questions 24 hours a day, seven days a week online at **My Health**. **My Health** provides one-stop access to your benefits information. Simply use your Single Sign-On password to access the Benefits Web Center from **My Health**. Go to **My Health** > My Other Benefits > Benefits Web Center.

**From work: My Health** from the intranet

**From home: myhealth.jpmorganchase.com**

**Please Note:** Spouses/domestic partners can access **My Health** from the internet.

EXHIBIT 1

## Table of Contents       Page

| | |
|---|---|
| **Important Terms** | 3 |
| **Some Quick Facts** | 8 |
| **Participating in the Short-Term Disability Plan** | 9 |
|    Eligibility | 9 |
|    Short-Term Disability Leave Duration and Pay | 9 |
|    Cost of Coverage | 10 |
| **How the Short-Term Disability Plan Works** | 11 |
|    Length and Amount of Benefits | 11 |
|    Statutory Benefits | 12 |
|    State Disability Benefits | 13 |
|    Temporary Reduced Schedule Return to Work/Partial Short-Term Disability Pay | 14 |
|    Recurrent Disabilities | 15 |
|    Multiple Short-Term Disability Leaves | 15 |
| **What Is *Not* Covered** | 17 |
| **Claiming Benefits** | 18 |
|    How to File Claims | 18 |
|    Appealing Short-Term Disability Claim Denials | 21 |
|    For Employees Who Work in the State of New Jersey | 21 |
| **When Coverage Ends** | 22 |
| **Additional Plan Information** | 23 |
| **Right to Amend** | 24 |

*The JPMorgan Chase U.S. Benefits Program is available to most employees on a U.S. payroll who are regularly scheduled to work 20 hours or more a week and who are employed by JPMorgan Chase & Co. or one of its subsidiaries to the extent that such subsidiary has adopted the JPMorgan Chase U.S. Benefits Program. This information does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is any discrepancy between this information and the governing documents, the governing documents will control. JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time. The JPMorgan Chase U.S. Benefits Program does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.*

# Important Terms

As you read this summary of the JPMorgan Chase Short-Term Disability Plan, you'll come across some important terms related to the plan. To help you better understand the plan, many of those important terms are defined here.

| Term | Definition |
|------|-----------|
| **Actively-at-Work or on an Active Employment Basis** | Performing all the duties that pertain to your work on a regular basis at the place where they are normally performed or where they're required to be performed by JPMorgan Chase. |
| **Claims Administrator** | JPMorgan Chase Disability Management Services ("DMS") is the claims administrator for the Short-Term Disability Plan, a self-insured plan, as it pertains to non-work-related (non-occupational) illnesses or injuries. DMS also administers the statutory disability plans in New York, New Jersey, and Hawaii, and is the claims administrator in all states for time off approved under the Family and Medical Leave Policy. For additional information, please refer to the Family and Medical Leave Policy, available at **me@jpmc** > HR Policies > Leaves of Absence. |
| **Disability** | For purposes of the Short-Term Disability Plan, "disability" is defined as a period of illness or injury that continues for eight or more consecutive calendar days during which you are unable to perform the material and substantial duties of your position on an active employment basis. A medical certification by a licensed physician must show that you are disabled, and you must be under the care of a licensed physician during your period of illness or injury. You must also be determined to be disabled by DMS, the claims administrator for the Short-Term Disability Plan, for non-work-related illnesses or injuries or you must be approved as disabled in accordance with the applicable state Workers' Compensation law for work-related illnesses or injuries. The claims administrator may use any appropriate information, including surveillance information, to determine whether you are disabled. Furthermore, you are not eligible for leave or pay covered under the STD Plan if the sole reason you cannot report to work is due to your inability to commute to the workplace. (If this is an issue that affects you, please see the Accommodating Disabilities and Temporary Work Restrictions Policy, available at **me@jpmc** > HR Policies > Employee Assistance.) |
| **Eligible Compensation for Short-Term Disability** | Generally, your annual base salary plus applicable job differential pay (e.g., shift pay) up to $400,000 per year. It does not include any annual bonuses, overtime, special recognition, or other incentive awards you might receive. In certain situations, your eligible compensation may include other cash earnings (e.g., commissions and draws) paid under certain non-annual incentive plans that provide compensation in lieu of base salary.<br><br>Separate definitions other than what is described here may apply to employees in certain positions who are paid on a draw-and-commission basis. If this situation applies to you, you will be notified. |

| Term | Definition |
| --- | --- |
| **Full-Time Employee** (For purposes of the Short-Term Disability Plan) | An employee paid through a U.S. payroll of the firm, subject to FICA withholding, and regularly scheduled to work 40 hours per week. Full-time employees include employees who are paid on a salaried basis or an hourly basis, as well as employees who are eligible for draws or commissions. Employees who are eligible for draws or commissions are paid according to line of business commission plans. Full-time employees are generally eligible to participate in the firm's benefits programs and for paid time off, subject to such programs' eligibility criteria.<br>• *Full-time salaried employees* are exempt employees paid on a salaried basis.<br>• *Full-time hourly-paid employees* are overtime-eligible employees paid on an hourly basis. |
| **Introductory Period** | The first 90 days of employment for newly hired and re-employed employees at JPMorgan Chase. |
| **Licensed Physician** | A person who is not your relative or family member and:<br>• Is determined by the Plan Administrator or its delegate to be qualified to render an opinion about your physical or mental condition as it relates to your claim of disability;<br>• Is a healthcare provider or mental health provider licensed in the jurisdiction in which he or she practices and is determined by the claims administrator, in its sole discretion, to be qualified and appropriate under the circumstances to provide medical certification; and<br>• Whose primary practice is treating patients. |
| **Medical Certification** | Certification from your licensed physician confirming the status of your medical condition as it relates to your claim of disability and objective documentation that your medical condition disables you from performing your job. |
| **Non-Occupational Injury/Illness** | A non-occupational injury/illness means an injury, sickness, or disease not related to your employment. |
| **Occupational Injury/Illness** | An occupational injury or illness extends to all injuries or diseases that arise out of and are in the course and scope of employment. If you have an occupational illness or injury, you may be eligible for Workers' Compensation benefits, including paid medical expenses and compensation for lost work time. |

| Term | Definition |
|---|---|
| **Recognized Service** | The period of service with JPMorgan Chase that may include service with heritage organizations (including predecessors of JPMorgan Chase) as outlined by the following conditions:<br><br>**If employed as of July 1, 2004:**<br><br>If employed by JPMorgan Chase & Co. or one of its participating subsidiaries or Bank One Corporation or one of its participating subsidiaries as of the date of the merger (July 1, 2004), only prior service with the specific heritage organization employing the individual on that merger date (July 1, 2004) will count as recognized service, as follows:<br><br>• If employed by JPMorgan Chase & Co. or one of its participating subsidiaries as of July 1, 2004, service defined as cumulative service under heritage JPMorgan Chase Human Resources policies (including pre-acquisition service in identified situations) will count as recognized service; or<br><br>• If employed by Bank One Corporation or one of its participating subsidiaries as of July 1, 2004, recognized service will be determined by the Bank One Service Date (as documented in official company records).<br><br>**If re-employed during the period July 2, 2004 through June 30, 2005:**<br><br>If not employed by a heritage organization on the merger date (July 1, 2004) and re-employed during the period July 2, 2004 through June 30, 2005, the applicable service provisions referenced above will be those of the heritage organization that most recently employed the individual prior to his/her re-employment date.<br><br>**If re-employed on or after July 1, 2005:**<br><br>For individuals who were employed by the firm as of July 1, 2005, experience a subsequent break in service and are re-employed by the firm:<br><br>• If the individual's break in employment ending on or after July 1, 2005, is 12 months or less, his/her service will be considered uninterrupted for purposes of recognized service. In other words, the period of the break in employment ending on or after July 1, 2005 counts toward the period of recognized service.<br><br>• If the individual's break in employment ending on or after July 1, 2005, is more than 12 months, recognized service upon rehire will include recognized service as in effect on the last day of the previous employment period.<br><br>For individuals who were not employed as of June 30, 2005 but who are re-employed on or after July 1, 2005, the employer for purposes of recognized service is the employer who most recently employed the individual prior to the re-employment date.<br><br>• If the individual's break in employment, ending on or after July 1, 2005, is 12 months or less, his/her service will be considered uninterrupted for purposes of recognized service. In other words, the period of the break in employment counts toward the period of recognized service.<br><br>• If the individual's break in employment, ending on or after July 1, 2005, is more than 12 months:<br><br>— For rehires whose last employer before the break was heritage JPMorgan Chase, recognized service upon rehire will include service defined as cumulative service under heritage JPMorgan Chase Human Resources policies during the previous employment period plus an adjustment for pre-acquisition service in identified situations.<br><br>— For rehires whose last employer before the break was heritage Bank One, recognized service will include service denoted by the employee's Bank One Service Date as in effect on the last day of the previous employment period. |

| Term | Definition |
|---|---|
| | **For heritage Bear Stearns employees who were employed by the firm as of August 31, 2008:**<br>• Recognized Service will be determined by the Bear Stearns Service Date (as documented in official company records).<br>**For heritage Bear Stearns employees re-employed on or after September 1, 2008 (whose last employer before the break in service was heritage Bear Stearns versus JPMorgan Chase):**<br>• If the individual's break in employment, ending on or after September 1, 2008, is 12 months or less, his/her service will be considered uninterrupted for purposes of Recognized Service. In other words, the period of the break in employment counts toward the period of Recognized Service.<br>• If the individual's break in employment, ending on or after September 1, 2008, is more than 12 months, Recognized Service upon rehire will include prior Bear Stearns service, excluding the period of the break in employment.<br>**For heritage Washington Mutual employees who were employed by the firm as of June 30, 2009:**<br>• Recognized Service will be determined by the Washington Mutual Service Date (as documented in official company records).<br>**For heritage Washington Mutual employees re-employed on or after July 1, 2009 (whose last employer before the break in service was heritage Washington Mutual versus JPMorgan Chase):**<br>• If the individual's break in employment, ending on or after July 1, 2009, **is 12 months or less**, his/her service will be considered uninterrupted for purposes of Recognized Service. In other words, the period of the break in employment counts toward the period of Recognized Service.<br>• If the individual's break in employment, ending on or after July 1, 2009, **is more than 12 months**, Recognized Service upon rehire will include prior Washington Mutual service, excluding the period of the break in employment.<br>Service with a company at the time of its acquisition (as opposed to a merger) will count toward recognized service, if so provided under the terms of the applicable purchase agreement. |
| **Temporary Employee (For purposes of the Short-Term Disability Plan)** | Employees hired onto the U.S. JPMorgan Chase payroll for a specific length of time or for a temporary project, typically for less than six months. In general, these employees are paid on an hourly basis and are not eligible to participate in certain JPMorgan Chase benefit plans and paid time off policies. |
| **Under the Care of a Licensed Physician** | You are considered to be under the care of a licensed physician when you:<br>• Personally visit a licensed physician as frequently as is medically required (according to generally accepted medical standards) to effectively manage and treat your disability condition(s);<br>• Are receiving the most appropriate treatment and care (which conforms with generally accepted medical standards for your disability condition(s)), by a licensed physician whose specialty or experience is the most appropriate for your disability; and<br>• Are receiving active treatment from a licensed healthcare provider on a regular basis that is appropriate for your disability, as determined by the claims administrator. |

| Term | Definition |
|------|-----------|
| **Wait Period** | The first week of short-term disability leave is generally a one-week wait period (i.e., seven consecutive calendar days) before short-term disability pay begins, unless otherwise indicated by state statutory requirements. |
| | If your short-term disability leave is due to a non-work-related illness or injury, you must apply any available sick time as pay during this first week of short-term disability leave. If your available sick time is exhausted, where allowable by state law, you must apply available personal days and floating holidays, if applicable, as well as any accrued and unused vacation as pay during the wait period. In addition, at your request, JPMorgan Chase will advance you unaccrued vacation time for the calendar year in which your leave begins for use during your one-week wait period. |
| | If your short-term disability leave is due to a work-related illness or injury, a Workers' Compensation state-mandated wait period may also apply and will run concurrently with the STD Plan wait period. Furthermore, you may, but are not required to, apply any of your available paid time off as pay during the wait period. If all of your paid time off is exhausted, the applicable portion of the first week of your short-term disability or Workers' Compensation leave is unpaid. For more information, please refer to the Time Away from Work Policies, available at **me@jpmc** > HR Policies > Time Away from Work. |
| | **Please Note:** |
| | • Both overtime-eligible and exempt employees must record their available paid time off in the Time and Attendance System (TAS) in order for it to be paid. |
| | • JPMorgan Chase advanced you unaccrued vacation time for a wait period and your employment later terminates, any vacation time that was paid to you but has not been accrued by your termination date will be considered a salary advance and will be recovered at termination. |
| | • The STD Plan does not provide for unpaid disability leave.  Please consult the Short-Term Disability Leave Policy for information on unpaid disability leave. |
| **Workers' Compensation Insurance Program** | Workers' Compensation insurance provides medical, disability, and other statutory benefits for employee illnesses and injuries arising out of and in the course and scope of work. |
| | Where applicable, short-term disability pay benefits may supplement a Workers' Compensation wage replacement benefit. Workers' Compensation claims are approved in accordance with applicable state Workers' Compensation law. If a Workers' Compensation claim is approved, the approval will also serve as the authorization of applicable pay benefits under the STD Plan. |
| | If a Workers' Compensation claim is denied, the leave will still be considered under the STD Plan and will be required to meet the requirements of the STD plan in order to qualify as paid leave. |
| | For further information about JPMorgan Chase's Workers' Compensation administrators, please go to: FWS > Corporate Finance Groups > Global Treasury > Corporate Insurance Services > Workers' Compensation Claims Reporting. |

# Some Quick Facts

**Your Coverage**

The Short-Term Disability Plan provides time off, and if eligible, financial protection of full or partial pay for approved periods of disability.

- Full-time and part-time employees who are regularly scheduled to work 20 or more hours per week may receive up to 26 weeks of time off for each approved Short-Term Disability Leave.

- Part-time employees who are regularly scheduled to work less than 20 hours per week may receive up to 60 days of time off for each approved Short-Term Disability Leave.

- Full-time and part-time employees who are regularly scheduled to work 20 or more hours per week may be eligible to receive short-term disability pay at either 100% or 60% pay in accordance with the "Short-Term Disability Pay Schedule" on page 11 (up to 25 weeks for each approved disability leave – please see "Multiple Short-Term Disability Leaves" on page 15 to learn how the 25 weeks are counted in cases of multiple disabilities during a calendar year).

- Employees who are approved for short-term disability pay will be paid according to the number of regular work hours in the pay period (which could vary each pay period).

- For example, if you are a full-time exempt employee you may receive pay for 80 hours in one pay period, and 88 or 96 hours in another pay period depending on the number of days in each pay period (i.e., 10, 11 or 12 respectively).

- The STD Plan does not provide for unpaid disability leave. Please consult the Short-Term Disability Leave Policy for information on unpaid disability leave.

- Employees who work in New Jersey may receive 100% or 66.67% of pay in accordance with state statutory benefits.

Short-term disability pay is payable only if your claim is approved for short-term disability or Workers' Compensation benefits. You may not receive more than 100% of your pay between any non-occupational state disability or occupational Workers' Compensation disability benefits and the short-term disability pay you may be eligible to receive under the STD Plan. The claims administrator has the discretionary authority to determine employees' short-term disability pay.

# Participating in the Short-Term Disability Plan

The Short-Term Disability Plan provides time off and short-term disability pay to eligible employees who have an approved disability and are unable to work. The general guidelines of the JPMorgan Chase Short-Term Disability Plan are described below.

## Eligibility

You are eligible for short-term disability leave if:

- You are an employee on a U.S. payroll of the firm, subject to FICA withholding;

- You are actively at work or are on a leave of absence approved under the Family and Medical Leave Policy, Parental Leave Policy, are already on an approved short-term disability leave when you have another need for short-term disability leave; or you are in a job-search period following a leave of absence, and

- You file your completed claim within 30 calendar days of the first day of absence and it is approved by the appropriate claims administrator.

The following individuals (or other similarly situated individuals) are not eligible for short-term disability pay under the STD Plan, even if they are later found by a court order or government entity to be "common law employees" of a participating employer:

- Independent contractors, agents, and their employees;

- Part-time employees regularly scheduled to work less than 20 hours per week;

- Interns; and/or

- Leased, temporary, and occasional/seasonal employees.

## Short-Term Disability Leave Duration and Pay

When you take a Short-Term Disability Leave, your maximum short-term disability leave duration (i.e., the maximum amount of leave time available for each short-term disability leave you take), is determined by your employment classification. Depending upon your employment classification and length of service, you may be eligible for short-term disability pay, as described below.

**If you are regularly scheduled to work 20 hours or more per week:**

- You are eligible for up to **26 weeks** of leave per approved disability.

- Generally, up to **25 weeks** of your short-term disability leave is **paid** (see "Short-Term Disability Pay Schedule" on page <u>11</u>) if you:
  - are a full-time employee who has completed 90 days of employment (i.e., the Introductory Period, as defined under "Important Terms" beginning on page <u>3</u>); or
  - are a part-time employee who is regularly scheduled to work 20 or more hours per week who has completed two years of Recognized Service (please see "Important Terms" beginning on page <u>3</u> for the definition of "Recognized Service").

> **For More Information on Time Off Policies**
>
> *JPMorgan Chase offers a variety of time-off and human resources policies that complement the Short-Term Disability Plan. For more information on these policies, please refer to the* Time Away from Work Policies, *available at* **me@jpmc** > HR Policies >Time Away from Work.
>
> *If your Short-Term Disability is related to childbirth, the Parental Leave Policy and the Family and Medical Leave Policy may also apply to you. For more information on these policies, please refer to the Leave of Absence policies, available at* **me@jpmc** > HR Policies > Leaves of Absence.

&mdash; The STD Plan does not provide for unpaid disability leave. Please consult the Short-Term Disability Leave Policy for information on unpaid disability leave.

**Please Note:** If your short-term disability leave is denied and you are not approved for time off under the Family and Medical Leave Policy or Parental Leave Policy, you are not eligible for subsequent short-term disability leave unless you have returned to work. For additional information, please refer to the "Return from Leave" section of the Short-Term Disability Leave Policy, available at **me@jpmc** > HR Policies > Leaves of Absence.

## Cost of Coverage

JPMorgan Chase does not charge any costs to employees for their Short-Term Disability Plan benefits. As a result, any paid leave you receive through the plan would be taxable.

# How the Short-Term Disability Plan Works

## Length and Amount of Benefits

If you are an eligible employee and suffer a non-occupational illness or injury, short-term disability pay under the Short-Term Disability Plan will not begin immediately. No benefits under the plan are available until you have been disabled for seven consecutive calendar days (the "Wait Period," as defined under "Important Terms" beginning on page 3). This means that you will not receive pay for those days unless you have paid time off available to you and you properly record the paid time off in the Time and Attendance System (TAS).

If you meet the eligibility criteria for short-term disability pay described on 9, beginning on the eighth consecutive calendar day of your short-term disability leave you may be eligible to receive short-term disability pay at either 100% or 60% pay (for up to 25 weeks for each approved disability), in accordance with the Short-Term Disability Pay Schedule below. (In certain instances, employees may receive short-term disability pay at a higher percentage of pay than 60%, in accordance with applicable statutory requirements in their state.)

The number of weeks of short-term disability pay at 100% or 60% pay for which you may be eligible is determined by your completed years of recognized service as of the beginning of your approved short-term disability leave and the number of weeks of short-term disability pay that you may have already received in the calendar year in which your short-term disability begins. If you have multiple short-term disability leaves that begin within the same calendar year, you will receive the 60% benefit once you have reached the maximum number of weeks at 100% within the calendar year (please see "Multiple Short-Term Disability Leaves" on page 15).

> **The Long-Term Disability Plan**
>
> *Should you continue to be disabled longer than 26 consecutive weeks, you may be eligible to receive benefits under the Long-Term Disability (LTD) Plan if, prior to becoming disabled, you either had JPMorgan Chase-provided LTD coverage or you elected LTD coverage, and your disability is approved by the LTD claims administrator.*

## Short-Term Disability Pay Schedule*

| Years of Recognized Service | Weeks at 100% Pay Within a Calendar Year | Weeks at 60% Pay |
|---|---|---|
| Less than 1 | 0 | 25 |
| 1–2 | 4 | 21 |
| 3–4 | 7 | 18 |
| 5–6 | 10 | 15 |
| 7–9 | 13 | 12 |
| 10–19 | 16 | 9 |
| 20 or more | 25 | 0 |

\* Full-time employees, including re-employed individuals, must complete the Introductory Period before the beginning of the short-term disability leave to be eligible for short-term disability pay; part-time employees who are regularly scheduled to work 20 or more hours per week must complete two years of Recognized Service before the beginning of the short-term disability leave to be eligible for short-term disability pay. Re-employed part-time employees who are regularly scheduled to work 20 or more hours per week must complete the Introductory Period following their re-employment date to be eligible to receive short-term disability pay, even if they previously satisfied the two-year recognized service requirement. (Please see "Important Terms" beginning on page 3 for the definition of "Introductory Period" and "Recognized Service.")

Please note the following restrictions with respect to short-term disability pay:

- Eligible compensation greater than $400,000 per year is disregarded for purposes of determining short-term disability pay.

- You may not apply any of your available paid time off while you are receiving short-term disability pay, including to benefits that are provided on a partial pay basis (e.g., 60% of pay).

- Employees who are approved for short-term disability pay will be paid according to the number of regular work hours in the pay period (which could vary each pay period).

- For example, if you are a full-time exempt employee you may receive pay for 80 hours in one pay period, and 88 or 96 hours in another pay period depending on the number of days in each pay period (i.e., 10, 11 or 12 respectively).

- If it is determined that your short-term disability pay benefit was underpaid, you'll be paid the additional amount. If it is determined that your disability pay benefit was overpaid, you will be responsible for repaying any excess payments you received. Failure to do so may result in corrective action, including termination of employment. JPMorgan Chase may satisfy all or a part of this repayment obligation by withholding any amounts not yet paid to you. In addition, JPMorgan Chase will be entitled to any costs and attorneys fees associated with enforcing this repayment obligation.

- The claims administrator has the discretionary authority to determine employees' short-term disability pay.

## Statutory Benefits

Generally, the benefits that you receive under the Short-Term Disability Plan during your approved short-term disability leave include statutory benefits for which you may be eligible, such as state disability or Workers' Compensation disability benefits. The short-term disability pay that you receive during your approved disability period is offset by any Workers' Compensation disability benefits for which you may be eligible. Please see below for information on state disability benefits; Workers' Compensation is discussed in "Filing a Claim for a Non-Occupational Illness or Injury" on page 18.

You are not eligible to receive more than 60% or 100% of your eligible compensation (based on your years of recognized service) between any state disability or Workers' Compensation disability benefits and short-term disability pay under the STD Plan, unless the laws in your state require otherwise. In California, New Jersey, New York, Rhode Island, and Hawaii you cannot receive state statutory disability benefits and Workers' Compensation disability benefits simultaneously. Please note for California the statutory benefit will be offset until Workers' Compensation claim is approved.

**Please Note:** Any overpayment will be collected by JPMorgan Chase or the claims administrator. Failure to reimburse JPMorgan Chase or the claims administrator for any benefits you receive in excess of 100% of your short-term disability pay may result in corrective action, including termination of employment.

# State Disability Benefits

California, Hawaii, New Jersey, New York, Puerto Rico, and Rhode Island have disability laws requiring short-term disability payments. Disability provisions vary as to eligibility, cost, and the portion of regular pay that's provided.

In Hawaii, New Jersey, and New York, JPMorgan Chase self-insures and self-administers the state statutory benefits as well as the STD Plan. In these states, if you qualify for short-term disability benefits, the approved short-term disability pay that you receive under the JPMorgan Chase Short-Term Disability Plan will include any state disability benefits for which you may be eligible.

Furthermore, for these states, if the state statutory benefit is more generous, JPMorgan Chase Disability Management Services ("DMS"), the claims administrator for the Short-Term Disability Plan, will ensure you receive the appropriate benefit under the applicable state requirement.

If you are not eligible for short-term disability pay under the JPMorgan Chase Short-Term Disability Plan, but are eligible for the state statutory portion of the short-term disability pay benefit, you will receive the state statutory benefit from JPMorgan Chase.

### Important Note About California and Rhode Island Disability Benefits

- For employees with non-work related illnesses or injuries who work in California and Rhode Island, any short-term disability pay you are eligible to receive under the JPMorgan Chase Short-Term Disability Plan will be reduced or offset by the amount of the state statutory benefits you are expected to receive. The offset will be taken *even if you do not actually apply for the benefits.* Therefore, it is strongly recommended that you submit a disability claim to the applicable state for these benefits as soon as possible based on the state's guidelines. If you receive a lower amount of state benefits than expected, please contact JPMorgan Chase so that your offset amount can be reviewed and recalculated, if necessary.

- The JPMorgan Chase claims administrator will determine the appropriate offset to be applied.

- Once you report your leave of absence by calling *access*HR (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information), you will receive a packet of information, which will include information and directions to file for the state statutory benefits and for benefits under JPMorgan Chase's Short-Term Disability Plan. Note that there are deadlines associated with both state and STD Plan benefits that may affect the total amount you are eligible to receive. You are encouraged to complete and submit your claim form to the state and to DMS in a timely manner.

- For more information regarding California SDI, you may contact a Disability Insurance Customer Service Center at 1-800-480-3287. TTY (for deaf or hearing impaired individuals only) is available by calling 1-800-563-2441. You may also obtain information online at http://www.edd.ca.gov/disability/.

- For more information regarding Rhode Island SDI, you may contact a Rhode Island Temporary Disability Insurance Representative at (401) 462-8420 and select option #1 for an application or file online at https://uiclaims.ri.gov/tdionline/.

# Temporary Reduced Schedule Return to Work/Partial Short-Term Disability Pay

The partial return to work program is designed to assist employees who are actively recovering from a short-term injury or illness with the expectation that they will return to full duty work without restrictions within six weeks of the start of their partial return to work under this policy.

- If you qualify for a partial return to work program, JPMorgan Chase may provide temporary modifications, including the reduction of your regularly scheduled work hours, to accommodate temporary work-related restrictions and to promote a gradual transition to full duty. The following are generally required:

  — Your health care provider's support of a defined, short-term, transitional/reduced work schedule; and

  — Your line of business management's agreement that a transitional assignment can be made available, based on business requirements and critical job function needs.

- If a transitional assignment requires a reduced-work schedule, JPMorgan Chase will pay for your hours worked. You may receive additional pay or disability pay for the non-working portion of the day. This pay will follow the short-term disability pay outlined in the Length and Amount of Benefits and Short-term Disability Pay Schedule sections on page 11 for your partial return to work.

- A transitional assignment is temporary in nature and would normally not exceed six to eight weeks. Your daily hours of work would increase over the course of the transitional assignment.

- Your JPMorgan Chase Disability Management Services ("DMS") case manager will work with you and your manager regarding the transitional assignment.

- If you are not able to return to a full schedule in six to eight weeks and you have remaining STD benefits available, you will be returned to full STD status or be considered for Long-Term Disability benefits, if available.

- If you have exhausted all available disability benefits, DMS will contact the appropriate HR Business Partner or HR Support Team to evaluate further options.

- If you need a different form of accommodation to resume your essential job duties you should contact DMS and your HR Business Partner or HR Support Team. For details, please see the Accommodating Disabilities and Temporary Work Restrictions Policy, available at **me@jpmc** > HR Policies > Employee Assistance.

- **Please Note:** Employees on a transitional assignment are not generally eligible for overtime assignments.

# Recurrent Disabilities

A recurrent disability occurs if you return to work after being on an approved short-term disability leave and go out again within 60 days due to the same or a related medical condition. If you experience a recurrent disability, you must contact Disability Management Services to apply for and re-open your prior short-term disability claim, and you will be required to provide the appropriate medical documentation from your health care provider. If approved by Disability Management Services, you will not have to complete another one-week wait period and your subsequent short-term disability will be considered a continuation of your original short-term disability. The subsequent weeks of short-term disability will count toward the maximum leave duration for which you are eligible, i.e., 26 weeks for employees who are regularly scheduled to work 20 or more hours per week. If you are eligible for non-occupational short-term disability pay, your benefits will resume at the appropriate rate, i.e., 100% or 60% of pay, based on your length of service as of the beginning of your original approved short-term disability leave, up to the maximum of 25 weeks. For example:

- Assume you are a full-time employee with eight years of recognized service. According to the "Short-Term Disability Pay Schedule" on page 11, in a calendar year you would be eligible for up to 13 weeks of disability pay at 100% of pay and up to 12 weeks of disability pay at 60% of pay. Assume your short-term disability leave is approved from February 8 through April 25 (for 11 weeks). During your first week of leave, you would be required to use available sick time to cover the one-week wait period for short-term disability pay. You would then receive 100% of your pay for the next 10 weeks until your return to work on April 26.

- Further assume that on June 5, you begin leave for the same health condition and your short-term disability leave is approved for an additional four weeks (i.e., June 5 through July 3). Since this leave is a **continuation** of your prior leave, you do not need to complete another one-week wait period. Your total short-term disability leave time is 15 weeks (11 weeks from the prior leave, plus four more as a continuation of that leave). Since you previously received 10 weeks of short-term disability pay at 100% of pay, you would be entitled to receive three additional weeks at 100% of pay, according to the schedule. Your fourth (and final) week of leave would be at 60% of pay.

**Please Note:** Should you continue to be disabled longer than 26 consecutive weeks, you may be eligible for long-term disability benefits if you had JPMorgan Chase-provided LTD coverage or you elected coverage under the LTD Plan before becoming disabled and you are approved by the LTD claims administrator.

## Multiple Short-Term Disability Leaves

This section applies to situations in which you return to work after being on an approved short-term disability leave and you begin leave again due to an unrelated medical condition or more than 60 days after returning to work. If you have multiple short-term disability leaves, under the following circumstances your leave will be considered a new short-term disability (versus a continuation of the same leave):

- If you begin a short-term disability leave more than 60 calendar days after returning from a prior short-term disability leave; or

- If you begin a short-term disability leave anytime after returning from a prior short-term disability leave that was for a different medical condition.

If either of the above circumstances apply, you will be required to complete another one-week wait period. Your maximum short-term disability leave duration (i.e., 26 weeks for employees who are regularly scheduled to work 20 or more hours per week) will begin anew. If you are eligible and approved for short-term disability pay, you are eligible for up to 25 weeks of pay according to the short-term disability pay schedule. If your disability begins in the same calendar year that your prior disability leave began, your pay will resume at the level you were receiving for the preceding claim. For example:

- Assume you are a full-time employee with five years of recognized service. According to the "Short-Term Disability Pay Schedule" on page 11, in a calendar year you would be eligible for up to 10 weeks of disability pay at 100% of pay and up to 15 weeks of disability pay at 60% of pay. Assume your short-term disability leave is approved for six weeks. During your first week of leave, you would be required to use available sick time to cover the one-week wait period for short-term disability pay. You would then receive 100% of your pay for the next five weeks before your return to work.

- Assume that several months later you begin a new short-term disability leave and it is approved for twelve weeks. Since you previously received five weeks of short-term disability pay at 100% of pay, you would be entitled to receive five additional weeks at 100% of pay. Therefore, the two week remainder of your short-term disability leave would be paid at 60% of pay.

# What Is *Not* Covered

The JPMorgan Chase Short-Term Disability Plan does not cover any disability that results from:

- War — declared or undeclared — or any act of war;
- Active participation in a riot;
- Your participation in a felony; or
- Disability related to elective cosmetic surgery or recuperation from such surgery. However, any medical complications resulting from such surgeries may be covered under the STD Plan and will be evaluated on an individual basis at the discretion of JPMorgan Chase Disability Management Services, the claims administrator.

If you suffer an illness or injury but are considered able to work, you will not be eligible for short-term disability pay under the Short-Term Disability Plan if the sole reason you do not report to work is due to your inability to commute to your workplace. (If this is an issue that affects you, please see the JPMorgan Chase Accommodating Disabilities and Temporary Work Restrictions Policy, available at **me@jpmc** > HR Policies > Employee Assistance.)

For more information on what is covered and not covered under the JPMorgan Chase Short-Term Disability Plan, please contact *access*HR (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information.)

# Claiming Benefits

This section explains when and how to submit a claim for short-term disability benefits. For more information on your rights with respect to claims, please see the *Plan Administration* section of this Guide.

## How to File Claims

The claims process differs based on the type of illness or injury that causes you to have an approved short-term disability.

### Filing a Claim for a Non-Occupational Illness or Injury

#### *Reporting a Leave*

- It is your responsibility to call accessHR if you believe that you will be absent due to an illness or injury that will continue for eight or more consecutive calendar days (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information). You may report your leave of absence up to 30 days in advance of your leave start date. Applications for short-term disability leave filed more than 30 calendar days after your first date of absence will be denied. When calling to report your leave of absence, you will be required to provide the following:

  — Last day worked;

  — Date of disability;

  — Your health care provider's name, address, and telephone number;

  — The reason for your leave; and

  — Time that you have taken in the calendar year for sick time, vacation, personal days, etc.

- **Please Note:** If you are unable to call to report your leave due to incapacitation, a designee (such as a spouse or domestic partner), your manager, or a Human Resources Business Partner can report your leave on your behalf.

- If you are out of work 8 or more days due to a work-related illness or injury, please refer to Filing a Claim for an Occupational Illness or Injury section.

- Timely reporting of your short-term disability leave will facilitate a timely determination of the short-term disability pay for which you may be eligible.

- You should also follow your Line of Business absence reporting requirements when reporting a leave of absence. Advance notification will enable your line of business to make the necessary arrangements to cover your work during your absence.

- Following your call to report your leave of absence, JPMorgan Chase Disability Management Services (DMS), the claims administrator for the Short-Term Disability Plan, will send you a leave request acknowledgement letter that includes disability claims forms and instructions for filing your disability claims to determine if you are eligible for short-term disability leave and pay. California and Rhode Island employees will also receive forms and instructions to apply for the appropriate state disability insurance. Please refer to the "Important Note About California and Rhode Island Disability Benefits" on page 13 for important benefit information and claim filing guidance for these states.

- Your claim will either be approved or denied within 45 days of its submission to DMS, unless you are notified in writing that special circumstances require a delay in the decision. If your claim is denied, you will be notified in writing and provided with instructions on how to appeal the decision.

## *Submitting Required Information*

- You and your licensed physician will be required to provide objective and complete medical information to support your request for short-term disability leave by sending the completed claims forms to DMS. **Please Note**: Any short-term disability pay for which you may be eligible will not commence until your claim is approved. If you do not submit the required medical information and/or your claim is not approved within the subsequent time frame communicated to you, your claim will be denied and your employment may be terminated.

- The medical information requested of you must be supplied at your expense and in a timely manner for your request for short-term disability leave to be evaluated — both initially and on an ongoing basis. You also will be required to provide signed authorization to DMS to obtain and release all reasonably necessary information that supports your short-term disability pay claim.

- Based on the medical information supplied, DMS will determine your eligibility for short-term disability pay, including the duration of benefits. If you continue to require leave, periodic updates of medical information may be required at your expense. Short-term disability pay will be suspended and your employment may be terminated if you fail to provide the necessary objective medical information when it is required.

- JPMorgan Chase reserves the right to require you to be examined by a licensed physician chosen by the firm, at the firm's expense, as often as reasonably necessary while your claim continues. Failure to comply with this examination may result in the denial, suspension, or termination of any short-term disability pay provided under the STD Plan, unless JPMorgan Chase agrees you have a valid and acceptable reason for not complying.

  **Note:** The Genetic Nondiscrimination Act of 2008 (GINA) generally prohibits employers and other entities covered by GINA Title II from requesting, or requiring, genetic information of an individual or family member of the individual. Your health care provider should not provide any genetic information when responding to requests for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

- You should only provide your medical information to DMS — it should not be provided to your manager, Human Resources Business Partner, or any other JPMorgan Chase employee. Any medical information that you submit to DMS is treated as confidential and used only for appropriate purposes.

## *Return to Work Determination*

- DMS will work with your manager and your licensed physician to determine when you may return to work. You are expected to return to work at the conclusion of your approved short-term disability leave (unless your short-term disability leave is extended or you are approved for additional time off under another JPMorgan Chase policy, such as the Accommodating Disabilities and Temporary Work Restrictions Policy).

- If you return to work (or attempt to return to work) prior to the expiration of your approved short-term disability leave, DMS may require a release from your health care provider before allowing you to return to work.

- Except when prohibited by applicable law, JPMorgan Chase may at its expense request that an employee who is returning from a leave complete a fitness for duty evaluation, performed by a licensed physician selected by JPMorgan Chase, if there is a reasonable belief that: (1) the employee's ability to perform essential job functions will be impaired by a medical condition, or (2) the employee will pose a danger to the him/herself or others due to a medical condition.

- If your approved short-term disability leave could potentially continue beyond 25 weeks, your claim is automatically referred to the JPMorgan Chase Long-Term Disability Plan Administrator — as long as you had JPMorgan Chase-provided or elected coverage under that plan before becoming disabled. If your short-term disability leave is not approved and you choose to apply for long-term disability benefits, please contact The Prudential directly at 800-842-1718.

## Filing a Claim for an Occupational Illness or Injury

- If you believe that your illness or injury was sustained in the course of and arose out of work, you must immediately inform your manager — whether or not your illness or injury causes you to be absent — so that the appropriate Workers' Compensation administrator can be notified of your claim of a work-related illnesses or injury. For further information about JPMorgan Chase's Workers' Compensation administrators, please go to: FWS > Corporate Finance Groups > Global Treasury > Corporate Insurance Services > Workers' Compensation Claims Reporting.
- If you will be out of work for eight or more consecutive days, you must call *access*HR (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information) to report your claim and to be evaluated for a concurrent claim under the JPMorgan Chase Short-Term Disability Plan as well as under the Family and Medical Leave Policy.
- If you are out 8 or more days due to work related illness or injury, your manager may also file a short-term disability claim.
- The applicable Workers' Compensation administrator will make a determination of your eligibility for benefits based on your disability.
  - If your claim for lost time under Workers' Compensation is approved, your short-term disability leave and Family and Medical Leave under the policies will also be approved. If DMS denies your claim prior to a Workers' Compensation approval, you can appeal to have the short-term disability claim reviewed. The duration of benefits for each of these plans will follow as outlined in each policy.
  - If your claim for lost time under Workers' Compensation is denied, your claim for short-term disability leave and Family and Medical Leave will be evaluated in accordance to those policies. If approved, the duration of benefits will follow as outlined in each policy.

While you are receiving Workers' Compensation disability benefits, you may not receive state statutory disability benefits because those benefits apply only to non-occupational illnesses and injuries.

If your short-term disability leave is due to a work-related illness or injury, you may, but are not required to, apply any of your available paid time off as pay during any period of unpaid time, including the one-week wait period for short-term disability pay or an unpaid short-term disability leave that is approved by the Workers' Compensation claims administrator and/or your applicable State Workers' Compensation Board or Industrial Commission, or by DMS. You may also choose not to receive short-term disability pay as stipulated by the STD Plan. However, if you choose not to receive the JPMorgan Chase short-term disability benefit to which you may be entitled to concurrent with a claim for lost time Workers' Compensation, you may not at a later date request the short-term disability pay for that Workers' Compensation lost time claim.

Note: The STD Plan does not provide for unpaid disability leave. Please consult the Short-Term Disability Leave Policy for information on unpaid disability leave.

You may not receive more than 100% of your eligible compensation between Workers' Compensation lost time benefits and any short-term disability pay provided by JPMorgan Chase. Failure to reimburse JPMorgan Chase for any benefits you receive in excess of 100% of your eligible compensation may result in corrective action, including termination of employment.

# Appealing Short-Term Disability Claim Denials

If a claim for a short-term disability leave under the JPMorgan Chase Short-Term Disability Plan for a non-occupational illness or injury is denied, either in whole or in part, you can appeal the denial by following the appropriate procedures described below.

You have 180 days from the date of your denial to send a written appeal of the short-term disability leave decision. To appeal the short-term disability leave decision, you must send a letter of appeal, medical records, progress notes, test results, and any other applicable medical documentation to DMS at:

> JPMorgan Chase
> Disability Management Services Appeals Coordinator
> 131 S. Dearborn
> Mail Code: IL1-0708
> Chicago, IL 60603

- You may request copies of all documents, records, and other information relevant to your claim decision; and you may submit written comments, documents, records, and other information relating to your claim for short-term disability benefits.

- DMS will make a decision no more than 45 days after your appeal is received, unless it is determined special circumstances exist that require an extension of time to process the appeal. If your appeal requires an extension, a decision will be made no more than 90 days after your appeal is received.

- If during the appeal process you determine you will require additional time to secure medical information and documentation to support your appeal, you may contact the DMS Appeals Coordinator to request an extension of time to submit additional information. Up to 45 days of additional time may be granted.

- The written decision will include specific references to the contract provisions on which the decision is based.

- In the appeal of a claim denial based upon medical judgment, the claims administrator will consult with an appropriate, independent licensed physician. You will have the right to obtain the name of such person if your appeal is denied.

For additional information regarding appealing claims under the Short-Term Disability Plan, please see the *Plan Administration* section of this Guide.

# For Employees Who Work in the State of New Jersey

If you disagree with the determination of DMS, you have the right to appeal to the Division of Temporary Disability Insurance. You have one year from the date your disability began to file your appeal.

Send your written appeal to:

> Division of Temporary Disability Insurance
> Private Plan Operations
> Claims Review Unit
> PO Box 957
> Trenton, NJ 08625-0957
>
> Telephone: (609) 292-6135

# When Coverage Ends

Your coverage for short-term disability pay under the JPMorgan Chase Short-Term Disability Plan will end on the earliest of the following:

- The date you are no longer disabled as determined by JPMorgan Chase Disability Management Services or the applicable Workers' Compensation administrator;
- The date you reach the maximum time limit for short-term disability pay* (i.e., a one-week wait period plus 25 weeks of short-term disability pay for each approved disability)
- The date your employment with JPMorgan Chase ends due to an involuntary termination (excluding a reduction in force);
- The date the Short-Term Disability Plan is discontinued or amended; or
- The date you die.

* *If you're still disabled after a 26-week short-term disability period, you may then be eligible for benefits under the JPMorgan Chase Long-Term Disability (LTD) Plan — provided you had JPMorgan Chase-provided LTD coverage or you elected coverage under the LTD Plan before becoming disabled. Please see the Long-Term Disability (LTD) Plan section of this Guide for more information.*

If your benefits under the Short-Term Disability Plan end and you are unable to return to work, your employment and your participation and coverage in the JPMorgan Chase benefit plans will generally **end** unless you are approved for additional leave under another JPMorgan Chase policy, such as the Accommodating Disabilities and Temporary Work Restrictions Policy. For details, please refer to the "Return from Leave" section of the Short-Term Disability Policy, available from **me@jpmc** > HR Policies > Leaves of Absence > Short-Term Disability. If you participate in the Long-Term Disability Plan and receive LTD benefits, then you may continue to participate in certain benefits plans and receive pay credits under the Retirement Plan.

**Please Note:** If you voluntarily end your employment during a period of approved short-term disability leave or if you are terminated due to job elimination, you will continue to receive short-term disability pay for the remainder of the leave duration for which you are eligible under the JPMorgan Chase Short-Term Disability Plan. If you voluntarily end your employment prior to an involuntarily termination, as determined by the claims administrator, you will not be eligible for continued short-term disability pay.

# Additional Plan Information

Your primary contact for all matters relating to the general administration of the JPMorgan Chase Short-Term Disability Plan is *access*HR (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information).

Your short-term disability pay under the Short-Term Disability Plan is provided under the terms of the official insurance policies and/or contracts, if any, issued to JPMorgan Chase. JPMorgan Chase Disability Management Services has complete authority to determine whether your claim of a non-occupational disability meets the standard of the STD Plan for which benefits are payable, and to authorize the payment of any such benefits.

The applicable Workers' Compensation administrator will determine whether you've incurred an occupational disability for which benefits are payable, and will pay any such benefits. All claims appeals for occupational illnesses or injuries should be directed to the appropriate state Workers' Compensation Board or Industrial Commission.

**Please Note:** No person or group, other than the Plan Administrator, has any authority to interpret the JPMorgan Chase Short-Term Disability Plan (or official plan documents) or to make any promises to you about them. The Plan Administrator has complete authority in his or her sole and absolute discretion to construe and interpret the terms of the JPMorgan Chase Short-Term Disability Plan and any underlying policies and/or contracts, including the eligibility to participate in the plan. All decisions of the Plan Administrator are final and binding upon all affected parties.

# Right to Amend

JPMorgan Chase reserves the right to amend, modify (including cost of coverage), reduce or curtail benefits under, or terminate the Short-Term Disability Plan at any time for any reason by act of the Employee Relations Executive. Upon termination of the Short-Term Disability Plan, all outstanding claims for benefits will be adjudicated and paid in accordance with the Short-Term Disability Plan. Coverage under the Short-Term Disability Plan does not represent a vested benefit.

JPMorgan Chase also reserves the right to amend any of the plans and policies, to change the method of providing benefits, to curtail or reduce future benefits, or to terminate at any time for any reason any or all of the plans and policies described in this Guide. Neither this Guide nor the benefits described in the Guide create a contract of employment or a guarantee of employment between JPMorgan Chase and any employee.

If you have any questions about this plan, please call the *access*HR Contact Center (please see the "Questions" chart under the "The Short-Term Disability Plan" on page 1 for contact information).

**JPMorgan Chase Health Care and Insurance Program for Active Employees**

**Effective January 1, 2015**

# JPMorgan Chase Health Care and Insurance Program for Active Employees

### Effective January 1, 2015

**Table of Contents**

| | |
|---|---|
| INTRODUCTION | 1 |
| **ARTICLE I THE PROGRAM** | **1** |
| 1.1 Program Documentation | 1 |
| 1.2 Trust | 1 |
| **ARTICLE II DEFINITIONS** | **1** |
| 2.1 Bank | 1 |
| 2.2 Claims Administrator | 2 |
| 2.3 COBRA | 2 |
| 2.4 Code | 2 |
| 2.5 Committee | 2 |
| 2.6 Corporation | 2 |
| 2.7 Dependent | 2 |
| 2.8 Eligible Employee | 2 |
| 2.9 Employee | 2 |
| 2.10 ERISA | 2 |
| 2.11 HIPAA | 2 |
| 2.12 HMO | 2 |
| 2.13 Insurer | 2 |
| 2.14 Participant | 2 |
| 2.15 Participating Employer | 3 |
| 2.16 PHI | 3 |
| 2.17 Plan | 3 |
| 2.18 Plan Administration Functions | 3 |
| 2.19 Plan Administrator | 3 |
| 2.20 Plan Sponsor | 3 |
| 2.21 Program | 3 |
| 2.22 Program Administrator | 3 |
| 2.23 Summary Health Information | 3 |
| 2.24 SPD | 3 |
| 2.25 Trust | 3 |
| 2.26 Trustee | 3 |
| **ARTICLE III PARTICIPATION** | **4** |
| 3.1 Commencement and Termination of Participation | 4 |
| 3.2 COBRA Coverage | 4 |

i

**ARTICLE IV FIDUCIARIES** ................................................................................4

    4.1    Named Fiduciary ....................................................................................4
    4.2    Plan Administrator ................................................................................4
    4.3    Committee ..............................................................................................4

**ARTICLE V FUNDING POLICY AND BASIS OF PAYMENTS TO AND FROM PROGRAM....4**

    5.1    Employer Contributions .......................................................................4
    5.2    Participant Contributions .....................................................................5
    5.3    Use of Assets .........................................................................................5
    5.4    Changes in Funding Policy ...................................................................5

**ARTICLE VI PRIVACY RULES** .........................................................................5

    6.1    General ...................................................................................................5
    6.2    Disclosure of Summary Health Information ........................................5
    6.3    Disclosure of PHI .................................................................................6
    6.4    Adequate Separation ............................................................................7
    6.5    Uses and Disclosures ...........................................................................7
    6.6    Business Associates ..............................................................................8
    6.7    HIPPA Information Security Requirements for Electronic PHI ..........8

**ARTICLE VII AMENDMENT OR TERMINATION** ............................................8

**ARTICLE VIII GENERAL PROVISIONS** ...........................................................8

    8.1    Physical Examination and Autopsy .....................................................8
    8.2    Assignment of Benefits ........................................................................8
    8.3    Facility of Payment ..............................................................................8
    8.4    Right of Offset and Recovery ..............................................................9
    8.5    Notice of Address .................................................................................9
    8.6    Rules of Construction ..........................................................................9
    8.7    State and Federal Mandates .................................................................9

**EXHIBIT A          PLANS COMPRISING THE PROGRAM**

**JPMorgan Chase Health Care and Insurance Program for Active Employees**

**Effective January 1, 2015**

**INTRODUCTION**

JPMorgan Chase Bank, N.A. (the "Bank") hereby establishes the Health Care and Insurance Program for Active Employees ("Program), which is a restatement of the program previously known as the Health & Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies. The Program provides various health care and insurance benefits for Eligible Employees and their Dependents.

The Program is made up of one or more separate benefit plans and programs, each providing a different type of benefit for Eligible Employees and their Dependents who enroll (each, a "Plan"). The Plans comprising this Program are listed in Exhibit A. The Plans may be amended, established, restated or terminated from time to time, and Exhibit A will be deemed to be updated as a result of any such changes.

**ARTICLE I**
**THE PROGRAM**

1.1     <u>Program Documentation</u>. The Program is described and evidenced by this document, by any amendments to this document, summary plan descriptions ("SPDs") for the Plans listed on Exhibit A, which are specifically incorporated herein by reference, and by the terms of any insurance policy purchased to provide benefits under any Plan. To the extent that the terms of this document conflict with the terms of an SPD or insurance policy, the terms of the SPD or insurance policy shall apply.

1.2     <u>Trust</u>. The Program is further evidenced by the JPMorgan Chase Bank Voluntary Employee Beneficiary Association Trust for Active Employees (the "Trust"), as may be amended and restated, which has been established as the funding vehicle for receiving certain contributions and disbursing certain benefits, administrative expenses and premiums appropriate for the operation of the Program.

**ARTICLE II**
**DEFINITIONS**

The following words and phrases shall have the meanings as indicated in this Article II unless a different meaning is plainly required by the context. Whenever required by the context of any Plan provision, the singular includes the plural, and the plural includes the singular. Any headings used herein are included for reference only, and are not to be construed so as to alter any of the terms of the Plan.

2.1     <u>Bank</u> means JPMorgan Chase Bank, N.A.

1

2.2  Claims Administrator means the agent(s) designated or retained by the Program Administrator to determine the validity of claims and to administer benefit payments under a Plan.

2.3  COBRA means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, and regulations thereunder pertaining to continuation coverage required to be offered to a Participant in a Plan providing health care benefits.

2.4  Code means the Internal Revenue Code of 1986, as amended, and regulations thereunder.

2.5  Committee means the JPMorgan Chase Health Care and Insurance Plans Appeals Committee or the JPMorgan Chase Short-Term Disability Plan Appeals Committee.

2.6  Corporation means JPMorgan Chase & Co., and its successors.

2.7  Dependent means an individual other than an Eligible Employee described in each applicable Plan SPD as eligible for coverage and benefits under a particular Plan as a result of his or her relationship to an Eligible Employee, and who is enrolled for coverage and benefits; provided, however, that no person may be covered as both an Eligible Employee and a Dependent, nor may any person be covered as the Dependent of more than one Eligible Employee.

2.8  Eligible Employee means an Employee or former Employee who satisfies the eligibility criteria to participate and receive coverage and benefits under one or more of the Plans, as described in the SPD for each of the applicable Plans.  Notwithstanding the foregoing, a former Employee who satisfies the requirements for participation in the JPMorgan Chase Health Care and Insurance Program for Retirees (the "Retiree Plan") shall participate in the Retiree Plan and not hereunder.

2.9  Employee means an individual employed by a Participating Employer as described in the applicable SPDs, and who is not covered by a collective bargaining agreement.

2.10  ERISA means the Employee Retirement Income Security Act of 1974, as amended.  Reference to any section of ERISA includes references to any comparable or successor provisions of any legislation that amends, supplements or replaces that section.

2.11  HIPAA means the Health Insurance Portability and Accountability Act of 1996, as amended, and applicable regulations thereunder.

2.12  HMO means a health maintenance organization that is contracted with to provide health care to eligible Participants who elect coverage under the HMO.

2.13  Insurer means an insurance or casualty company that provides benefits to a Participant under the terms of a Plan.

2.14  Participant means an Eligible Employee and/or his or her Dependents who are enrolled for coverage under one or more Plans.

2.15    Participating Employer means the Bank and each affiliate of the Corporation participating in the Program.

2.16    PHI means "Protected Health Information," as defined by Department of Health and Human Services Regulations Section 164.501.

2.17    Plan means any one of the employee benefit plans listed on Exhibit A, and successor plans, that are maintained for the benefit of Eligible Employees and their Dependents.

2.18    Plan Administration Functions means activities that would meet the definition of Payment or Health Care Operations as defined by Department of Health and Human Services Regulations Section 164.501, but does not include functions to modify, amend or terminate the Program or Plan or solicit bids from prospective issuers. Plan Administration Functions includes quality assurance, claims processing, auditing, monitoring and management of carve-out plans (i.e. vision and dental). Plan Administration Functions does not include any employment-related functions or functions in connection with any other benefits or benefit plans, and the Program and the Plans may not disclose personal health information for such purposes absent an authorization from an individual for whom the information pertains. Enrollment functions performed by a Participating Employer (or a Claims Administrator, on behalf of a Participating Employer) are not considered Plan Administration Functions.

2.19    Plan Administrator means the individual or agent designated in the applicable SPD as the Plan Administrator of the Plan.

2.20    Plan Sponsor means JPMorgan Chase Bank, N.A.

2.21    Program means the JPMorgan Chase Health Care and Insurance Program for Active Employees as set forth herein. Unless the context indicates otherwise, references herein to the Program shall include each individual Plan.

2.22    Program Administrator means the Compensation and Benefits Executive or its delegate.

2.23    Summary Health Information means Summary Health Information as defined by Department of Health and Human Services Regulations Section 164.504.

2.24    SPD  means the summary plan description for a Plan.

2.25    Trust means the JPMorgan Chase Bank Voluntary Employee Beneficiary Association Trust for Active Employees.

2.26    Trustee means JPMorgan Chase Bank, N.A..

## ARTICLE III
## PARTICIPATION

3.1     Commencement and Termination of Participation.  Participation in the Program shall begin when an Eligible Employee or Dependent becomes enrolled under one or more of the Plans, in accordance with the rules in effect under each applicable Plan.  Participation in the Program or a Plan shall terminate if the Program or applicable Plan terminates, or if a Participant disenrolls or no longer meets the requirements for eligibility.

3.2     COBRA Coverage.  Plans subject to the requirements of COBRA shall establish procedures for the election of COBRA continuation coverage by eligible Participants.  A third party administrator may be designated to administer a Plan's COBRA program.  Each Plan offering helath care benefits that is subject to COBRA is intended to comply in all respects with COBRA, and should be interpreted in accordance with this intent.

## ARTICLE IV
## FIDUCIARIES

4.1     Named Fiduciary.  The Program Administrator shall be the named fiduciary of the Program.  In addition, Plan Administrators and Claims Administrators are fiduciaries of their respective Plans.

4.2     Plan Administrator.  Benefits under the Plans will be paid only if the Plan Administrator or its delegate decides in its discretion that a Participant is entitled to them. The Plan Administrator may delegate this authority to the Committee or to one or more Claims Administrators.  The Plan Administrator or its delegate shall have the authority to perform all duties necessary to effectively administer the Plan, including making rules as may be appropriate for administration of the Plans; construing the Plans; supplying any omissions and reconciling any inconsistencies; making equitable adjustments for any mistake or errors; and deciding, at its sole discretions, all questions arising in the interpretation of the Plan, including questions concerning eligibility and whether to grant or deny benefits, all of such decision to be conclusive and binding on all parties.

4.3     Committee.     The Committee may be established to hear benefit claims and appeals, as described in the Plans.  The appropriate Plan Administrator may appoint members of the Committee and establish Committee rules.

## ARTICLE V
## FUNDING POLICY AND BASIS OF PAYMENTS TO AND FROM PROGRAM

5.1     Employer Contributions.

(a)     The Program Administrator may allocate costs to each Participating Employer in its sole discretion.

4

(b)     Each Plan may provide for the payment of benefits to any Participant through direct payments, payments from the Claims Administrators, the purchase of insurance, or funding through the Trust.  In the case of a Plan under which an insurance policy has been purchased to provide benefits, any benefits payable to a Participant or qualified beneficiary shall be paid by the applicable Insurer.  If no such insurance is currently in force, then the benefits may be paid through direct payment or with funds in the Trust.

5.2     Participant Contributions.

(a)     Each Participant in the Plan shall contribute to the Plan amounts determined in the sole discretion of the Plan Administrator and as set forth in SPDs and related communications; provided, however, that any such rules providing for the payment of different contribution amounts by different Participants are intended to comply with the applicable non-discrimination requirements of HIPAA and should be interpreted in accordance with that intent.

(b)     The Plan Administrators have the right to require the payment of different contributions from Participants based on factors determined appropriate by the Plan Administrators.  In addition, the Plan Administrators may increase or decrease the amount of Plan contributions in their discretion.

5.3     Use of Assets.  All Program assets held by the Trust shall be used exclusively for the following:

(i)     Payment of Plan benefits to Participants;

(ii)    Purchase of insurance to provide benefits under the Plans;

(iii)   Defraying reasonable costs of Program administration; and

(iv)    Payment of any insurance premiums necessary for the Corporation to purchase risk protection on any portion of a Plan's self-funded benefit liability, as determined by the Corporation.

5.4     Changes in Funding Policy.  The Program Administrator or its delegate has the sole discretion to make changes in any aspect of the Program's funding policy at any time, including the right to amend or terminate the Trust, subject to any requirements for amendment contained in the Trust document or applicable law.

## ARTICLE VI
## PRIVACY RULES

6.1     General.  The Program Administrator or its delegate shall adopt procedures to ensure the privacy of PHI of Participants in any Plan subject to the privacy requirements of HIPAA.  The procedures shall comply with the requirements of HIPAA and any other applicable law.

6.2     Disclosure of Summary Health Information.  The Program or a Plan, or a health insurance issuer or HMO with respect to a Plan, may disclose Summary Health Information to

the Plan Sponsor if the Plan Sponsor requests the Summary Health Information for the purposes of:

      (i)      obtaining premium bids from health plans for providing health insurance coverage under the Plan; or

      (ii)     modifying, amending or terminating the Program.

     6.3    <u>Disclosure of PHI</u>. The Program or a Plan may release PHI to the Plan Sponsor provided the Plan Sponsor complies with the provisions of this Section 6.3.

     (a)     The Plan Sponsor shall not use or further disclose the PHI other than as permitted or required by the Program documents or as required by law.

     (b)     The Plan Sponsor shall ensure that any agents to whom it provides PHI received from the Program agree to the same restrictions and conditions that apply to the Plan Sponsor with respect to such PHI.

     (c)     The Plan Sponsor shall not use or disclose the PHI for employment-related actions and decisions, or in connection with any other benefit or employee benefit plan of the Plan Sponsor.

     (d)     The Plan Sponsor shall report to the Program any use or disclosure of the PHI that is inconsistent with the uses or disclosures provided for of which it becomes aware.

     (e)     The Plan Sponsor shall make available PHI in accordance with Department of Health and Human Services Regulations Section 164.524.

     (f)     The Plan Sponsor shall make available PHI for amendment and incorporate any amendments to PHI in accordance with Department of Health and Human Services Regulations Section 164.526.

     (g)     The Plan Sponsor shall make available the information required to provide an accounting of disclosure in accordance with Department of Health and Human Services Regulations Section 164.528.

     (h)     The Plan Sponsor shall make its internal practices, books and records relating to the use and disclosure of PHI received from the Program available to the Secretary of Health and Human Service or its delegate for purposes of determining the Plan's compliance with Sections 6.3 and 6.4.

     (i)     If feasible, the Plan Sponsor shall return or destroy all PHI that the Participating Employer received from the Program that the Plan Sponsor still maintains in any form and retain no copies of such PHI when no longer needed for the purpose for which disclosure was made, except that if such return or destruction is not feasible, the Plan Sponsor shall limit further uses and disclosures to those purposes that make the return or destruction of the PHI infeasible.

6.4     <u>Adequate Separation</u>.  In order to release PHI to the Plan Sponsor, the Program must ensure adequate separation between the Program and the Plan Sponsor.  The Program documents must:

(a)     Describe those employees or classes of employees or other persons under the control of the Plan Sponsor to be given access to the PHI to be disclosed (the "Group"), provided that any employee or person who receives PHI relating to payment under, health care operations of, or other mattes pertaining to the Program in the ordinary course of business must be included in the description;

(b)     Restrict the access to and use by the Group to Plan Administration Functions that the Plan Sponsor performs for the Program;

(c)     Provide an effective mechanism for resolving any issues of noncompliance with the provisions of Sections 6.3 and 6.4 by the Group.

6.5     <u>Uses and Disclosures.</u>

(a)     The Program may disclose PHI to the Plan Sponsor only upon receipt of a certification by the Plan Sponsor that the Program or Plan documents incorporate the provisions of Section 6.3 and 6.4, and that the Plan Sponsor agrees to comply with those provisions.

(b)     The Program may disclose PHI to the Plan Sponsor in order for the Plan Sponsor to carry out Plan Administration Functions that the Plan Sponsor performs, consistent with the provisions of Section 6.3 and 6.4 above.

(c)     The Program, or a health insurance issuer or HMO with respect to the Program, may disclose to the Plan Sponsor information on whether an individual is participating in the Program, or is enrolled in or has disenrolled from a health insurance issuer or HMO offered by the Program.

(d)     The Program may permit an Insurer, HMO or Claims Administrator to disclose PHI to the Plan Sponsor provided that the disclosure is made to a person in the Group, and the disclosure is only for the purposes described in this Section 6.5.

(e)     The Program may not permit an Insurer or HMO with respect to the Program or Plan to disclose PHI to the Plan Sponsor Employer except as permitted by HIPAA.

(f)     The Program may not disclose and may not permit an Insurer or HMO to disclose PHI to the Plan Sponsor as otherwise permitted by HIPAA unless a statement required by Department of Health and Human Services Regulations Section 164.520(b)(1)(iii)(C) is included in the Plan Sponsor's  privacy policy notice.

(g)     The Program may not disclose PHI to the Plan Sponsor for the purpose of employment-related actions or decisions, or in connection with any other benefit or employee benefit plan of the Plan Sponsor.

6.6     Business Associates.  The Program Administrator or its delegate shall enter into a business associate agreement with all "business associates" (as defined under HIPAA) of the Program that will encounter PHI in the course of providing services to the Program.

6.7     HIPAA Information Security Requirement for Electronic PHI.  The Program shall comply with all requirements of the information security regulations of HIPAA for electronic forms of PHI, including 45 CFR 164.306 through 164.314, and take all necessary steps to ensure that the Plan's business associates comply with the requirements.

## ARTICLE VII
## AMENDMENT OR TERMINATION

The Bank reserves the right to amend, curtail benefits or terminate the Program and/or each Plan at any time and from time to time, retroactively or prospectively, for any reason or for no reason; provided, however, that no amendment eliminating a benefit shall be applied to deny benefits for a claim incurred prior to the effective date of the amendment.  The Program may be terminated by appropriate action of an authorized Bank officer, including the Compensation and Benefits Executive.  Any individual Plan of the Program may be amended by appropriate action of the Benefits Executive or its delegate, and may take the form of a written amendment or revisions to the applicable Plan's SPD or summary of material modification.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1     Physical Examination and Autopsy.  The Plan Administrator or a Claims Administrator shall have the right to have a physical examination performed on a Participant with respect to whom benefits are claimed when and so often as they may reasonably require during pendency of a claim hereunder;  and also the right to require an autopsy in case of death where it is not forbidden by law.

8.2     Assignment of Benefits.  All benefits payable may be assigned by the Participant only to the hospital, provider or other person or institution rendering services or furnishing supplies for which benefits are payable under the Program.  The Program shall not be required to inquire into the validity of any assignment, and any payment made in accordance with any assignment and in good faith by the Program shall discharge the obligation of the Program to the extent of the payment.  Participants may not assign their right to file actions under ERISA or any other law regarding the Program.

8.3     Facility of Payment.  The Plan Administrator may, in its sole discretion, direct that benefits due to a Participant, be paid to an individual or individuals as have, in the Plan Administrator's opinion, assumed the care and principal support of a Participant, in the absence of written legal documentation of guardianship.  In the event of the death of the Participant prior to the time all benefit payments due have been made, the Plan Administrator may, in its sole discretion, honor benefit assignments.  Any payment made by the Plan Administrator in accordance with this provision shall fully discharge the Program to the extent of the payments.

8.4 <u>Right of Offset and Recovery.</u> If any benefit is mistakenly paid under a Plan, either in whole or in part, the Plan Administrator shall have the right to offset amounts to be paid in the future as benefits under the Plan, and to recover mistakenly paid amounts from any person or estate with respect to whom the amounts were paid.

8.5 <u>Notice of Address.</u> Each Participant must file with the Program Administrator, in the prescribed manner, his or her Social Security number or other similar identifier approved by the Program Administrator or its delegate, mailing address, and each change of address. Any communications, statements, bills or notices to a Participant's last address as filed with the Program Administrator will be binding on the Participant for all purposes of the Program. The Program Administrator shall not be obligated to search for or to ascertain the whereabouts of any Participant.

8.6 <u>Rules of Construction.</u> The terms of the Program shall be construed according to the principles and in the priority as follows:

(a) First, in accordance with the meaning under, and what will bring the Program into conformity with, the Code and ERISA; and

(b) Second, in accordance with federal law and the laws of the State of New York.

If any provision of the Program shall be held illegal or invalid, the remaining provisions shall be construed as if the provision had not been included.

8.7 <u>State and Federal Mandates.</u> The Program shall comply with any state or federal mandates applicable to the types of benefits provided hereunder, to the extent not preempted by ERISA.

**EXHIBIT A**
**PLANS COMPRISING THE PROGRAM**

1. Accidental Death and Dismemberment Insurance Plan
2. Basic Life Insurance Plan
3. Business Travel Accident Insurance Plan
4. Dental Plan
5. Group Legal Services Plan
6. Health and Wellness Centers Plan
7. Health Care Spending Account
8. Long Term Care Plan (no longer available to new participants)
9. Long-Term Disability Plan
10. Medical Plan
11. Short-Term Disability Plan
12. Supplemental Term Life Insurance Plan
13. Vision Plan

# U.S. Benefits Program Year End Bulletin
## December 2015

In this Year End Bulletin, you'll read about actions that you can take in the coming months with respect to your JPMorgan Chase benefits, including the following:

| ☐ **Now** | • Complete both a biometric Wellness Screening and an online Wellness Assessment between January 1 and December 31, 2015, and earn $200 in your 2016 Medical Reimbursement Account (MRA) and save $500 in 2016 medical payroll contributions. When your covered spouse/domestic partner also completes both activities during 2015, you will earn an additional $100 in your 2016 MRA and save an additional $500 in 2016 medical payroll contributions. *(Page 3)* |
| --- | --- |
| | – Note: The amount shown on the Benefits Web Center when you enrolled in 2016 benefits assumed you (and your covered spouse/ domestic partner) completed these activities during 2015. |
| | • Consider contributing to your 401(k) from the cash portion of your Annual Incentive Compensation. The election period closes at **4 p.m. Eastern time, December 16, 2015**. *(Page 2)* |
| | • Verify your personal information in advance of tax season, so that your new 2015 1095-C and your 2015 W-2 tax forms can be prepared correctly. *(Page 7)* |
| ☐ **Mid-December** | • Watch for your Medical Plan ID card (and debit card) if you changed your health care company or payment method election during Annual Benefits Enrollment. *(Page 5)* |
| ☐ **Beginning January 1, 2016** | • Complete Additional Wellness Activities to maximize your 2016 MRA funds. *(Page 3)* |
| | • W-2 Form available in mid-January. *(Page 7)* |
| | • In late January, look for information about the $750 Special Award to the 401(k) plan for eligible employees. *(Page 2)* |
| | • In late January, the new tax form, 1095-C, will be available online and will be mailed no later than February 1. *(Page 7)* |
| ☐ **Early February 2016** | • Watch for information about matching contributions credited to your 401(k) Savings Plan account, if you are eligible. *(Page 2)* |

| TABLE OF CONTENTS | Page |
| --- | --- |
| Retirement Savings Plan | 2 |
| Health Care & Insurance Plans | 3 |
| Beneficiaries | 6 |
| Update Your Personal Information | 6 |
| Important Tax Reminders | 7 |
| Contact Information | 8 |
| Appendix - Summary Plan Description Updates and Information | 10 |

# RETIREMENT SAVINGS PLAN REMINDERS

## 401(k) Savings Plan

### 401(k) Plan 2015 matching contributions

In early February 2016, the firm will credit the 2015 annual matching contribution to the 401(k) Savings Plan accounts of eligible[1] plan participants. Confirmation statements will be distributed to eligible participants in February 2016.

### 401(k) Plan Annual Incentive Compensation election period

If you're eligible for Annual Incentive Compensation[2] and are eligible for matching contributions, you should consider contributing from the cash portion of your incentive. **The election period is open _now through December 16, 2015 at 4 p.m. Eastern time._**[3] If you previously made an election and wish to continue that same election, no action is required on your part.

> **401(k) SAVINGS PLAN LEGAL LIMITS FOR 2016**
> The annual contribution limit under the 401(k) Savings Plan for 2016 is $18,000 (or $24,000 if you are age 50 or over). Your contributions automatically continue until you reach the annual contribution limit based on your age.

### Did you contribute to another employer's 401(k) plan in 2015?

If you were hired in 2015 and you participated in another employer's 401(k) plan prior to joining JPMorgan Chase, it's your responsibility to ensure that your before-tax and Roth contributions to all plans combined don't exceed the annual $18,000 contribution limit for 2015 (or $24,000 if you are age 50 or older). If you exceeded the contribution limit, you may request a refund of the excess amount no later than April 1, 2016, by contacting the 401(k) Savings Plan Call Center. If you don't request a refund by that date, these contributions will be taxed twice.

Remember, you were automatically enrolled in the 401(k) Savings Plan if you did not take any action during the opt-out period.

### A change to the Small Cap Core Fund in the 401(k) Plan

As a reminder, effective as of close of business on Friday, December 18, 2015, the Small Cap Core Fund will be converted from a mutual fund format to a separate account format. The investment strategy, risks and rewards associated with an investment in the Small Cap Core Fund are virtually identical to those of the Select shares of the mutual fund. However, investment management fees/annual expenses will no longer be charged against the fund's performance. If you have questions about these changes to the Small Cap Core Fund, please contact the JPMorgan Chase 401(k) Savings Plan Call Center.

### Special Award

This year, JPMorgan Chase is providing a Special Award of $750 (not to exceed 7.5% of salary/regular pay or fixed pay in certain locations) to the 401(k) plan. The award will be made in late January 2016 to all eligible employees who have at least one year of service as of December 31, 2015, and whose total annual cash compensation is less than $60,000 (determined as of August 1, 2015).

> **DID YOU KNOW?**
> JPMorgan Chase contributed more than **$380 million** in 401(k) matching contributions and more than **$40 million** for the Special Award in 2015.

---

[1] _To be eligible for 2015 matching contributions, you had to have completed at least one year of service at the time of your contribution to the plan and be actively employed on December 31, 2015 (certain exceptions apply). Also, your Total Annual Cash Compensation in effect for the 2015 plan year (determined as of August 1, 2014) must be less than $250,000._

[2] _Annual Incentive Compensation is the annual cash incentive compensation, if any, awarded under the firm's Performance-Based Incentive Plan (generally paid in January) or Branch Profitability Incentive Plan (generally paid in February)._

[3] _The deadline for employees subject to quarterly window periods who have elected to have a portion of future contributions invested in the JPMorgan Chase Common Stock Fund has already passed._

**Important information about the 401(k) Savings Plan statement**
It's easy for participants (or for employees who have not yet enrolled) to find information about the 401(k) Savings Plan online through the 401(k) Savings Plan Web Center.  In addition, quarterly and annual statements are provided to help participants monitor their retirement savings. Annual statements are distributed in paper, and are also posted to the 401(k) Savings Plan Web Center. The 2015 annual statement will be mailed in February 2016.  Statements for the quarters ending March 31, June 30, and September 30 are available online through the 401(k) Savings Plan Web Center approximately three weeks following quarter end. If you cannot access a quarterly statement online, you may request a printed copy of the current quarter's statement, at no charge, by contacting the 401(k) Savings Plan Call Center.

**Pension reminder: 2016 interest credit rate**
The Retirement Plan is a JPMorgan Chase-paid cash balance pension plan in which you are automatically enrolled after you complete one year of service.  Your account grows over time through pay credits and interest credits.  The interest credit rate for 2016 will be 4.5%.

***Please Note:*** *If you have a prior WaMu Plan account balance, which is part of the JPMorgan Chase Retirement Plan, it will continue to receive the WaMu Plan's interest credit rate.  The WaMu Plan interest credit rate is the average annual interest rate on 30-year Treasury bonds for business days in November of the previous calendar year, with a minimum annual interest credit rate of 3%.  The 2016 WaMu Plan interest credit rate is not yet available.  The final rate will be viewable on My Pension once available.*

## HEALTH CARE & INSURANCE PLANS REMINDERS
### Medical Reimbursement Account (MRA)
**Maximize your MRA funding**
If you have not yet earned the maximum funds in your MRA for **2015,** you may still have time to complete the applicable activities by December 31, 2015.  As a reminder, any unused 2015 MRA funds will carry over into 2016.  For information on what activities you can still do to earn 2015 MRA funds, access the 2015 MRA Action Plan on **My Health** > My 2015 Health Benefits.

> **Don't Forget!**
> You must complete **both** a Wellness Screening and a Wellness Assessment during 2015 **to earn $200** in 2016 MRA funds and **save $500** in 2016 medical payroll contributions.

You have the opportunity to earn up to a total of $1,000 in **2016 MRA** funds (or $1,400 if your covered spouse/domestic partner also participates) if you are enrolled in the JPMorgan Chase Medical Plan.

Complete **BOTH** Initial Wellness Activities (the Wellness Screening **and** Wellness Assessment) **during 2015** to **earn** $200 in your 2016 MRA and **save** $500 in your 2016 medical payroll contributions; earn an additional $100 in your 2016 MRA and save an additional $500 in your 2016 medical payroll contributions if your covered spouse/domestic partner takes action during 2015.  The funds related to the Initial Wellness Activities will automatically be credited to your MRA in January 2016.  You and your covered spouse/domestic partner can go to **My Health** > Take Action > Wellness Screening> Tools and Resources for tip sheets on how to track completion of your MRA funds at your health care company.

> **2016 Cost for Medical Coverage**
> The 2016 costs for JPMorgan Chase Medical Plan coverage, which were displayed on the Benefits Web Center during Annual Benefits Enrollment, assumed that you (and your covered spouse/domestic partner) would complete a biometric Wellness Screening and online Wellness Assessment during 2015.

If you haven't already done so, sign up for your biometric **Wellness Screening here.** Then complete your **Wellness Assessment** on the Cigna or UnitedHealthcare (UHC) website, accessible here.

**Starting January 1 - December 31, 2016,** complete **up to four** Additional Wellness Activities, ($200 each) and earn an additional $800. You will earn an additional $300 if your covered spouse/domestic partner also completes three activities ($100 each) during 2016. For a list of activities you can complete to earn additional funding in your 2016 MRA, refer to the **2016 MRA Action Plan** on **My Health** > My 2016 Health Benefits. Note:  In 2016, MRA funds will no longer be offered for transplant or bariatric surgeries.

**Accessing your MRA funds**
Your medical and prescription drug expenses are paid from your MRA based on the payment method you elected during the annual benefits enrollment period (Automatic Claim Payment or Debit Card).  For more information about paying your expenses through your MRA, see **Helping You Choose: Automatic Claim Payment vs. Debit Card Tip Sheet** on My Health > 2016 Benefits Resources > Tip Sheets.

> **Not enrolled in the JPMorgan Chase Medical Plan?**
> As a U.S. benefits-eligible employee, you'll still be able to earn up to $600 in 2016 Wellness Rewards payable (and taxable) through payroll if you didn't enroll in the JPMorgan Chase Medical Plan for 2016. You can earn $200 for completing both a Wellness Screening **and** a Wellness Assessment between **January 1 and December 31, 2015**. You can also earn an additional $400 if you complete two Additional Wellness Activities during 2016 after you complete your Wellness Screening and Assessment.

**New 2016 Wellness and MRA Platforms for those enrolled in the 2016 JPMorgan Chase Medical Plan**
Our health care companies, Cigna and UHC, have developed new 2016 platforms for viewing your MRA balances and participating in Wellness Activities. Both include game-like online Wellness Assessments that help you identify your health goals and create a personalized Wellness program. Access these assessments through **My Health** > My 2016 Health Benefits > My MRA Tracker. Both platforms help you learn ways to earn additional MRA funds.

## Health Care Spending Account (HCSA)
**Carry over up to $500 for 2016 HCSA**
Up to $500 of your unused **2015** HCSA balance will carry over into 2016 (this same carryover amount will be allowed at the end of each year into the following year).

Your 2015 balance will be used to pay any claims with dates of service in 2015 that are received in early 2016 through your HCSA claims filing deadline (March 31, 2016).  HCSA balances over $500 will be forfeited after this deadline. Up to $500 of any available remaining balance will be used to pay any claims incurred during 2016.

As a reminder, your HCSA is funded by you — with pre-tax dollars.  Your HCSA can be used for eligible out-of-pocket medical and prescription drug expenses after your MRA funds are exhausted.  Since dental and vision expenses can't be paid from the MRA, you can start using your HCSA for those expenses as soon as the plan year begins on January 1 or when your coverage is first effective, whichever is later.

## Prescription Drug Plan updates
As a reminder, starting January 1, 2016, the Prescription Drug Plan will contain a **mandatory generic drug program**, in which generic drugs are substituted for all brand-name prescription drugs with a direct generic equivalent. If you fill your prescription with a brand-name drug when a generic alternative is available, you will pay the entire cost difference plus the generic drug copay. **Note:** These cost differences will not be limited by per prescription maximums or annual out-of-pocket maximum limits.

Other changes include:
- Adopting CVS/caremark's Specialty drug list of covered and excluded drugs (approximately 40 specialty drugs will no longer be covered); subject to change quarterly by CVS/caremark
- In 2015, we adopted CVS/caremark's standard drug list and excluded approximately 100 drugs; for 2016, an additional 30 drugs will no longer be covered. This list is subject to annual changes

Both lists are viewable on Caremark's website.  Additionally, directly impacted members would have received home mailings with further information.

Effective January 1, 2016, due to the Affordable Care Act (ACA) requirements, the Prescription Drug Plan will cover generic aspirin at $0 cost share for females greater than or equal to age 12 and generic fluoride supplements at $0 cost share for children less than or equal to age 5.  Also two generic breast cancer drugs - generic tamoxifen and raloxifene - are covered at 100% as part of a treatment therapy for those women at risk for breast cancer and/or diagnosed with breast cancer.

If you have questions or need more information about your Prescription Drug Plan, please visit Caremark's website available through **My Health** > My prescription drug plan.

### Claims filing deadlines for 2015 JPMorgan Chase benefits

Claim forms are available online via **My Health**. Or, you can contact your 2015 plan administrator/insurance carrier directly for a claim form.

| Benefit Plan | 2015 Claims Filing Deadline |
|---|---|
| **Medical (including MRA), Prescription Drug, Dental, Vision, Group Legal Services** | December 31, 2016 |
| **Health Care Spending Account, Child/Elder Care Spending Account** | March 31, 2016.  Remember, MRA funds will be used **first** before HCSA funds for any out-of-pocket eligible medical and prescription drug expenses. |
| **Transportation Spending Accounts—Parking Account** | 180 days (six months) following the end of any particular month that you participated in the Parking "Pay Me Back"* Account. |

*Generally, the "Pay Me Back" feature applies only to the Parking Account.*

> **2016 Transportation Spending Accounts Limits**
> The monthly Transportation Spending Accounts before-tax limits for 2016 will be:
>
> **Transit:** $130
> **Parking:** $255

### Health care plan identification (ID) cards

If you made no changes to your health care plan elections, you can generally continue to use your current ID cards and debit card, if applicable.
- If you made changes or are newly enrolled, you will receive a Medical Plan ID card from your 2016 health care company in December, as well as a debit card (if you selected that payment option for your MRA and/or HCSA).
- If you are newly enrolled in the Medical Plan, you will also receive a Prescription Drug ID card from CVS/caremark.
- If you newly selected the debit card reimbursement option for your MRA and HCSA, if applicable, you will receive a MRA/HCSA debit card from your health care company.

### If you changed your health care company

If you changed your health care company for 2016 (from Cigna to UHC or vice versa), the results of your biometric Wellness Screening and online Wellness Assessment, taken during 2015, will be sent to your new company, who will then credit your 2016 MRA.  There will be a delay of approximately four months in transferring any 2015 unused MRA funds to your 2016 MRA at your new health care company.  This delay is designed to allow your 2015 health care company access to 2015 funds in your MRA to pay any late-year 2015 medical and prescription drug claims that are processed in the first four months of 2016.  If this causes you a financial concern, contact your 2016 health care company.  For claims incurred in 2015, you'll continue to access your 2015 MRA **through April 30, 2016**, (unless the MRA funds are exhausted) and/or HCSA funds through **March 31, 2016**, (unless they are exhausted) through your 2015 health care company.

> If you currently have a debit card for your 2015 MRA/HCSA, and did not change your health care company or your payment method for health care expenses, please retain it as the card is valid for 2016.

### Group Personal Excess Liability Plan

If you enrolled in the Group Personal Excess Liability Plan for 2016, you'll receive your *Coverage Summary Certificate* by email from **Arthur J. Gallagher Risk Management Services, Inc <Mail-Server@csr24.email>**. If you do not receive this email by mid-January, please contact Arthur J. Gallagher Risk Management Services, Inc., the plan administrator, at 1-866-631-4630, Monday through Friday, from 9 a.m. to 5 p.m. Eastern time, except certain holidays.  If you do not have a corporate email address, a certificate will be mailed to your home address.

## BENEFICIARIES

You are encouraged to review your beneficiary designations on a regular basis and keep them up to date.

- If you don't have a valid beneficiary designation on file at the time of your death:
  o The proceeds of the Basic Life, Business Travel Accident, Supplemental Term Life, and Accidental Death and Dismemberment (AD&D) Insurance Plans upon your death (if applicable) will automatically be paid to your spouse, if applicable.
  o Your vested account balances under the 401(k) Savings Plan and Retirement Plan will automatically be paid to your spouse[4] or to your estate if you are not married.
- If you would like to name someone else as your beneficiary, or for other options available to you, please update your beneficiary designations using the Online Beneficiary Designations site at **me@jpmc** > Benefits & Rewards > View or Update Beneficiaries. The site allows you to designate beneficiaries electronically and review and update those designations as needed, for instance in the event of a status change (divorce, marriage, or birth/adoption of a child).
- For more information, please refer to the respective sections of *Your Guide to Benefits at JPMorgan Chase* (Summary Plan Descriptions) available on **me@jpmc** > Benefits & Rewards.
- **Important:** If you are married and you named someone other than your spouse as your Retirement Plan beneficiary before you turned 35, that beneficiary designation will become invalid as of the first day of the plan year when you reach age 35. This means that, unless you submit a new beneficiary designation election after you turn 35, your Retirement Plan vested benefit will be paid to your spouse if you are married at the time of your death, or your estate if you are not.

## UPDATE YOUR PERSONAL INFORMATION

### Qualified status changes during the year

If you experience a qualified change in benefits status (such as marriage, divorce, birth or adoption of a child), you must make changes to your benefits coverage **within 31 days of the qualifying event** through the Benefits Web Center or *access*HR Benefits Contact Center for coverage to be effective on the date of the qualifying event. If you miss the 31-day deadline, coverage for certain benefits will be effective as of the date you contact the *access*HR Benefits Contact Center. In order to have retroactive coverage, you may be required to pay for your coverage on an after-tax basis for the period prior to the date you first contacted the *access*HR Benefits Contact Center. As a reminder, if your eligibility for benefits changes due to a spouse or domestic partner's benefits enrollment, this is considered a qualified change in benefits status, and you will be able to make changes to your benefits coverage as a result. For additional information, please go to **My Health** > Benefits updates for new situations > Benefits Status Change Guide. In addition, in the case of some status changes (such as change in marital status or the birth/adoption of a child), you should consider reviewing your beneficiary designations and making changes as necessary.

### Important note on dependent eligibility

You are responsible for understanding the JPMorgan Chase dependent eligibility rules and abiding by them. Each year during your designated enrollment period, or within 31 days following a qualified status change, it is important that you review the firm's dependent eligibility rules and the status of your covered dependents, and make any necessary changes. You can access the dependent eligibility requirements online via **My Health** > Benefits, Health & Wellness Resources > Benefits updates for new situations.

> **IMPORTANT!**
> You will be required to provide documentation when you add a new dependent to coverage under the Health Care and Insurance Plans including those you added during annual enrollment. Please see the dependent eligibility requirements online via **My Health** for more information.

---

[4] Under federal law governing the plans, the term "spouse" refers to any person to whom you are legally married, including same-sex marriage; the term "spouse" does not include a civil union or a registered domestic partnership arrangement

## Verify your personal information

In advance of tax season, make sure that your personal information is accurate on JPMorgan Chase systems so that your 2015 W-2 tax forms can be prepared correctly. Please be sure to verify your name, home address and marital status on **My Personal Profile** (https://mpp.jpmchase.net). On an ongoing basis, it's important for you to update your marital status as well as changes to other personal information, such as address changes.

If you need to make changes to your Social Security number, call the *access*HR Benefits Contact Center. Changes must be received by December 31, 2015, in order to ensure that your W-2 is correct. In addition, please be sure you have a current phone number on record, as our health care companies will be contacting participants with important wellness information. Please answer the call when received or respond back for important information that can affect your health.

If you have not already done so, consider signing-up to receive your W-2 online. It's faster, easier, "greener" and more secure than mailing a paper copy to your home address. To sign up for an electronic W-2, go to My Personal Profile > Tax > W2 Consent. You must sign up by December 31; otherwise, your W-2 form will be mailed to your home address by the end of January 2016.

## Update your dependent's Social Security number

If you haven't already done so, go to the Benefits Web Center through **My Health** to add Social Security numbers for all of your dependents covered under a JPMorgan Chase Medical health care plan, including those you added during Annual Enrollment.

> If you haven't already, be sure to also update your personal information on **me@jpmc|Connect**, and participate in our this is me @jpmc campaign that encourages you to update your profile. By doing so, you will help the firm:
> - Support diversity recruitment and campus efforts
> - Develop internal mobility opportunities
> - Understand the true diversity of the firm
> - Meet a legal requirement in the U.S. to invite employees to voluntarily self-identify if they have a disability
>
> JPMorgan Chase's goal is 100% participation, so please help support our efforts by updating your personal information as a part of our this is me@jpmc campaign.
>
> this is
> *me*

---

## IMPORTANT TAX REMINDERS

### Important reminder: Health care coverage legally required or pay penalty tax

As a reminder, under the Patient Protection and Affordable Care Act (ACA), all U.S. citizens and legal residents (adults and children) are required to have health care coverage, or pay a penalty tax. Coverage provided through the JPMorgan Chase Medical Plan satisfies this requirement. If you would like to explore options available through the Marketplace established by the ACA and/or access additional resources and information please go to **www.HealthCare.gov**. or visit **My Health** > Learning Center.

- **New Required Tax Form:** As part of the Affordable Care Act, in early 2016 impacted U.S. active and inactive employees will receive a statement for the first time (Form 1095-C) detailing the health coverage JPMorgan Chase offered to them and their dependents during 2015. JPMorgan Chase will mail your Form 1095-C to you no later than February 1, 2016. Please allow seven to ten business days for delivery. Alternatively, if you'd like to receive your Form 1095-C online, the form will be posted late January.
  - Additional information on electronic notifications and the 1095-C will be provided starting later this month, and throughout January, including a support web-page with Frequently Asked Questions (FAQs).

> **If you have questions about ACA, you may contact:**
> - **Health Advocate** at 1-866-611-8298 and speak with a representative. Representatives are available Monday through Friday from 8 a.m. to 9 p.m. Eastern time. You may also reach Health Advocate via email: answers@HealthAdvocate.com
> - **Your health care company** (for general questions). Contact information can be found on your ID card.
> - **The U.S. government's dedicated Help Center** (available 24/7) at 1-800-318-2596 (TTY: 1-855-889-4325) or visit **www.HealthCare.gov**.

## IRS maximum for employer-provided child care benefits

The Internal Revenue Service (IRS) limits employer provided, tax-free child care benefits to $5,000 per family per year. This limit includes the value of the Child/Elder (Dependent) Care Spending Account contributions and the value of the use of the back-up child care program. Highly compensated employees, defined as those whose compensation reflected on their 2015 W-2 form is $120,000 or more, are subject to a lower tax-free child care limit and will be contacted directly if they participate in the Child/Elder Care Spending Account. The value of the Back-up Child Care Program benefit is determined by calculating the difference between the Fair Market Value (FMV) of one day of care and the co-pay. The firm has determined the FMV of a day of back-up child care to be $60.  Any amount over the tax-free limit will be considered imputed income and tax will be owed on that amount.

> If you would like to change your Child/Elder Care Spending Account contributions to avoid going over the IRS limit for 2016, you may make a change to your election **by December 31, 2015** through the *access*HR Benefits Contact Center.

| Benefits Web Centers/Call Centers | | |
|---|---|---|
| You can access the various Web Centers from work or home, via **My Health** or **My Rewards**:<br><br>**My Health** via me@jpmc from the intranet or **myhealth.jpmorganchase.com**<br>**My Rewards** from the intranet or **myrewards.jpmorganchase.com** | | |
| **Plan/Program** | **Web Center** | **Call Center** |
| Retirement (Pension) Plan | My Pension via **My Rewards** | ***access*HR Contact Center**<br><br>▪ 1-877-JPMChase (1-877-576-2427)<br>▪ Outside the U.S.: 1-212-552-5100<br>▪ Representatives available  8 a.m. to 8:30 p.m. (ET), M–F (except certain U.S. holidays) |
| **401(k) Savings Plan**<br>*(including participants in the Heritage Bank One SSIP)* | 401(k) Savings Plan Web Center via **My Rewards** | **401(k) Savings Plan Call Center**<br><br>▪ 1-866-JPMC401k (1-866-576-2401)<br>▪ Outside the U.S.: 1-847-857-3001<br>▪ TTY number: 1-800-345-1833<br>▪ Representatives available 8 a.m. to 9 p.m. (ET), M–F (except New York Stock Exchange holidays) |
| **Medical Plan/ Prescription Drug Plan** *(including MRA and wellness information)* | **My Health via me@jpmc>** "My medical plan website" or "My prescription drug plan website" | Call the number on the back of your ID card |
| **Dental, Vision, Life and Accident, Long-Term Disability, Group Personal Excess Liability Insurance, Group Legal Services** | **My Health > "Other Benefits"** | ***access*HR Benefits Contact Center**<br><br>▪ 1-877-JPMChase (1-877-576-2427)<br>▪ Outside the U.S.: 1-212-552-5100<br>▪ Representatives available  8 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |

| Plan/Program | Web Center | Call Center |
|---|---|---|
| **Health Care Spending Account (HCSA)** | If you are enrolled in the JPMorgan Chase Medical Plan (Option 1 or 2): **My Health** > "My HCSA balance"<br><br>If you are not enrolled in the JPMorgan Chase Medical Plan: **My Health** > "Health Care Spending Account Web Center" | If you are enrolled in the JPMorgan Chase Medical Plan (Option 1 or 2): Call the number on the back of your ID card<br><br>If you are not enrolled in the JPMorgan Chase Medical Plan:<br><br>**ADP Participant Service Center**<br><br>▪ 1-866-872-2427<br>Representatives available 7 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |
| **Child/Elder Care Spending Accounts** | Child/Elder Care Spending Account Web Center via **My Rewards** | **ADP Participant Service Center**<br><br>▪ 1-866-872-2427<br>▪ Representatives available 7 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |
| **Transportation Spending Accounts (Transit/Parking)** | Transportation Spending Accounts Web Center via **My Rewards** | **WageWorks Customer Service Center**<br><br>▪ 1-877-924-3967<br>▪ TTY number: 1-866-361-8017<br>▪ Representatives available 8 a.m. to 8 p.m. (ET), M–F (except certain U.S. holidays) |
| **Wellness Rewards**<br>*(If you are not enrolled in JPMC Medical Plan coverage)* | **My Health** > Wellness Web Center | **Cigna**<br><br>▪ 1-800-854-7304<br>▪ Representatives available 9 a.m. to 7:30 p.m. (ET), M-TH and 9 a.m. to 6 p.m. FR (except certain U.S. holidays) |
| **Beneficiary Designations** | **me@jpmc** > Benefits & Rewards > View or Update Beneficiaries<br><br>or **beneficiary.jpmorganchase.com** | **Call *access*HR Contact Center for a paper form.**<br><br>▪ 1-877-JPMChase (1-877-576-2427)<br>▪ Outside the U.S.: 1-212-552-5100<br>▪ Representatives available 8 a.m. to 8:30 p.m. (ET), M–F (except certain U.S. holidays) |

# Appendix - Summary Plan Description (SPD) Updates and Information

## Medical Plan SPD

### Continuing Coverage under COBRA

Under the Consolidated Omnibus Budget Reconciliation Act of 1985 as amended (COBRA), you and your covered dependents have the right to continue medical coverage at your own expense for a certain period of time if your JPMorgan Chase-provided coverage ends. (For domestic partners, JPMorgan Chase may provide COBRA-like coverage if the domestic partner was covered under the JPMorgan Chase Medical Plan at the time that coverage ended.) If continuation coverage is elected, the cost is typically 102% of the plan's total cost of providing coverage for up to 18 months. However, if you are eligible for benefits under the Severance Pay Plan, you will receive a COBRA subsidy and will pay the active employee rate for medical coverage under COBRA for the lesser of 1) six months; or 2) the number of months of severance benefits you receive. Regardless of whether you were ever informed that you are eligible for benefits under the Severance Pay Plan, JPMorgan Chase's discretionary determination that you engaged in misconduct or violated the company's Code of Conduct before or during the COBRA subsidy period or that you could have been terminated for cause will render you ineligible for a COBRA subsidy.

Please see the "Plan Administration" section of Your Guide to Benefits (the Summary Plan Descriptions) on me@jpmc, My Rewards, or My Health for more information on COBRA.

### Prescription Drug Plan

As of 8/1/2015, compound medications containing bulk powders and topical analgesics are excluded from coverage. Please Note: Your physician and/or pharmacist can contact CVS/caremark to seek exception approval for specific medical reasons.

### Out-of-Area Network Participants

The JPMorgan Chase Medical Plan vendors, Cigna and UnitedHealthcare (UHC), offer broad national networks. However, in certain extremely limited situations, participants may be in an area without access to the expected level of Cigna's or UHC's network coverage. In those rare circumstances and effective as of each annual benefits enrollment period, participants are offered coverage during annual benefits enrollment through UHC's Out of Area (OOA) program and are offered participation in Option 1. OOA participants can use any provider and the services are covered as in-network. Typically, eligibility for OOA participation is determined by UHC and is based on the number of primary care physicians and hospitals within a certain mileage radius of your home zip code. OOA eligibility can change, as determined by UHC, as more physicians or hospitals are added in your area.

### New Address for Health Care and Insurance Plans Summary Plan Descriptions

As of January 1, 2016, the following addresses have changed for the Health Care and Insurance Plans:

| | |
|---|---|
| **Plan Sponsor and Plan Administrator Address**<br>(Note: Plan Administrator address has not changed for Short Term Disability and Business Travel Accident Plans from current address listed in their SPDs) | 28 Liberty Street<br>FL 34, NY1-A341<br>New York, NY 10005 |
| **Agent for Service of Legal Process Address** | 4 Chase Metrotech Center<br>FL 18, NY1-C312<br>Brooklyn, NY 11245 |

*The JPMorgan Chase U.S. Benefits Program is available to most employees on a U.S. payroll who are regularly scheduled to work 20 hours or more a week and who are employed by JPMorgan Chase & Co. or one of its subsidiaries to the extent that such subsidiary has adopted the JPMorgan Chase U.S. Benefits Program. This information does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is any discrepancy between this information and the governing documents, the governing documents will control. JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time. The JPMorgan Chase U.S. Benefits Program does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.*

*This Bulletin modifies and changes Your Guide to Benefits at JPMorgan Chase and is a summary of material modification for certain plans under the JPMorgan Chase U.S. Benefits Program. It supplements, clarifies, and amends various sections of the Guide and the Summary Plan Descriptions, and should be referred to as part of the Guide and the Summary Plan Descriptions. Please retain this information for your records.*

*With respect to the JPMorgan Chase 401(k) Savings Plan, this document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.*

# U.S. Benefits Program Year End Bulletin
## December 2016

In this Year End Bulletin, you'll read about actions that you can take in the coming months with respect to your JPMorgan Chase benefits, including the following:

| ☐ Now | <ul><li>Complete both a biometric Wellness Screening and an online Wellness Assessment between January 1 and December 31, 2016, and earn $200 in your 2017 Medical Reimbursement Account (MRA) and save $500 in 2017 medical payroll contributions. When your covered spouse/domestic partner also completes both activities during 2016, you will earn an additional $100 in your 2017 MRA and save an additional $500 in 2017 medical payroll contributions. *(Page 3)*</li><ul><li>– **Important:** Starting in January 2017, your 2017 medical payroll contributions will initially reflect these savings. If you or your covered spouse/domestic partner chooses **not** to complete both activities during 2016, your medical payroll contributions will increase in spring 2017 for both you and your covered spouse/domestic partner. The full $500 (or $1,000 if you are covering a spouse/domestic partner) increase will be applied in equal installments to each pay from the first effective pay in spring 2017 through December 2017.</li></ul><li>Complete Additional Wellness Activities to maximize your 2016 MRA funds. *(Page 3)*</li><li>Consider contributing to your 401(k) from the cash portion of your Annual Incentive Compensation paid to you in early 2017 (if any). The election period closes at **4 p.m. Eastern time, December 30, 2016.** *(Page 2)*</li><li>Verify your personal information in advance of tax season, so that your 2016 1095-C (tax form detailing your participation in JPMC medical plan) and your 2016 W-2 tax forms can be prepared correctly. *(Page 7)*</li></ul> |
|---|---|
| ☐ **Mid-December 2016** | <ul><li>Watch for your Medical Plan ID card (and debit card) if you changed your health care company or payment method election during Annual Benefits Enrollment. *(Page 5)*</li></ul> |
| ☐ **Before December 31, 2016** | <ul><li>**Don't wait until December 31 to complete a Wellness Screening and Assessment. Call centers for JPMC, Cigna, UnitedHealthcare and Provant (JPMC screening vendor) will be closed, or offering limited services, from Saturday, Dec. 31, 2016 to Monday, Jan. 2, 2017. In addition, some labs or in-store clinics may also be closed due to the holiday on Dec. 31. Call and confirm their hours of operation in advance.**</li></ul> |
| ☐ **Beginning January 1, 2017** | <ul><li>Complete Additional Wellness Activities to maximize your 2017 MRA funds. *(page 3)*</li><li>W-2 Form available in mid-January. *(Page 7)*</li><li>In late January, look for information about the $750 Special Award to the 401(k) plan for eligible employees. *(Page 2)*</li></ul> |
| ☐ **February 2017** | <ul><li>In early-February, watch for information about matching contributions credited to your 401(k) Savings Plan account, if you are eligible. *(Page 2)*</li><li>In mid-February, the 1095-C tax form, will be available online and will be mailed soon after. *(Page 7)*</li></ul> |

| TABLE OF CONTENTS | Page |
|---|---|
| Retirement Savings Plan | 2 |
| Health Care & Insurance Plans | 3 |
| Beneficiaries | 5 |
| Update Your Personal Information | 6 |
| Important Tax Reminders | 7 |
| Contact Information | 8 |

## RETIREMENT SAVINGS PLAN REMINDERS

### 401(k) Savings Plan

### 401(k) Plan 2016 matching contributions
In early February 2017, the firm will credit the 2016 annual matching contribution to the 401(k) Savings Plan accounts of eligible[1] plan participants.  Confirmation statements will be distributed to eligible participants in February 2017.

### 401(k) Plan Annual Incentive Compensation election period
If you're eligible for Annual Incentive Compensation[2] and are eligible for matching contributions, you should consider contributing from the cash portion of your incentive.  **You may make an election** *now through December 30, 2016 at 4 p.m. Eastern time.*[3] If you previously made an election and wish to continue that same election, no action is required on your part.

> **401(k) SAVINGS PLAN**
> **LEGAL LIMITS FOR 2017**
>
> The annual contribution limit under the 401(k) Savings Plan for 2017 is $18,000 (or $24,000 if you are age 50 or over). Your contributions automatically continue until you reach the annual contribution limit based on your age.

### Did you contribute to another employer's 401(k) plan in 2016?
If you were hired in 2016 and you participated in another employer's 401(k) plan prior to joining JPMorgan Chase, it's your responsibility to ensure that your before-tax and Roth contributions to all plans combined don't exceed the annual $18,000 contribution limit for 2016 (or $24,000 if you are age 50 or older).  If you exceeded the contribution limit, you may request a refund of the excess amount no later than March 31, 2017, by contacting the 401(k) Savings Plan Call Center.  If you don't request a refund by that date, these contributions will be taxed twice.

Remember, you were automatically enrolled in the 401(k) Savings Plan if you did not take any action during the opt-out period.

### Special Award
JPMorgan Chase is providing a Special Award of $750 (not to exceed 7.5% of salary/regular pay or fixed pay in certain locations) to the 401(k) plan. The award will be made in late January 2017 to all eligible employees who have at least one year of service as of December 31, 2016, and whose total annual cash compensation is less than $60,000 (determined as of August 1, 2016).

> **DID YOU KNOW?**
> JPMorgan Chase contributed more than **$415 million** in 401(k) matching contributions and more than **$45 million** for the Special Award last year.

### Important information about the 401(k) Savings Plan statement

It's easy for participants (or for employees who have not yet enrolled) to find information about the 401(k) Savings Plan online through the 401(k) Savings Plan Web Center.  In addition, quarterly and annual statements are provided to help participants monitor their retirement savings. Annual statements are distributed in paper, and are also posted to the 401(k) Savings Plan Web Center. The 2016 annual statement will be mailed in February 2017.  Statements for the quarters ending March 31, June 30, and September 30 are available online through the 401(k) Savings Plan Web Center approximately three weeks following quarter end. If you cannot access a quarterly statement online, you may request a printed copy of the current quarter's statement, at no charge, by contacting the 401(k) Savings Plan Call Center.

---

[1] *To be eligible for 2016 matching contributions, you had to have completed at least one year of service at the time of your contribution to the plan and be actively employed on December 31, 2016 (certain exceptions apply). Also, your Total Annual Cash Compensation in effect for the 2016 plan year (determined as of August 1, 2015) must be less than $250,000.*
[2] *Annual Incentive Compensation is the annual cash incentive compensation, if any, awarded under the firm's Performance-Based Incentive Plan (generally paid in January) or Branch Profitability Incentive Plan (generally paid in February).*
[3] *The deadline for employees subject to quarterly window periods who have elected to have a portion of future contributions invested in the JPMorgan Chase Common Stock Fund has already passed.*

December 2016                                                                                                                     2

**Pension reminder: 2017 interest credit rate**

The Retirement Plan is a JPMorgan Chase-paid cash balance pension plan in which you are automatically enrolled after you complete one year of service. Your account grows over time through pay credits and interest credits. The interest credit rate for 2017 will be 4.5%.

*Please Note: If you have a prior WaMu Plan account balance, which is part of the JPMorgan Chase Retirement Plan, it will continue to receive the WaMu Plan's interest credit rate. The WaMu Plan interest credit rate is the average annual interest rate on 30-year Treasury bonds for business days in November of the previous calendar year, with a minimum annual interest credit rate of 3%. The 2017 WaMu Plan interest credit rate is not yet available. The final rate will be viewable on My Pension once available.*

---

## HEALTH CARE & INSURANCE PLANS REMINDERS

### Medical Reimbursement Account (MRA)
**Maximize your MRA funding**
If you have not yet earned the maximum funds in your MRA for 2016, you may still have time to complete the applicable activities by December 31, 2016. As a reminder, any unused 2016 MRA funds will carry over into 2017. For information on what activities you can still do to earn 2016 MRA funds, access the 2016 MRA Action Plan on **My Health** > My Medical Reimbursement Account.

You have the opportunity to earn up to a total of $1,000 in **2016 MRA** funds (or $1,400 if your covered spouse/domestic partner also participates) if you are enrolled in the JPMorgan Chase Medical Plan.

Complete **BOTH** Initial Wellness Activities (the Wellness Screening **and** Wellness Assessment) **during 2016** to earn $200 in your 2017 MRA and **save** $500 in your 2017 medical payroll contributions [4]; earn an additional $100 in your 2017 MRA and save an additional $500 in your 2017 medical payroll contributions if your covered spouse/domestic partner takes action during 2016. The funds related to the Initial Wellness Activities will automatically be credited to your MRA in mid-January 2017. You can go to **My Health** > My MRA Tracker to see the completion of your MRA funds at your health care company.

If you haven't already done so, sign up for your biometric **Wellness Screening** here. Then complete your online **Wellness Assessment** on the Cigna or UnitedHealthcare (UHC) website, accessible here. **Don't wait until December 31 to complete a Wellness Screening and Assessment. Call centers for JPMC, Cigna, UnitedHealthcare and Provant (JPMC screening vendor) will be closed, or offering limited services, from Saturday, Dec. 31, 2016 to Monday, Jan. 2, 2017. In addition, some labs or in-store clinics may also be closed due to the holiday on Dec. 31. Call and confirm their hours of operation in advance.** Go to **My Health** > Completing a Wellness Screening and Assessment for more information.

**Starting January 1 - December 29, 2017,** if you completed both a Wellness Screening and Wellness Assessment, you can complete **up to four** Additional Wellness Activities, ($200 each) and earn up to an additional $800. You will earn an additional $300 if your covered spouse/domestic partner also completes three activities ($100 each) during 2017.

> **Don't Forget!**
> You must complete **both** a Wellness Screening and a Wellness Assessment during 2016 **to earn $200** in 2017 MRA funds **and save $500** in 2017 medical payroll contributions.

> **2017 Cost for Medical Coverage**
> The 2017 costs for JPMorgan Chase Medical Plan coverage, which were displayed on the Benefits Web Center during Annual Benefits Enrollment, assumed that you (and your covered spouse/domestic partner) would complete a biometric Wellness Screening and online Wellness Assessment during 2016. Starting in January 2017, your 2017 medical payroll contributions will initially reflect these savings. If you or your covered spouse/domestic partner chooses **not** to complete both activities during 2016, your medical payroll contributions will increase in spring 2017 for both you and your covered spouse/domestic partner. The full $500 (or $1,000) increase will be applied in equal installments to each pay from the first effective pay in spring 2017 through December 2017.

---

[4] Employees and/or their covered spouse/domestic partner who become eligible for benefits coverage after October 1, 2016, have from their coverage effective date until December 31, 2017 to complete a Wellness Screening and Wellness Assessment to earn 2017 Initial Wellness Rewards. If newly eligible for coverage after October 1, 2016, employees will automatically enjoy the reduced medical payroll contributions for 2017.

If you were on an approved Leave of Absence for at least 70 consecutive days between September 1 and December 31, 2016, and did not complete your biometric Wellness Screening and online Wellness Assessment during 2016, then you will not lose the $500 2017 medical payroll contribution savings ($1,000 if covering a spouse/domestic partner). Other provisions of the Medical Plan and Wellness Program will continue to apply, including the opportunity to earn MRA Funds by completing wellness activities.

**Accessing your MRA funds**
Your medical and prescription drug expenses are paid from your MRA based on the payment method you elected during the annual benefits enrollment period (Automatic Claim Payment or Debit Card). For more information about paying your expenses through your MRA, see **Helping You Choose: Automatic Claim Payment vs. Debit Card Tip Sheet** on **My Health** > 2017 Benefits Resources.

---

### Not enrolled in the JPMorgan Chase Medical Plan?
As a U.S. benefits-eligible employee, if you didn't enroll in the JPMorgan Chase Medical Plan for 2017, you'll still be able to earn up to $600 in 2017 Wellness Rewards payable (and taxable) through payroll. You can earn $200 for completing both a Wellness Screening **and a Wellness Assessment between January 1 and December 31, 2016.** You can also earn an additional $400 if you complete two Additional Wellness Activities during 2017 after you complete your Wellness Screening and Assessment. Wellness Rewards are not available to spouse/domestic partners of employees who do not enroll in the JPMorgan Chase Medical Plan.

**New 2017 Wellness Platform**
Cigna has developed a new 2017 platforms for viewing your Wellness Rewards balances and participating in Wellness Activities. Access the new site through My Health > Not enrolled in the JPMorgan Chase Medical Plan.

---

## Prescription Drug Plan
Effective January 1, 2017, the CVS Caremark Standard Formulary List will be updated to exclude additional drugs. To access the Standard Formulary List, visit the CVS Caremark website or log on to My Health and click Prescription Drugs.

## Health Care Spending Account (HCSA)
The 2017 HCSA legal limit was raised to **$2,600** after annual enrollment. If you would like to make a change to your elections for 2017, call accessHR.

**Carry over up to $500 for 2017 HCSA**
Up to $500 of your unused **2016** HCSA balance will carry over into 2017 (this same carryover amount will be allowed at the end of each year into the following year).

Your 2016 balance will be used to pay any claims with dates of service in 2016 that are received in early 2017 through your HCSA claims filing deadline (March 31, 2017). HCSA balances over $500 will be forfeited after this deadline. Up to $500 of any available remaining balance will be used to pay any claims incurred during 2017.

As a reminder, your HCSA is funded by you — with pre-tax dollars. Your HCSA can be used for eligible out-of-pocket medical and prescription drug expenses **after** your MRA funds are exhausted. Since dental and vision expenses can't be paid from the MRA, you can start using your HCSA for those expenses as soon as the plan year begins on January 1 or when your coverage is first effective, whichever is later.

## Claims filing deadlines for 2016 JPMorgan Chase benefits
Claim forms are available online via **My Health**. Or, you can contact your 2016 plan administrator/insurance carrier directly for a claim form.

| Benefit Plan | 2016 Claims Filing Deadline |
|---|---|
| Medical (including MRA), Prescription Drug, Dental, Vision, Group Legal Services | December 31, 2017. |
| Health Care Spending Account, Child/Elder Care Spending Account | March 31, 2017. Remember, MRA funds will be used **first** before HCSA funds for any out-of-pocket eligible medical and prescription drug expenses. |
| Transportation Spending Accounts—Parking Account | 180 days (six months) following the end of any particular month that you participated in the Parking "Pay Me Back"* Account. |

*Generally, the "Pay Me Back" feature applies only to the Parking Account.*

**2017 Transportation Spending Accounts Limits**
The monthly Transportation Spending Accounts before-tax limits for 2017 will be:

Transit: $255
Parking: $255

## Health care plan identification (ID) cards

If you made no changes to your health care plan elections, you can generally continue to use your current ID cards and debit card, if applicable.

- If you made changes or are newly enrolled, you will receive a Medical Plan ID card from your 2017 health care company in December, as well as a debit card (if you selected that payment option for your MRA and/or HCSA).
- If you are newly enrolled in the Medical Plan, you will also receive a Prescription Drug ID card from CVS Caremark.
- If you newly selected the debit card reimbursement option for your MRA and HCSA, if applicable, you will receive a MRA/HCSA debit card from your health care company.

## If you changed your health care company

If you changed your health care company for 2017 (from Cigna to UHC or vice versa), the results of your biometric Wellness Screening and online Wellness Assessment, taken during 2016, will be sent to your new company, who will then credit your 2017 MRA. There will be a delay of approximately four months in transferring any 2016 unused MRA funds to your 2017 MRA at your new health care company. This delay is designed to allow your 2016 health care company access to 2016 funds in your MRA to pay any late-year 2016 medical and prescription drug claims that are processed in the first four months of 2017. If this causes you a financial concern, contact your 2017 health care company. For claims incurred in 2016, you'll continue to access your 2016 MRA **through April 30, 2017**, (unless the MRA funds are exhausted) and/or HCSA funds through **March 31, 2017**, (unless they are exhausted) through your 2016 health care company.

> If you currently have a debit card for your 2016 MRA/HCSA, and did not change your health care company or your payment method for health care expenses, please retain it as the card is valid for 2017.

## Metlife is the new insurance carrier

For 2017, we will be changing our life and AD&D insurance carrier and claims administrator to MetLife. Current coverage elections will automatically carry over to MetLife. Any beneficiary elections you have on file with JPMorgan Chase will remain unchanged.

## IRS maximum for employer-provided child care benefits

The Internal Revenue Service (IRS) limits employer provided, tax-free child care benefits to $5,000 per family per year. This limit includes the value of the Child/Elder (Dependent) Care Spending Account contributions and the value of the use of the back-up child care program. Highly compensated employees, defined as those whose compensation reflected on their 2016 W-2 form is $120,000 or more, are subject to a lower tax-free child care limit and will be contacted directly if they participate in the Child/Elder Care Spending Account. The value of the Back-up Child Care Program benefit is determined by calculating the difference between the Fair Market Value (FMV) of one day of care and the co-pay. The firm has determined the FMV of a day of back-up child care to be $60. Any amount over the tax-free limit will be considered imputed income and tax will be owed on that amount.

> If you would like to change your Child/Elder Care Spending Account contributions to avoid going over the IRS limit for 2017, you may make a change to your election **by December 30, 2016** through the accessHR Benefits Contact Center.

## Group Personal Excess Liability Plan

If you enrolled in the Group Personal Excess Liability Plan for 2017, you'll receive your *Coverage Summary Certificate* by email from **Arthur J. Gallagher Risk Management Services, Inc** <Mail-Server@csr24.email>. If you do not receive this email by mid-January, please contact Arthur J. Gallagher Risk Management Services, Inc., the plan administrator, at 1-866-631-4630, Monday through Friday, from 9 a.m. to 5 p.m. Eastern time, except certain holidays. If you do not have a corporate email address, a certificate will be mailed to your home address.

## BENEFICIARIES

You are encouraged to review your beneficiary designations on a regular basis and keep them up to date. If you don't have a valid beneficiary designation on file at the time of your death:

- For Basic Life, Business Travel Accident, Supplemental Term Life, and Accidental Death and Dismemberment (AD&D) Insurance Plans: If you don't have a designated beneficiary (or your named beneficiary dies before you), benefits will be paid in the following order:
  - Surviving spouse or civil union partner
  - Surviving children (in equal shares)
  - Surviving parents (in equal shares)
  - Surviving siblings (in equal shares)
  - Your estate

If you wish to name your domestic partner as your beneficiary, you must submit an online beneficiary designation form. See the SPD for more details.

- Your vested account balances under the 401(k) Savings Plan and Retirement Plan will automatically be paid to your spouse[5] or to your estate if you are not married.
- If you would like to name someone else as your beneficiary, or for other options available to you, please update your beneficiary designations using the Online Beneficiary Designations site at **me@jpmc** > Benefits & Rewards > View or Update Beneficiaries. The site allows you to designate beneficiaries electronically and review and update those designations as needed, for instance in the event of a status change (divorce, marriage, or birth/adoption of a child).
- For more information, please refer to the respective sections of *Your Guide to Benefits at JPMorgan Chase* (Summary Plan Descriptions) available on **me@jpmc** > Benefits & Rewards.
- **Important:** If you are married and you named someone other than your spouse as your Retirement Plan beneficiary before you turned 35, that beneficiary designation will become invalid as of the first day of the plan year when you reach age 35. This means that, unless you submit a new beneficiary designation election after you turn 35, your Retirement Plan vested benefit will be paid to your spouse if you are married at the time of your death, or your estate if you are not.

## UPDATE YOUR PERSONAL INFORMATION

### Qualified status changes during the year

If you experience a qualified change in benefits status (such as marriage, divorce, birth or adoption of a child), you must make changes to your benefits coverage **within 31 days of the qualifying event** through the Benefits Web Center or *access*HR Benefits Contact Center for coverage to be effective on the date of the qualifying event. If you miss the 31-day deadline, coverage for certain benefits will be effective as of the date you contact the accessHR Benefits Contact Center. In order to have retroactive coverage, you may be required to pay for your coverage on an after-tax basis for the period prior to the date you first contacted the *access*HR Benefits Contact Center. As a reminder, if your eligibility for benefits changes due to a spouse or domestic partner's benefits enrollment, this is considered a qualified change in benefits status, and you will be able to make changes to your benefits coverage as a result. For additional information, please go to **My Health** > New Hire Information > Benefits Status Change Guide or consult the Summary Plan Descriptions available on **My Health** > My Resources > Benefit Plans Details (Summary Plan Descriptions). In addition, in the case of some status changes (such as change in marital status or the birth/adoption of a child), you should consider reviewing your beneficiary designations and making changes as necessary.

### Important note on dependent eligibility

You are responsible for understanding the JPMorgan Chase dependent eligibility rules and abiding by them. Each year during your designated enrollment period, or within 31 days following a qualified status change, it is important that you review the firm's dependent eligibility rules and the status of your covered dependents, and make any necessary changes. You can access the dependent eligibility requirements online via **My Health** > 2017 Benefits Resources > Dependent Eligiblity Requirements tip sheet.

> **IMPORTANT!**
> You will be required to provide documentation when you add a new dependent to coverage under the Health Care and Insurance Plans including those you added during annual enrollment. Please see the Dependent Eligibility Requirements online via **My Health** for more information.

### Verify your personal information

In advance of tax season, make sure that your personal information is accurate on JPMorgan Chase systems so that your 2016 W-2 tax forms can be prepared correctly. Please be sure to verify your name, home address and marital status on **My Personal Profile** (https://mpp.jpmchase.net). On an ongoing basis, it's important for you to update your marital status as well as changes to other personal information, such as address changes.

If you need to make changes to your Social Security number, call the accessHR Benefits Contact Center. Changes must be received by December 30, 2016, in order to ensure that your W-2 is correct. In addition, please be sure you have a current phone number on record, as our health care companies will be contacting participants with important wellness information. Please answer the call when received or respond back for important information that can affect your health.

---

[5] Under federal law governing the plans, the term "spouse" refers to any person to whom you are legally married, including same-sex marriage; the term "spouse" does not include a civil union or a registered domestic partnership arrangement

If you have not already done so, consider signing-up to receive your W-2 online. It's faster, easier, "greener" and more secure than mailing a paper copy to your home address. To sign up for an electronic W-2, go to My Personal Profile > Tax > W2 Consent. You must sign up by December 30; otherwise, your W-2 form will be mailed to your home address by the end of January 2017.

## Update your dependent's Social Security number

If you haven't already done so, go to the Benefits Web Center through **My Health** to add Social Security numbers for all of your dependents covered under a JPMorgan Chase Medical health care plan, including those you added during Annual Enrollment.

If you and your spouse/domestic partner are both JPMorgan Chase employees and covered under one employee's health care options:

- If you are enrolling your spouse/domestic partner under your JPMorgan Chase benefits on the Benefits Web Center for the first time, you will be prompted to enter their Social Security number.
- If you already cover your spouse/domestic partner under your JPMorgan Chase benefits and want to update their Social Security number, you'll need to call the accessHR Benefits Contact Center.

## IMPORTANT TAX REMINDERS
## Important reminder: Health care coverage legally required or pay penalty tax

As a reminder, under the Patient Protection and Affordable Care Act (ACA), all U.S. citizens and legal residents (adults and children) are required to have health care coverage, or pay a penalty tax. Coverage provided through the JPMorgan Chase Medical Plan satisfies this requirement. If you would like to explore options available through the Marketplace established by the ACA and/or access additional resources and information please go to **www.HealthCare.gov**. or visit **My Health** > My Resources > Other Resources.

- **Required Tax Form:** As part of the Affordable Care Act, in early 2017 impacted U.S. active and inactive employees will receive a Form 1095-C detailing the health coverage JPMorgan Chase offered to them and their dependents during 2016. JPMorgan Chase will mail your Form 1095-C to you no later than February 28, 2017. Please allow seven to ten business days for delivery. Alternatively, if you'd like to receive your Form 1095-C online, please go to MyHealth and select Benefits Web Center, from there you will be able enroll in electronic delivery of the 1095-C.
  - Additional Information and Frequently Asked Questions (FAQs) on electronic notifications and the 1095-C are available by going to me@jpmc > Payroll & Timekeeping > Pay Statements Recent & Annual or visit **My Health** > Benefits Web Center: Medical Tax Form 1095.

**If you have questions about ACA, you may contact:**
- Health Advocate at 1-866-611-8298 and speak with a representative. Representatives are available Monday through Friday from 8 a.m. to 9 p.m. Eastern time. You may also reach Health Advocate via email: answers@HealthAdvocate.com
- Your health care company (for general questions). Contact information can be found on your ID card.
- The U.S. government's dedicated Help Center (available 24/7) at 1-800-318-2596 (TTY: 1-855-889-4325) or visit www.HealthCare.gov.

## Benefits Web Centers/Call Centers

You can access the various Web Centers from work or home, via **My Health** or **My Rewards**:

My Health via me@jpmc from the intranet or **myhealth.jpmorganchase.com**
My Rewards from the intranet or **myrewards.jpmorganchase.com**

**Don't wait until December 31 to complete a Wellness Screening and Assessment. Call centers for JPMC, Cigna, UnitedHealthcare and Provant will be closed, or offer limited services, from Saturday, Dec. 31, 2016 to Monday, Jan. 2, 2017 with normal hours of operation resuming on Tuesday, Jan 3, 2017. Also, if you plan to complete your Wellness Screening at a lab or in-store clinic on Dec. 31, check their hours of operation as they may be closed due to the holiday.**

| Plan/Program | Web Center | Call Center |
|---|---|---|
| Retirement (Pension) Plan | My Pension via **My Rewards** | **accessHR Contact Center**<br><br>• 1-877-JPMChase (1-877-576-2427)<br>• Outside the U.S.: 1-212-552-5100<br>• Representatives available 8 a.m. to 8:30 p.m. (ET), M–F (except certain U.S. holidays) |
| 401(k) Savings Plan<br>*(including participants in the Heritage Bank One SSIP)* | 401(k) Savings Plan Web Center via **My Rewards** | **401(k) Savings Plan Call Center**<br><br>• 1-866-JPMC401k (1-866-576-2401)<br>• Outside the U.S.: 1-847-857-3001<br>• TTY number: 1-800-345-1833<br>• Representatives available 8 a.m. to 9 p.m. (ET), M–F (except New York Stock Exchange holidays) |
| Medical Plan *(including MRA and wellness information)* | **My Health** via me@jpmc> My Medical Plan Website or Prescription Drugs | Call the number on the back of your Medical ID card or the number on the front of your CVS Caremark ID card |
| Dental, Vision, Life and Accident, Long-Term Disability, Group Personal Excess Liability Insurance, Group Legal Services | **My Health** > My Resources > Benefits Web Center | **accessHR Benefits Contact Center**<br><br>• 1-877-JPMChase (1-877-576-2427)<br>• Outside the U.S.: 1-212-552-5100<br>• Representatives available 8 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |

| Plan/Program | Web Center | Call Center |
|---|---|---|
| **Health Care Spending Account (HCSA)** | If you are enrolled in the JPMorgan Chase Medical Plan (Option 1 or 2): **My Health > Account Balances > My HCSA Balance**<br><br>If you are not enrolled in the JPMorgan Chase Medical Plan: **My Health > Not Enrolled in the JPMC Medical Plan > Learn More** | If you are enrolled in the JPMorgan Chase Medical Plan (Option 1 or 2): Call the number on the back of your ID card<br><br>If you are not enrolled in the JPMorgan Chase Medical Plan:<br><br>**ADP Participant Service Center**<br><br>▪ 1-866-872-2427<br>Representatives available 7 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |
| **Child/Elder Care Spending Accounts** | Child/Elder Care Spending Account Web Center via **My Rewards** | **ADP Participant Service Center**<br><br>▪ 1-866-872-2427<br>▪ Representatives available 7 a.m. to 7 p.m. (ET), M–F (except certain U.S. holidays) |
| **Transportation Spending Accounts (Transit/Parking)** | Transportation Spending Accounts Web Center via **My Rewards** | **WageWorks Customer Service Center**<br><br>▪ 1-877-924-3967<br>▪ TTY number: 1-866-361-8017<br>▪ Representatives available 8 a.m. to 8 p.m. (ET), M–F (except certain U.S. holidays) |
| **Wellness Rewards**<br>*(If you are not enrolled in JPMC Medical Plan coverage)* | **My Health > Not Enrolled in the JPMC Medical Plan > Learn More** | Cigna<br><br>▪ 1-800-854-7304<br>▪ Representatives available 9 a.m. to 7:30 p.m. (ET), M-TH and 9 a.m. to 6 p.m. FR (except certain U.S. holidays) |
| **Beneficiary Designations** | **me@jpmc > Benefits & Rewards > View or Update Beneficiaries**<br><br>or **beneficiary.jpmorganchase.com** | **Call accessHR Contact Center for a paper form.**<br><br>▪ 1-877-JPMChase (1-877-576-2427)<br>▪ Outside the U.S.: 1-212-552-5100<br>▪ Representatives available  8 a.m. to 8:30 p.m. (ET), M–F (except certain U.S. holidays) |

*The JPMorgan Chase U.S. Benefits Program is available to most employees on a U.S. payroll who are regularly scheduled to work 20 hours or more a week and who are employed by JPMorgan Chase & Co. or one of its subsidiaries to the extent that such subsidiary has adopted the JPMorgan Chase U.S. Benefits Program. This information does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is any discrepancy between this information and the governing documents, the governing documents will control. JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time. The JPMorgan Chase U.S. Benefits Program does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.*

*This Bulletin modifies and changes Your Guide to Benefits at JPMorgan Chase and is a summary of material modification for certain plans under the JPMorgan Chase U.S. Benefits Program. It supplements, clarifies, and amends various sections of the Guide and the Summary Plan Descriptions, and should be referred to as part of the Guide and the Summary Plan Descriptions. Please retain this information for your records.*

# Appendix - Summary Plan Description (SPD) Updates and Information

The following amendments to SPDs are effective immediately unless otherwise indicated.

## Medical Plan SPD Changes

The definition of Out-of-pocket Maximum on page 10 of the Medical Plan SPD is amended by adding the following:  Please see page 97 for information on circumstances when you may be required to repay the benefits you're received under the Plan.

## Long-Term Disability Plan SPD Changes

The "If you go on leave" section of the SPD on page 33 is amended to read as follows:

Your participation in the Long-Term Disability Plan will end after 12 weeks if you go on:
* An approved, paid or unpaid personal leave of absence; or
* Military leave (paid or unpaid).

For an approved leave of absence, you'll still be covered by the Long-Term Disability Plan. JPMorgan Chase will directly bill you for any required contributions on an after-tax basis. If you do not make the required contributions to continue your LTD coverage or your approved leave exceeds 12 weeks, your coverage will be canceled. Please note your coverage will be automatically reinstated when you return to work if your LTD is company paid (earn < $60K in Total Annual Cash Compensation).  If you pay for your LTD coverage (earn > $60K in Total Annual Cash Compensation) and your coverage is cancelled, you must satisfy Evidence of Insurability before your coverage will be reinstated. Please see the *Plan Administration* section of this Guide for more Information about what happens to your benefits during an unpaid Leave of absence (i.e., FMLA, Military Leave).

## Life and Accident Insurance Plans SPD Changes

The Life and Accident Insurance Plans SPD is amended as follows, effective January 1, 2017:

* Metropolitan Life Insurance Company (MetLife) replaces "Prudential Life Insurance Company of America" throughout the SPD.  See page 11 of this bulletin for contact information.

The Business Travel Accident (BTA) Plan section of the Life and Accident Insurance Plans SPD is amended as follows, effective January 1, 2017:

1. The second bullet in the section "Dependent BTA Insurance" on page 19 is amended to read as follows:

   * Your children are covered for $20,000 in the event of death or dismemberment.

2. The "What Is Not Covered" section on page 20 is amended to read as follows:

   Business travel accident insurance benefits are not payable for loss or death that results from:

   * Suicide or any attempt at suicide, or intentional self-inflicted injury or attempt at intentionally self-inflicted injury;
   * Travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, whether as a passenger, pilot, operator or crew member, unless specifically provided by this policy
   * Declared or undeclared war, or any act of declared or undeclared war unless specifically provided by this policy
   * Sickness , disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these;
   * Infection of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes;
   * Full-Time active duty in the Armed Forces, National Guard or organized reserve corps of any country or international authority;
   * Commission of or attempt to commit a felony
   * Normal commuting between your residence and place of employment

## Plan Administration SPD Changes

1. The second paragraph of the Plan Administration SPD section entitled "Step 3: Filing an Appeal to the Claims Administrator/Plan Administrator If an Initial Claim for Benefits Is Denied" on page 16 is amended to read as follows:

   JPMorgan Chase is not involved in deciding appeals for any denied benefit claim under the:
   - Medical Plan, including Prescription Drug Plan
   - Preferred Dentist Program (PDP); Dental Plan Dental Maintenance Organization (DMO) Option; and Dental Health Maintenance Organization (DHMO) Option;
   - Vision Plan;
   - Health Care Spending Account;
   - Long-Term Disability Plan, including the Individual Disability Insurance;
   - Life and AD&D Insurance Plans;
   - Business Travel Accident Insurance Plan;
   - Group Legal Services Plan; and
   - Employee Assistance & Work-Life Program.

   The Plan Administrator delegates all fiduciary responsibility and decisions regarding a claim for a denied benefit under these plans to the applicable claims administrator.

2. The third paragraph of the section of the Plan Administration SPD entitled "Other Important Information" on page 33 is amended to read as follows:

   The Plan Administrators delegate their discretion to decide claims and appeals to the claims administrators and to the Heath and Income Protection Plans Appeals Committee and the Short-Term Disability Plan Appeals Committee, as described in this Guide.

3. The Contact Information for Plans Subject to ERISA section under Other Health Care and Insurance Plans Subject to ERISA on page 22 indicating the claims administrator for the Life Insurance Plan is amended effective January 1, 2017 to provide that the claims administrator is as follows:

   Metropolitan Life Insurance Company
   200 Park Avenue
   New York, NY 10166-0188
   Tel #: 1-800-MET-LIFE (1-800-638-5433)

# Plan Administration

This section of the Guide provides you with important information as required by the Employee Retirement Income Security Act of 1974 (ERISA) about the JPMorgan Chase Health Care and Insurance Plans. While ERISA doesn't require JPMorgan Chase to provide you with benefits, it does mandate that JPMorgan Chase clearly communicate to you how the plans subject to the provisions of ERISA operate and what rights you have under the law regarding plan benefits. This section is part of the summary plan description of each of your JPMorgan Chase Health Care and Insurance Plans governed by ERISA, except for the Severance Pay Plan, which is described in a separate summary plan description.

This section of the Guide also provides important information about certain benefits plans that are not governed by ERISA.

You'll also find information on the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) in this section. Under COBRA, you and your covered eligible dependents have the right to continue health care coverage at your own expense for a certain period of time if your JPMorgan Chase-provided health care coverage ends under certain circumstances.

Copies of actual plan documents are filed with the Plan Administrator and are available upon request.

> **Update: Your Guide to Benefits at JPMorgan Chase**
>
> *This document is the Plan Administration section of the summary plan descriptions for the Health Care and Insurance Plans. The U.S. Department of Labor requires JPMorgan Chase to routinely provide benefits plan summaries to plan participants. Please retain this information for your records.*
>
> *This document is also part of the official plan documents. It does not include all the details contained in the applicable insurance contracts. If there is a discrepancy between the applicable insurance contracts and this document, the insurance contracts will control.*

## Contact Information

Please refer to the table at the front of each section of *Your Guide to Benefits at JPMorgan Chase* for instructions regarding where to call or how to access the appropriate web center for each benefit plan.

For questions about eligibility and plan operations questions, contact the Benefits Call Center: at 1-877-JPMChase (1-877-576-2427) or 1-212-552-5100, if calling from outside the United States. Service Representatives are available Monday through Friday, from 8 a.m. to 7 p.m. Eastern Time, except certain U.S. holidays.

EXHIBIT 2

## Table of Contents | Page

General Information ..................................................................................................... 3
Plan Information Overview ......................................................................................... 5
Participating Companies ............................................................................................. 7
Your Rights Under ERISA .......................................................................................... 8
    Enforce Your Rights ................................................................................................... 8
    About Plan Fiduciaries .............................................................................................. 9
    Assistance with Your Questions ............................................................................... 9
    Certificate of Creditable Coverage .......................................................................... 10
    Prescription Drug Notice of Creditable Coverage .................................................. 10
Claims Related to Eligibility to Participate in the Plans and Plan Operations ..... 11
    How to File This Type of Claim and What You Can Expect .................................... 11
    If Your Claim is Denied ............................................................................................. 11
Claiming Benefits: Plans Subject to ERISA ............................................................ 13
    Steps in the Benefits Claims and Appeals Process ................................................ 13
    Filing a Court Action ................................................................................................. 19
Contacting the Claims Administrators: Plans Subject to ERISA .......................... 20
    Contact Information for Plans Subject to ERISA .................................................... 20
Contacting the Claims Administrators: Plans Not Subject to ERISA ................... 23
    Contact Information for Plans Not Subject to ERISA ............................................. 23
Continuing Coverage Under COBRA ....................................................................... 24
    Qualifying Events ...................................................................................................... 24
    Continuation Coverage for a Domestic Partner Dependent ................................... 25
    Giving Notice of a Qualifying Event ......................................................................... 26
    Choosing COBRA Coverage .................................................................................... 26
    Premium Due Dates .................................................................................................. 27
    Coverage During the Continuation Period ............................................................... 27
    COBRA Coverage Costs .......................................................................................... 27
    How Continued Coverage Could End ...................................................................... 28
    Special Rule for Health Care Spending Account Participants ................................. 28
    Additional Questions About COBRA Coverage ....................................................... 29
Leaves of Absence .................................................................................................... 30
    Benefits Coverage While on Approved Short-Term Disability Leave ..................... 30
    Benefits Coverage While on Approved Parental Leave .......................................... 31
    Benefits Coverage While on Approved Family and Medical Leave ........................ 31
Special Notice for Employees Who Have Been Rehired by JPMorgan Chase ..... 32
Other Important Information ...................................................................................... 33
    No Assignment of Benefits ....................................................................................... 33
    Right to Amend ......................................................................................................... 33
    Not a Contract of Employment ................................................................................. 33
    Plan Documents Control ........................................................................................... 33

*The JPMorgan Chase U.S. Benefits Program is available to most employees on a U.S. payroll who are regularly scheduled to work 20 hours or more a week and who are employed by JPMorgan Chase & Co. or one of its subsidiaries to the extent that such subsidiary has adopted the JPMorgan Chase U.S. Benefits Program. This information does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is any discrepancy between this information and the governing documents, the governing documents will control.*

*JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time. The JPMorgan Chase U.S. Benefits Program does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.*

# General Information

The following summarizes important administrative information about the JPMorgan Chase U.S. Health Care and Insurance Plans governed by ERISA. **Please Note:** Each plan can be identified by a specific plan number, which is on file with the U.S. Department of Labor. Please see "Plan Information Overview" on page 5 for a listing of official plan names and numbers.

| | |
|---|---|
| **Plan Sponsor** | JPMorgan Chase Bank, NA<br>One Chase Manhattan Plaza<br>20th Floor<br>Mail Code: NY1-A341<br>New York, NY 10005-1401<br><br>(Certain participating companies have adopted some or all of the plans for their eligible employees. See "Participating Companies" on page 7 for a list of participating companies.) |
| **Plan Year** | January 1 — December 31 |
| **Plan Administrator** | **For Health Care and Insurance Plans (except for the Short-Term Disability Plan and Business Travel Accident Insurance Plan):**<br>JPMorgan Chase U.S. Benefits Executive<br>c/o JPMorgan Chase & Co. Benefits Administration<br>JPMorgan Chase & Co.<br>One Chase Manhattan Plaza<br>20th Floor<br>Mail Code: NY1-A341<br>New York, NY 10005-1401<br>**For Business Travel Accident Insurance Plan:**<br>JPMorgan Chase Corporate Insurance Services<br>JPMorgan Chase & Co.<br>277 Park Avenue<br>12th Floor<br>Mail Code: NY1-L227<br>New York, NY 10172-0003<br>**For Short-Term Disability Plan (Not applicable to the JPMorgan Chase Long-Term Disability Plan):**<br>JPMorgan Chase Employee Relations Executive<br>JPMorgan Chase & Co.<br>270 Park Avenue<br>35th Floor<br>Mail Code: NY1-K682<br>New York, NY 10017-2014 |
| **Claims Administrator** | The contact information for claims administrators for the various benefits plans can be found under "Contacting the Claims Administrators: Plans Subject to ERISA" beginning on page 20. |
| **COBRA Administrator** | Aon Hewitt Associates<br>JPMorgan Chase Benefits Call Center<br>P.O. Box 785041<br>Orlando, FL 32826-5041 |

| Benefits Fiduciaries | Please see "About Plan Fiduciaries" on page 9 for information on benefits fiduciaries. |
|---|---|
| **Agent for Service of Legal Process** | Legal Papers Served<br>JPMorgan Chase & Co.<br>One Chase Manhattan Plaza<br>20th Floor<br>Mail Code: NY1-A336<br>New York, NY 10005-1401<br><br>Service of legal process may also be made upon a plan trustee or the Plan Administrator. |
| **Employer Identification Number** | 13-4994650 |

# Plan Information Overview

The following chart shows the information that varies by plan. All of the following plans are governed by ERISA. The JPMorgan Chase benefits plans that are not governed by ERISA — the Child/Elder Care Spending Account, Transportation Spending Accounts, Group Personal Excess Liability Insurance Plan, and Employee Stock Purchase Plan — are not listed here.

| Plan Name/ Number | Insurer | Payment of Benefits | Type of Administration |
|---|---|---|---|
| The JPMorgan Chase Medical Plan/502 | See "Contact Information for Plans Subject to ERISA" on page 20 for names, addresses, and telephone numbers for the Medical Plan and the Prescription Drug Plan. | See "Contact Information for Plans Subject to ERISA" on page 20 for names, addresses, and telephone numbers for the Medical Plan and the Prescription Drug Plan. | Self-Insured/Trustee |
| The JPMorgan Chase Dental Plan/502 | See "Contact Information for Plans Subject to ERISA" on page 20 for names and addresses for the Preferred Dentist Program (PDP) Option, the Dental Maintenance Organization (DMO) Option, the Dental Health Maintenance Organization (DHMO) Option, and the Expatriate Dental Option. | See "Contact Information for Plans Subject to ERISA" on page 20 for names, addresses, and telephone numbers for the PDP Option, the DMO Option, the DHMO Option, and the Expatriate Dental Option. | Self-Insured/Trustee: PDP Option and Expatriate Dental Option Fully Insured: DMO Option and DHMO Option |
| The JPMorgan Chase Vision Plan/502 | VSP P.O. Box 997105 Sacramento, CA 95899-7105 | VSP P.O. Box 997105 Sacramento, CA 95899-7105 | Fully Insured |
| The JPMorgan Chase Basic Life Insurance Plan/502 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | Fully Insured |
| The JPMorgan Chase Supplemental Term Life Insurance Plan/502 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | Fully Insured |
| The JPMorgan Chase Accidental Death and Dismemberment (AD&D) Insurance Plan/502 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | The Prudential Insurance Company of America P.O. Box 8517 Philadelphia, PA 19176 | Fully Insured |

| Plan Name/ Number | Insurer | Payment of Benefits | Type of Administration |
|---|---|---|---|
| The JPMorgan Chase Business Travel Accident (BTA) Insurance Plan/506 | AIG – National Union Fire Insurance Company of Pittsburgh, PA 175 Water Street New York, NY 10038 | AIG – National Union Fire Insurance Company of Pittsburgh, PA 175 Water Street New York, NY 10038 | Fully Insured |
| The JPMorgan Chase Long-Term Disability (LTD) Plan/502 | The Prudential Insurance Company of America P.O. Box 13480 Philadelphia, PA 19176 | The Prudential Insurance Company of America P.O. Box 13480 Philadelphia, PA 19176 | Fully Insured |
| The JPMorgan Chase Long-Term Disability Plan's Individual Disability Insurance (IDI)/502 | Provident Life and Casualty Insurance Company 1 Fountain Square Chattanooga, TN 37402 | Provident Life and Casualty Insurance Company The Benefits Center P.O. Box 100262 Columbia, SC 29202-3262 | Fully-Insured |
| The JPMorgan Chase Group Legal Services Plan/502 | Hyatt Legal Plans, Inc. 1111 Superior Avenue Cleveland, OH 44114 | Hyatt Legal Plans, Inc. 1111 Superior Avenue Cleveland, OH 44114 | Fully Insured |
| The JPMorgan Chase Employee Assistance & Work-Life Program (EAP)/502 | MHN Services Attn: Member Appeals P.O. Box 10697 San Rafael, CA 94912 | MHN Services Attn: Member Appeals P.O. Box 10697 San Rafael, CA 94912 | Fully Insured |
| The JPMorgan Chase Short-Term Disability Plan/548 | N/A | Disability Management Services JPMorgan Chase & Co. 131 S. Dearborn Street Mail Code: IL1-0708 Chicago, IL 60603 | Self Insured |
| The JPMorgan Chase Health Care Spending Account Plan/510 | N/A | See "Contact Information for Plans Subject to ERISA" on page 20 for names, addresses, and telephone numbers for the Health Care Spending Account Plan | Salary Reduction/ Paid from the general assets of the employer |
| The JPMorgan Chase Health and Wellness Centers Plan/559 | N/A | JPMorgan Chase Medical Director JPMorgan Chase & Co. 270 Park Avenue 11th Floor Mail Code: NY1-K318 New York, NY 10017-2014 | Self-Insured |

# Participating Companies

In some cases, affiliates or subsidiaries of JPMorgan Chase have decided to participate in the JPMorgan Chase benefits plans and offer the benefits described in this Guide. These affiliates or subsidiaries are referred to here as "participating companies." The list may change from time to time, and any company may end its participation in a plan at any time.

- Arroyo Energy Investors LLC
- Banc One Building Corporation
- Banc One Equipment Finance, Inc.
- Banc One Kentucky Leasing Corporation
- Bear Stearns Asset Management, Inc.
- Bear Stearns Capital Markets, Inc.
- BloomSpot, Inc.
- California Reconveyance Company
- Chase Access Services Corporation
- Chase Bank USA, National Association
- Chase BankCard Services, Inc.
- Chase Capital Holding Corporation
- Chase Insurance Agency, Inc.
- Chase Manhattan Realty Leasing Corporation
- EMC Mortgage LLC
- First Chicago Capital Corporation
- First Chicago Leasing Corporation
- FNBC Leasing Corporation
- J.P. Morgan Alternative Asset Management, Inc.
- J.P. Morgan Chase Custody Services, Inc.
- J.P. Morgan Chase National Corporate Services, Inc.
- J.P. Morgan Clearing Corp.
- J.P. Morgan Electronic Financial Services, Inc.

- J.P. Morgan Institutional Investments, Inc.
- J.P. Morgan International, Inc.
- J.P. Morgan Investment Management Inc.
- J.P. Morgan Retirement Plan Services, LLC
- J.P. Morgan Securities, LLC
- J.P. Morgan Treasury Technologies Corporation
- J.P. Morgan Trust Company of Delaware
- JPMorgan Bank and Trust Company, National Association
- JPMorgan Chase Bank, National Association
- JPMorgan Chase & Co.
- JPMorgan Distribution Services, Inc.
- JPMorgan Funds Management, Inc.
- JPMorgan Xign Corporation
- JPMN Inc.
- JPMREP Holding Corporation
- MAX Recovery, Inc.
- Neovest, Inc.
- OEP Parent LLC
- Paymentech, LLC
- Plymouth Park Tax Services, LLC
- Security Capital Research & Management, Incorporated
- Washington Mutual Mortgage Securities Corp.

# Your Rights Under ERISA

The Employee Retirement Income Security Act of 1974 (ERISA) gives you certain rights and protections while you are a participant in the JPMorgan Chase employee benefits plans described in this Guide. It is unlikely you will need to exercise these rights, but it is important that you be aware of what they are.

ERISA provides that all plan participants are entitled to:

- Examine, without charge, at the office of the Plan Administrator, all plan documents including insurance contracts and copies of all documents filed by the plans with the U.S. Department of Labor, such as detailed annual reports (Form 5500 Series).

- Obtain, upon written request to the Plan Administrator, copies of all plan documents and other plan information (e.g., insurance contracts, Form 5500 Series, and updated summary plan descriptions). The Plan Administrator may require reasonable charges for the copies.

- Receive a summary of the plans' annual financial reports. (The Plan Administrator is required by law to furnish each participant with a copy of such reports.)

- Continue health care coverage for yourself, spouse, or eligible dependents if there is a loss of coverage under the plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this summary plan description and the documents governing the plan on the rules governing your COBRA continuation coverage rights.

## Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have the right to know why this was done, to obtain copies of documents relating to the decision free of charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance:

- If you request a copy of the plans' documents or the latest annual report from the Plan Administrator and do not receive it within 30 days, you may file suit in a U.S. federal court. In such a case, the court may require the Plan Administrator to provide the information and pay up to $110 a day until you receive the materials, unless they were not sent because of reasons beyond the control of the Plan Administrator.

- If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a U.S. state or federal court. In addition, if you disagree with the plan's decision, or lack thereof, concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court.

- If it should happen that the plans' fiduciaries misuse the plans' money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a U.S. federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim to be frivolous.

> **An Important Note**
>
> *The Child/Elder Care Spending Account, Transportation Spending Accounts, Group Personal Excess Liability Insurance Plan, and Employee Stock Purchase Plan are not subject to the provisions of ERISA.*

> **Keep Your Contact Information Current**
>
> *Active participants are required to update their personal contact information, including mailing address, to receive benefits-related information and correspondence. You can make changes online via My Personal Profile at mpp.jpmorganchase.com. You can also call the accessHR Contact Center. See "Contact Information" on page 1.*

# About Plan Fiduciaries

The plan "fiduciary" is the individual or organization responsible for plan administration, claims administration, and managing plan assets. The plan fiduciary has a duty to administer the plan prudently and in the best interest of all plan members and beneficiaries.

## Prudent Actions by Plan Fiduciaries

In addition to establishing the rights of plan participants, ERISA imposes duties upon the people who are responsible for the operation of the benefits plans. Certain individuals who are responsible for the plans are called "fiduciaries," and they have a duty to administer the plans prudently and in the interest of you, other plan members, and beneficiaries. While participation in these plans does not guarantee your right to continued employment, no one — including your employer or any other person — may terminate you or otherwise discriminate against you in any way to prevent you from obtaining your benefits or exercising your rights under ERISA.

## Health Care and Insurance Plans

For each of the following plans that are governed by ERISA, the Plan Administrators have delegated fiduciary responsibility for claims and appeals to the claims administrators, and to the Health and Income Protection Plan Appeals Committee and the Short-Term Disability Plan Appeals Committee where those committees are authorized to decide appeals as described in this Guide:

- Medical Plan;
- Prescription Drug Plan;
- Dental Plan;
- Health Care Spending Account;
- Vision Plan;
- Life and AD&D Insurance Plans;
- Business Travel Accident Insurance Plan;
- Long-Term Disability Plan, including Individual Disability Insurance;
- Short-Term Disability Plan;
- Employee Assistance & Work-Life Program;
- Group Legal Services Plan; and
- Health and Wellness Centers Plan.

# Assistance with Your Questions

If you have any questions about the JPMorgan Chase Health Care and Insurance Plans, you should contact the Benefits Call Center. (See "Contact Information" on page 1.) If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Regional Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or:

Division of Technical Assistance and Inquiries
Employee Benefits Security Administration
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration or by visiting www.dol.gov/ebsa via the Internet.

You should also contact the Department of Labor if you need further assistance or information regarding your rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), with respect to health benefits that are offered through a group health plan, as well as the remedies available if a claim is denied in whole or in part.

## Certificate of Creditable Coverage

Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), JPMorgan Chase is required to provide you with a Certificate of Creditable Coverage if your JPMorgan Chase-provided health care coverage ends. The certificate identifies the names of you and/or your covered eligible dependents and the duration for which you were covered under the JPMorgan Chase health care benefit plans.

You may need to present this certificate to your new employer at the time you are enrolling for benefits under the new employer's plan, especially if you or your dependents have a pre-existing condition that would limit coverage under your new employer's plan. If you have proof of creditable coverage from another plan, exclusion periods for pre-existing conditions are reduced or eliminated. You should always keep a copy of your HIPAA certificate for your records.

You automatically will be sent a Certificate of Creditable Coverage at the time your coverage ends and again when your continued coverage under COBRA (if elected) ends. You also may request a Certificate of Creditable Coverage from the Plan Administrator at any time within the 24-month period after your coverage under the benefits plans ends. Please refer to "Continuing Coverage Under COBRA" on page 24 for more information about continuing coverage.

## Prescription Drug Notice of Creditable Coverage

JPMorgan Chase will send a Notice of Creditable Coverage to participants who become eligible for Medicare. This notice states that most JPMorgan Chase Medical Plan options provide a level of prescription drug benefits that is, on average, at least as high as the standard Medicare prescription drug plan benefits. The notice is important because it can help you avoid late enrollment penalties associated with Medicare prescription drug plans that may apply given that JPMorgan Chase benefits-eligible participants would generally wait until retirement to enroll in Medicare Part B and Part D.

If you have a dependent who is eligible for Medicare benefits and you do not receive a Notice of Creditable Coverage, you may contact the Benefits Call Center.

# Claims Related to Eligibility to Participate in the Plans and Plan Operations

This section provides information about the claims and appeals process for questions relating to eligibility to participate in the plans, such as whether you meet the requirements of employees/dependents/beneficiaries who are allowed to obtain benefits under the plans, and whether you are eligible for Medical Reimbursement Account (MRA) funds. In addition, if, with respect to the plans subject to ERISA, you have a type of monetary claim that is not otherwise described in this Guide, including claims related to general plan operations or section 510 of ERISA, you must file your claim in accordance with this section. For information on filing claims for benefits, please see "Claiming Benefits: Plans Subject to ERISA" beginning on page 13.

## How to File This Type of Claim and What You Can Expect

For questions regarding eligibility to participate in any plans listed in this Guide — including the Short-Term Disability Plan and Business Travel Accident Insurance Plan — and to receive benefits or about general plan operations, please contact the Benefits Call Center. (See "Contact Information" on page 1.)

For the plans that are subject to ERISA, if you are not satisfied with the response, you may file a written claim with the appropriate Plan Administrator at the address provided in "General Information" on page 3. The Plan Administrator will assign your claim for a determination. You must file your claim within 90 days of the event giving rise to your claim. You will receive a written decision within 90 days of receipt of your claim. Under certain circumstances, this 90-day period may be extended for an additional 90 days if special circumstances require extra time to process your request. In this situation, you will receive written notice of the extension and the reasons for it, as well as the date by which a decision is expected to be made, before the end of the initial 90-day period. If the extension is required due to your failure to submit information necessary to decide the claim, the period for making the determination will begin as of the date you submit the additional information, assuming it is provided in a timely fashion.

## If Your Claim is Denied

If you receive a notice that your claim has been denied, either in full or in part, the notice will explain the reason for the denial, including references to specific plan provisions on which the denial was based. If your claim was denied because you did not furnish complete information or documentation, the notice will state the additional materials needed to support your claim. The notice will also tell you how to request a review of the denied claim and the time limits applicable to those procedures.

To appeal a denial for all Health Care and Insurance Plans, you must submit a written request for appeal of your claim to the appropriate Plan Administrator within 60 days after receiving the notice of denial. In connection with your appeal, you may submit written comments, documents, records, or other information relevant to your claim. The Plan Administrator will generally decide your appeal except for ones involving eligibility for the Health Care and Insurance Plans. For these appeals, the Plan Administrator has delegated that responsibility to the Health and Income Protection Plans Appeals Committee.

In addition, you will be provided, upon written request and free of charge, with reasonable access to (and copies of) all documents, records, and other information relevant to your claim.

In most cases, a decision will be made within 60 days after you file your appeal. But if special circumstances require an extension of time for processing, and you are notified that there will be a delay and the reasons for needing more time, there will be an extension of up to 60 days for deciding your appeal. If an extension is necessary because you did not submit enough information to decide your appeal, the timing for making a decision about your appeal is stopped from the date the Plan Administrator sends you an extension notification until the date that you respond to the request for additional information, assuming your response comes within a reasonable time frame.

Once a decision is reached, you will be notified in writing of the outcome. If an adverse benefit determination is made on review, the notice will include the specific reasons for the decision, with references to specific plan provisions on which it is based.

If you would like to file a court action following your appeal, please see "Filing a Court Action" on page <u>19</u>, which sets forth the rules that will apply.

# Claiming Benefits: Plans Subject to ERISA

This section explains the benefits claims and appeals process for the JPMorgan Chase Health Care and Insurance Plans that are subject to the Employee Retirement Income Security Act of 1974 (ERISA). It includes detailed information about what happens at each step in the process and includes important timing requirements. This section also includes information about each plan's "fiduciary" and contact information. See "About Plan Fiduciaries" on page 9 and "Contacting the Claims Administrators: Plans Subject to ERISA" on page 20. For claims relating to eligibility questions or claims, please see "Claims Related to Eligibility to Participate in the Plans and Plan Operations" on page 11.

### An Important Reminder

The Child/Elder Care Spending Account, Transportation Spending Accounts, Group Personal Excess Liability Insurance Plan, and Employee Stock Purchase Plan are not subject to the provisions of ERISA described in this section. For information about those plans, please see "Contacting the Claims Administrators: Plans Not Subject to ERISA" beginning on page 23.

## Steps in the Benefits Claims and Appeals Process

### Step 1: Filing Your Initial Claim for Benefits

In general, when you file a claim for benefits, it is paid according to the provisions of the specific benefits plan. There are different timing requirements for different plans, as outlined in the following table. For all initial benefits claims, please contact the appropriate claims administrator for the plan. See "Contacting the Claims Administrators: Plans Subject to ERISA" on page 20.

| Plan/Option | Appropriate Claims Administrator | Timing for Filing Your Initial Claim |
|---|---|---|
| Medical Plan*, including the Medical Reimbursement Account (MRA) | Claims administrator for your Medical Plan option | No later than December 31 of the year following the year in which services were provided. Please contact your claims administrator for more information. |
| Prescription Drug Plan | Caremark | |
| Dental Plan* | Claims administrator for your Dental Plan option | |
| Vision Plan* | VSP | |
| Health and Wellness Centers Plan | Medical Executive | |
| Health Care Spending Account | Claims administrator for your Health Care Spending Account | March 31 of the year following the year for which the expense is incurred. |
| Long-Term Disability Plan | The Prudential Insurance Company of America | Within 272 days (nine months) following the start of the disability.** |
| Individual Disability Insurance | Provident Life and Casualty Insurance Company | Within 30 days following the start of the disability. |
| Short-Term Disability Plan | Disability Management Services | Within 30 days of first day of absence from work. |

\*  Generally, in-network CDHO, PDP, DMO, DHMO, and Vision claims filing is performed by the physician.

\*\*  In certain circumstances, the time limit to file a claim may be up to 637 days (one year and nine months) following the start of the disability. The time limit may be even longer if the employee lacks legal capacity to file a claim earlier.

| Plan/Option | Appropriate Claims Administrator | Timing for Filing Your Initial Claim |
|---|---|---|
| Life Insurance Plan | The Prudential Insurance Company of America | Within 90 days following the date of an employee's loss. |
| AD&D Insurance Plan | The Prudential Insurance Company of America | Within 90 days following the date of an employee's loss. |
| Business Travel Accident Insurance Plan | AIG-National Union Fire Insurance Company of Pittsburgh, PA | Within 20 days after an employee's loss, or as soon as reasonably possible thereafter. |
| Group Legal Services Plan *** | Hyatt Legal Plans, Inc. | No later than December 31 of the year following the year in which services were provided. |
| Employee Assistance & Work-Life Program | MHN Services | Within 90 days from date of service. |

*** Generally, in-network services are filed by the Plan attorney.

## Step 2: Receiving Notification from the Claims Administrator/Plan Administrator If an Initial Claim for Benefits Is Denied

If an initial claim for benefits is denied, the claims administrator or Plan Administrator will notify you within a "reasonable" period of time, not to exceed the time frames outlined in the table on the next page.

Under certain circumstances, the claims administrator or Plan Administrator, as applicable, is allowed an extension of time to notify you of a denied benefit. **Please Note:** If an extension is necessary because you did not submit necessary information needed to process your health care claim (except in the case of urgent care where the life of a claimant could be jeopardized), life and AD&D insurance, or disability claim, the timing for making a decision about your claim is stopped from the date the claims administrator or Plan Administrator sends you an extension notification until the date that you respond to the request for additional information. You generally have **45 days** from the date you receive the extension notice to send the requested information to the claims administrator or Plan Administrator.

> **What Qualifies as a "Denied Benefit"?**
>
> *A "denied benefit" is any denial, reduction, or termination of a benefit, or a failure to provide or make a payment, in whole or in part, for a benefit. In addition, a benefit may be denied if you didn't include enough information with your initial claim.*

| Plan/Option | Timing for Notification of a Denial of Benefits Claim |
|---|---|

| Plan/Option | Timing for Notification of a Denial of Benefits Claim |
|---|---|
| Medical Plan, Prescription Drug Plan, Dental Plan, Vision Plan, Health Care Spending Account, Employee Assistance & Work-Life Program, and Health and Wellness Centers Plan | • **As soon as reasonably possible but no more than 72 hours** for claims involving urgent care, where the life of a claimant could be jeopardized (may be oral, with written confirmation within three days). **Please Note:** You must be notified if your claim is approved or denied.<br>• **15 days** for pre-service claims, where approval is required before receiving benefits, plus **one 15-day** extension due to matters beyond the plan's control.<br>• **30 days** for post-service claims, where the claim is made after care is received, plus **one 15-day** extension due to matters beyond the plan's control. |
| Long-Term Disability Plan | **45 days**, plus **two 30-day** extensions for matters beyond the plan's control. |
| Individual Disability Insurance | **45 days** |
| Short-Term Disability Plan | **45 days**, plus **two 30-day** extensions for matters beyond the plan's control. |
| Life Insurance Plan | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| AD&D Insurance Plan | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| Business Travel Accident Insurance Plan | **90 days**, plus **one 90-day** extension for matters beyond the plan's control |
| Group Legal Services Plan | **30 days**, with no extensions |

**Please Note:** Concurrent care claims are claims for which the plan has previously approved a course of treatment over a period of time or for a specific number of treatments, and the plan later reduces or terminates coverage for those treatments. Concurrent care claims may fall under any of the other steps in the claims appeal process, depending on when the appeal is made. However, the plan must give you sufficient advance notice to appeal the claim before a concurrent care decision takes effect.

## The Explanation You'll Receive from the Claims Administrator/Plan Administrator in the Case of a Denied Benefit

If your initial claim is denied, the claims administrator or Plan Administrator is legally required to provide an explanation for the denial, which will include the following:

• The specific reason(s) for the denial;
• References to the specific plan provisions on which the denial is based;
• A description of any additional material or information needed to process your claim and an explanation of why that material or information is necessary; and
• A description of the plan's appeal procedures and time limits, including a statement of your right to bring a civil action under Section 502(a) of ERISA after, and if, your appeal is denied.

If your claim is for the medical plan or disability benefits, the explanation must also include:

• If the benefit was denied based on a medical necessity, experimental, or unproven treatment, or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the denial applying the terms of the plan to your medical circumstances, or a statement that such explanation will be provided free of charge upon request.
• Any internal rule, guideline, protocol, or other similar criterion relied upon in making the benefit denial, or a statement that a copy of this information will be provided free of charge upon request. This requirement also applies to denials under the Short-Term Disability Plan and the Long-Term Disability Plan, including the Individual Disability Insurance.

## Step 3: Filing an Appeal to the Claims Administrator/Plan Administrator If an Initial Claim for Benefits Is Denied

If you have filed a claim for benefits and your claim is denied, you have the right to appeal the decision.

JPMorgan Chase is not involved in deciding appeals for any denied benefit claim under the:

- Preferred Dentist Program (PDP); Dental Plan Dental Maintenance Organization (DMO) Option; and Dental Health Maintenance Organization (DHMO) Option;
- Vision Plan;
- Health Care Spending Account;
- Long-Term Disability Plan, including the Individual Disability Insurance;
- Life and AD&D Insurance Plans;
- Business Travel Accident Insurance Plan;
- Group Legal Services Plan; and
- Employee Assistance & Work-Life Program.

The Plan Administrator has delegated all fiduciary responsibility and decisions regarding a claim for a denied benefit under these plans to the applicable claims administrator.

Under certain plans, final appeals for denied claims will be heard by a review panel that is independent of both the company and the medical plan claims administrators. The independent review panel will hear appeals for the following plans:

- Medical Plan;
- Prescription Drug Plan; and
- Health and Wellness Centers Plan.

**Please Note:** Appeals related to denied claims under the Short-Term Disability Plan are determined by the JPMorgan Chase Short-Term Disability Plan Appeals Committee. Employees who work in New Jersey have the right to appeal to the Division of Temporary Disability Insurance for the State Temporary Disability Insurance portion of the JPMorgan Chase Short Term Disability Plan. You have one year from the date your disability began to file this appeal.

Send your written appeal to:

Division of Temporary Disability Insurance
Private Plan Operations
Claims Review Unit
P.O. Box 957
Trenton, NJ 08625-0957
Telephone: 1-609-292-6135

If your initial claim for benefits is denied, you — or your authorized representative — may file an appeal of the decision with the applicable claims administrator or Plan Administrator within the time frames indicated below, following receipt of the claim denial.

| Plan | Timing for Filing an Appeal of a Denial of Benefits Claim |
|---|---|
| Medical Plan and Prescription Drug Plan | |
| Dental Plan | |
| Vision Plan | |
| Health and Wellness Centers Plan | |
| Health Care Spending Account | |
| Long-Term Disability Plan | 180 days |
| Individual Disability Insurance | |
| Short-Term Disability Plan | |
| Life Insurance Plan | |
| AD&D Insurance Plan | |
| Business Travel Accident Insurance Plan | |
| Employee Assistance & Work-Life Program | |
| Group Legal Services Plan | 60 days |

In your appeal, you have the right to:

- Submit written comments, documents, records, and other information relating to your claim.
- Request, free of charge, reasonable access to, and copies of, all documents, records, and other information that:
  - — Was relied upon in denying the benefit.
  - — Was submitted, considered, or generated in the course of denying the benefit, regardless of whether it was relied on in making this decision.
  - — Demonstrates compliance with the administrative processes and safeguards required in denying the benefit.
  - — *For health care and disability claims only:* Constitutes a policy statement or plan guideline concerning the denied benefit regardless of whether the policy or guideline was relied on in denying the benefit.

If your appeal is for health care or disability benefits, you also have the right to receive:

- A review that does not defer to the initial benefit denial and that is conducted by someone other than the person who made the denial or that person's subordinate.
- For a denied benefit based on medical judgment (including whether a particular treatment, drug, or other item is experimental or unproven), a review in which the plan fiduciary/claims administrator consults with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment, and who was not consulted in connection with the initial benefits denial, nor the subordinate of this person.
- The identification of medical or vocational experts whose advice was obtained in connection with denying the benefit, regardless of whether the advice was relied on in making this decision.

- In the case of an urgent care claim where the life of a claimant could be jeopardized, an expedited review process in which:

  —— You may submit a request (orally or in writing) for an expedited appeal of a denied benefit.

  —— All necessary information, including the decision on your appeal, will be transmitted between the plan fiduciary/claims administrator and you by telephone, facsimile, or other available similarly prompt method.

## Step 4: Receiving Notification from the Claims Administrator/Plan Administrator If Your Appeal Is Denied

If your appeal is subsequently denied, the claims administrator, Plan Administrator, or Short-Term Disability Plan Appeals Committee is legally required to notify you in writing of this decision within a "reasonable" period of time according to the time frames outlined in the table below.

| Plan | Timing for Notification of a Denied Benefits Appeal |
|---|---|
| **Medical Plan, Prescription Drug Plan, Dental Plan, Vision Plan, Health Care Spending Account, Employee Assistance & Work-Life Program, and Health and Wellness Centers Plan** | • **As soon as reasonably possible but no more than 72 hours** for claims where the life of a claimant could be jeopardized (urgent care) <br> • **15 days** where approval is required before receiving benefits (pre-service claims) <br> • **30 days** where the claim is made after care is received (post-service claims) |
| **Long-Term Disability Plan** | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| **Individual Disability Insurance** | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| **Short-Term Disability Plan** | **45 days**, plus **two 30-day** extensions for matters beyond the plan's control. |
| **Life Insurance Plan** | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| **AD&D Insurance Plan** | **45 days**, plus **one 45-day** extension for matters beyond the plan's control. |
| **Business Travel Accident Insurance Plan** | The decision on appeal will be made on the date of the next meeting of the claims administrator's appeal committee, subject to extensions permitted by law. |
| **Group Legal Services Plan** | **60 days** |

Except in the case of claims related to health care and the Group Legal Services Plan, the claims administrator or the Plan Administrator is allowed to take an extension to notify you of a denied appeal under certain circumstances. If an extension is necessary, the claims administrator or Plan Administrator will notify you before the end of the original notification period. This notification will include the reason(s) for the extension and the date the claims administrator or the Plan Administrator expects to provide a decision on your appeal for the denied benefit. **Please Note:** If an extension is necessary because you did not submit enough information to decide your appeal, the time frame for decisions is stopped from the date the claims administrator or the Plan Administrator sends you an extension notification until the date that you respond to the request for additional information.

## The Explanation You'll Receive from the Claims Administrator/ Plan Administrator in the Case of a Denied Appeal

If an appeal is denied, the claims administrator or Plan Administrator is legally required to provide an explanation for the denial, which will include the following:

- The specific reason(s) for the denial;
- References to the specific plan provisions on which the denial is based;
- A statement that you're entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits; and
- A statement describing any appeal procedures offered by the plan and your right to obtain the information about such procedures, and a statement of your right to bring a civil action under ERISA.

If your appeal is for medical plan or disability benefits, the explanation must also include:

- If the benefit was denied based on a medical necessity, experimental, or unproven treatment, or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the denial applying the terms of the plan to your medical circumstances, or a statement that such explanation will be provided free of charge upon request.
- A description of the expedited review process for urgent care claims in the Medical Plan, where the life of the claimant could be jeopardized.
- Any internal rule, guideline, protocol, or other similar criterion relied upon in making the benefit denial, or a statement that a copy of this information will be provided free of charge upon request in the Medical Plan. This requirement also applies to denials under the Short-Term Disability Plan and the Long-Term Disability Plan including the Individual Disability Insurance.

The health care plans generally require two levels of appeal, which you must complete if you would like to pursue your claim further.

## Step 5: Receiving a Final Appeal by an Independent Review Panel

If your appeal of a benefits claim is denied, your final appeal for coverage will be heard by a review panel that is independent of both the company and the Medical Plan claims administrators. The independent review panel will hear appeals for the following plans:

- Medical Plan;
- Prescription Drug Plan; and
- Health and Wellness Centers Plan.

The independent review panel hears only appeals that involve medical judgment or a rescission of coverage; the panel does not hear appeals regarding eligibility to participate in a plan or legal interpretation of a plan that does not involve medical judgment.

# Filing a Court Action

If an appeal under a plan subject to ERISA is denied (in whole or in part), you may file suit in a U.S. federal court. If you are successful, the court may order the defending person or organization to pay your related legal fees. If you lose, the court may order you to pay these fees (for example, if the court finds your claim frivolous). You may contact the U.S. Department of Labor or your state insurance regulatory agency for information about other available options.

If you bring a civil action under ERISA, you must commence the action by the earlier of: (i) one year after the date of the denial of your final appeal; or (ii) three years after the date when your initial claim should have been filed, regardless of any state of federal statutes relating to limitations of actions. For the health plans, you cannot file a suit unless you have completed two appeals, if required by the claims administrators.

# Contacting the Claims Administrators: Plans Subject to ERISA

This section provides specific contact information for each benefit plan covered by ERISA.

For contact information for the plans that are not subject to ERISA (which include the Child/Elder Care Spending Account, Transportation Spending Accounts, Group Personal Excess Liability Insurance Plan, and Employee Stock Purchase Plan), please see "Contacting the Claims Administrators: Plans Not Subject to ERISA" on page 23.

Generally for all Health Care and Insurance Plans, questions related to general plan administration and eligibility to participate in the plans can be addressed by the Benefits Call Center. (See "Contact Information" on page 1.)

## Contact Information for Plans Subject to ERISA

For questions related to plan interpretation, filing initial claim, benefit provision under the plan, payment of benefits, or denial of benefits, please refer to the appropriate claims administrator for each benefit plan, as listed below.

| Medical Plan Claims Administrators | |
|---|---|
| **Medical Plan Options 1 and 2*** | |
| **Cigna** | Cigna<br>P.O. Box 182223<br>Chattanooga, TN 37422-7223<br>1-800-790-3086 |
| **UnitedHealthcare** | UnitedHealthcare<br>JPMorgan Chase Dedicated Service Center<br>P.O. Box 740800<br>Atlanta, GA 30374-0800<br>1-800-272-8970 |
| **Prescription Drug Plan*** | Caremark<br>Attention: Claims<br>P.O. Box 52196<br>Phoenix, AZ 85072-2188<br>1-866-209-6093 |
| **Expatriate Medical Option*** | Cigna International<br>JPMorgan Chase Dedicated Service Center<br>P.O. Box 15050<br>Wilmington, DE 19850-5050<br>1-800-390-7183<br>1-302-797-3644 (if calling from outside the U.S.) |

\*    Options marked with an asterisk are self-insured. All other options are fully insured.

## Dental Plan Claims Administrators

| | |
|---|---|
| **Preferred Dentist Program (PDP)\*** | MetLife Dental<br>P.O. Box 981282<br>El Paso, TX 79998-1282<br>1-888-673-9582 |
| **Dental Maintenance Organization (DMO) Option** | Aetna, Inc.<br>P.O. Box 14094<br>Jacksonville, FL 32232<br>1-800-741-4781 |
| **Dental Health Maintenance Organization (DHMO) Option** | Cigna Dental Health<br>P.O. Box 188045<br>Chattanooga, TN 37422-8045<br>1-800-790-3086 |
| **Expatriate Dental Option\*** | Cigna International<br>JPMorgan Chase Dedicated Service Center<br>P.O. Box 15050<br>Wilmington, DE 19850-5050<br>1-800-390-7183<br>1-302-797-3644 (if calling from outside the U.S.) |

\*   Options marked with an asterisk are self-insured. All other options are fully insured.

## Other Health Care and Insurance Plans Subject to ERISA

| Plan | Contact |
|---|---|
| **Vision Plan** | VSP<br>P.O. Box 997105<br>Sacramento, CA 95899-7105<br>1-855-846-7231 |
| **Health Care Spending Accounts** | Refer to the same provider that you selected for your Medical Plan coverage. If you waived Medical Plan coverage, contact ADP.<br><br>Cigna<br>P.O. Box 182223<br>Chattanooga, TN 37422-7223<br>1-800-790-3086<br><br>UHC Health Care Account Service Center<br>P.O. Box 981506<br>El Paso, TX 79998-1506<br>1-800-331-0480<br><br>ADP Claims Processing<br>P.O. Box 1800<br>Alpharetta, GA 30023-1800<br>1-866-872-2427 |
| **Health and Wellness Centers Plan\*** | JPMorgan Chase Medical Director<br>JPMorgan Chase & Co.<br>270 Park Avenue<br>11th Floor<br>Mail Code: NY1-K318<br>New York, NY 10017-2014<br>1-212-270-5555 |

\*   Options marked with an asterisk are self-insured. All other options are fully insured

## Other Health Care and Insurance Plans Subject to ERISA

| Plan | Contact |
|---|---|
| **Long-Term Disability Plan** | The Prudential Insurance Company of America<br>P.O. Box 13480<br>Philadelphia, PA 19176<br>1-877-361-4778 |
| **Individual Disability Insurance** | Provident Life and Casualty Insurance Company<br>The Benefits Center<br>P.O. Box 100262<br>Columbia, SC 29202-3262,<br>1-888-226-7959 |
| **Short-Term Disability Plan\*** | Disability Management Services<br>JPMorgan Chase & Co.<br>131 S. Dearborn Street<br>Mail Code: IL1-0708<br>Chicago, IL 60603<br>1-877-576-2427 |
| **Life and AD&D Insurance Plans** | The Prudential Insurance Company of America<br>P.O. Box 8517<br>Philadelphia, PA 19176<br>• 1-800-524-0542<br>• 1-888-257-0412 (for evidence of insurability questions only)<br>• 1-877-889-2070 (to convert basic life insurance coverage)<br>• 1-800-778-3827 (to port supplemental term life insurance and/or AD&D insurance) |
| **Business Travel Accident Insurance Plan** | AIG – National Union Fire Insurance Company of Pittsburgh, PA<br>Accident & Health Claims Department<br>P.O. Box 25987<br>Shawnee Mission, KS 66225-5987<br>1-800-551-0824 |
| **Group Legal Services Plan** | Hyatt Legal Plans, Inc.<br>1111 Superior Avenue<br>Cleveland, OH 44114<br>1-800-821-6400 |
| **Employee Assistance & Work-Life Program** | MHN Services<br>Attn: Member Appeals<br>P.O. Box 10697<br>San Rafael, CA 94912<br>1-888-426-0028 |

\*    Options marked with an asterisk are self-insured. All other options are fully insured

### Please Note:

For information on claims and appeals related to the Long-Term Care Insurance Plan, please refer to the Plan Administration Guide dated January 2010 or call The Prudential Insurance Company of America at 1-877-535-4788.

# Contacting the Claims Administrators: Plans Not Subject to ERISA

Plans that are not subject to ERISA include the Child/Elder Care Spending Account, Transportation Spending Accounts, Group Personal Excess Liability Insurance Plan, and Employee Stock Purchase Plan.

Although these plans are not subject to the claims process described under "Claiming Benefits: Plans Subject to ERISA," you can always contact the claims administrator listed for each plan with questions about the eligibility of an expense for reimbursement, payment of benefits, or denial of plan benefits. For claims relating to questions of eligibility for benefits under the plans and how the plans operate, please see "Claims Related to Eligibility to Participate in the Plans and Plan Operations" on page 11.

## Contact Information for Plans Not Subject to ERISA

For questions related to plan interpretation, filing initial claim, benefit provisions under the plan, payment of benefits, or denial of benefits, please refer to the appropriate claims administrator for the benefit plan, as listed below.

| Plan | Contact |
|------|---------|
| **Child/Elder Care Spending Accounts** | ADP FSA Claims<br>P.O. Box 1800<br>Alpharetta, GA 30023-1800<br>1-866-872-2427 |
| **Transportation Spending Accounts** | WageWorks<br>P.O. Box 14053<br>Lexington, KY 40511<br>1-877-924-3967 |
| **Group Personal Excess Liability Insurance Plan** | Arthur J. Gallagher & Co.<br>2 Westchester Park Drive, 3rd Floor<br>White Plains, NY 10604-3408<br>1-866-631-4603 |
| **Employee Stock Purchase Plan**<br><br>• For questions and/or to make changes related to your contribution amount<br><br><br>• For questions and/or transactions related to share purchase under the plan | <br><br>Benefits Call Center<br>1-877-576-2427 (U.S.)<br>Contact your Local Country Administrator if working outside the U.S.<br><br>Computershare Shareholder Services<br>1-800-982-7089<br>1-201-680-6862 (if calling from outside the U.S.) |

# Continuing Coverage Under COBRA

Under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), you and your covered dependents may have the right to continue health care coverage at your own expense for a certain period of time following the end of your JPMorgan Chase-provided health care coverage under certain circumstances — called "qualifying events." Your covered dependents include your spouse and your eligible dependent children who are covered at the time of a qualifying event (as defined below). Aon Hewitt is the administrator for JPMorgan Chase COBRA coverage.

COBRA coverage applies to the:

- Medical Plan (including the Prescription Drug Plan);
- Dental Plan;
- Vision Plan;
- Health Care Spending Account (through the end of the year in which the qualifying event occurs); and
- Onsite Health and Wellness Centers, wellness screenings, and Employee Assistance & Work-Life Program, even if not electing any other benefits under COBRA.

**Please Note:** Non-U.S. home-based expatriate employees assigned outside the United States and their dependents are not eligible for medical and/or dental continuation coverage under COBRA. Employee Assistance & Work-Life Program is available under COBRA continuation coverage for you and all covered eligible dependents, although wellness screenings are limited to you and your covered spouse only. Access to onsite Health and Wellness Centers are limited to you.

## Qualifying Events

You, your spouse, and your dependent children may elect COBRA coverage for varying lengths of time, depending on the circumstances under which your JPMorgan Chase health care coverage ends:

- **If Your Employment Terminates or Your Work Hours Are Reduced.** If you lose coverage because your employment terminates (for any reason other than gross misconduct) or your work hours are reduced, you and/or your covered dependents may purchase COBRA coverage for up to 18 months. Certain events may extend this 18-month COBRA continuation period:

  — If your covered dependents experience any second qualifying event within the original 18-month period, they (but not you) may extend the COBRA continuation period for up to an additional 18 months (for a total of up to 36 months from the original qualifying event).

  — If you become eligible for Medicare while employed (even if this is not a qualifying event for your covered dependents because they do not lose coverage) and then a second qualifying event (such as your termination of employment or reduction in hours of work) happens within 18 months, your covered dependents may elect COBRA continuation for up to 36 months from the date that you become eligible for Medicare.

---

**Qualified Beneficiary**

*Individuals eligible for COBRA continuation coverage are called "qualified beneficiaries." A qualified beneficiary includes the covered spouse and eligible dependent children of a covered employee, and, in certain cases, the covered employee. Under current law, in order to be considered a qualified beneficiary, an individual must generally be covered under a group health plan on the day before a qualifying event occurs that causes a loss in coverage (such as termination of employment or a divorce from or death of the covered employee). In addition, a newborn child or a child who is placed for adoption with the covered employee during the period of COBRA continuation coverage is also considered a qualified beneficiary.*

---

- **If Your Covered Dependents Lose Coverage.** If your spouse and/or your dependent children lose coverage due to any of the circumstances listed below, they may purchase COBRA coverage for up to 36 months from the date that coverage ends because:

  —— You die;

  —— You divorce your spouse or become legally separated;

  —— You become eligible for Medicare; or

  —— Your dependent child loses dependent eligibility status under the terms of the plan (for example, the end of the month in which your dependent child reaches age 26).

- **If You or Your Covered Dependents Become Disabled.** If you or one of your covered dependents becomes disabled under the Social Security Administration guidelines within 60 days of a qualifying event, or you are disabled at the time COBRA coverage is initially offered, you and your covered dependents may continue COBRA coverage for an additional 11 months beyond the initial 18 months, to a total of 29 months. You must notify Aon Hewitt, the COBRA administrator, within 60 days after Social Security issues a determination of disability status and before the initial 18-month COBRA coverage period ends. You also must notify the COBRA administrator within 30 days after Social Security determines the end of disability status for you or your covered dependent.

  If a second qualifying event occurs at anytime during this 29-month disability coverage period, your covered dependents (but not you) may continue COBRA coverage for an additional seven months, to a total of 36 months.

## Continuation Coverage for a Domestic Partner Dependent

A domestic partner or the children of a domestic partner who are not your tax dependents are not eligible for COBRA continuation coverage under federal law. However, JPMorgan Chase provides COBRA-like coverage if your domestic partner (and his/her eligible children) was covered under the JPMorgan Chase Medical Plan, Dental Plan, Vision Plan, and/or Employee Assistance & Work-Life Program at the time coverage ended.

**Please Note:** Not all Medical, Dental, and Vision Plan options allow COBRA-like coverage for a domestic partner and eligible dependent children. It is the responsibility of the employee to contact the health care administrator of his or her Medical Plan, Dental Plan, and/or Vision Plan option to verify what type of domestic partner continuation coverage is available.

Employee Assistance & Work-Life Program is available under COBRA-like continuation coverage for all eligible dependents, although wellness screenings are limited to your domestic partner only. Access to onsite Health and Wellness Centers is not available to your domestic partner or any of your eligible dependents.

The rate for domestic partner continuation coverage will be the same as the COBRA rate. Contributions will be made on an after-tax basis and will represent the full value of the coverage plus two percent. If you die while continuing your own coverage under COBRA, coverage may be continued by your covered domestic partner for a total of 36 months.

If a second qualifying event occurs any time within the original 18-month period, COBRA continuation coverage may be extended for an additional 18 months for a total period of 36 months.

# Giving Notice of a Qualifying Event

If your employment terminates, your work hours are reduced, you become eligible for Medicare, or you die, and this results in a loss of benefits under the Medical, Dental, and/or Vision Plans, the COBRA administrator automatically will notify you or your covered eligible dependents about your right to elect continued coverage under COBRA. You will receive the necessary election forms to your home address of record within 14 days from the date that the COBRA administrator is notified of your eligibility for COBRA coverage.

However, if you divorce or your eligible dependent child loses dependent status under the terms of the plan, you or one of your covered dependents must contact the Benefits Call Center within 60 days of any such event. If notice is not received within that 60-day period, your dependents will not be entitled to elect COBRA continuation coverage. Notice must be provided to the COBRA Administrator and must include the following information: the name of the employee or qualified beneficiaries requesting coverage, the qualifying event and the date of the qualifying event. In addition, you may be asked to provide supporting documentation such as a divorce decree. Otherwise, your covered dependents will not be eligible to elect continued coverage under COBRA.

If a qualified beneficiary experiences a second qualifying event that would entitle him or her to additional months of continuation coverage, he or she must notify the COBRA Administrator. This notice must be provided in writing and must include the name of the employee, the name of the qualified beneficiary receiving COBRA coverage, and the type and date of the second qualifying event.

This notice must be provided within 60 days from the date of the second qualifying event (or, if later, the date coverage would normally be lost because of the second qualifying event). In addition, the qualified beneficiary may be asked to provide a copy of a death certificate or divorce decree.

When the plan is notified that one of these events has happened, the qualified beneficiary will automatically be entitled to the extended period of COBRA continuation coverage. If a qualified beneficiary fails to provide the appropriate notice and requested supporting documentation during this 60-day notice period, the qualified beneficiary will not be entitled to extended continuation coverage.

If you are a former employee and you have a newborn or adopt a child while you are on COBRA continuation coverage and you enroll the new child for coverage, the new child will be considered a qualified beneficiary rather than an after-acquired dependent. This gives the child additional rights, such as the right to continue COBRA benefits even if you die during the COBRA period, and the right to an additional 18 months of coverage if a second qualifying event occurs during the initial 18-month COBRA period following your termination or retirement.

> **Updating Your Personal Contact Information**
>
> *To ensure that you receive information to enroll in COBRA, please contact the accessHR Contact Center to update your personal contact information. To update your dependent's contact information, please call the Benefits Call Center.*

# Choosing COBRA Coverage

You and/or your covered dependents must choose to continue coverage within 60 days after the later of:

- The date you and/or your covered eligible dependents would lose coverage as a result of the qualifying event; or

- The date you are notified of your and/or your covered eligible dependents' right to continue coverage as a result of the qualifying event (i.e., the date of your COBRA Enrollment Notice).

If you make no election during the 60-day period, you waive your right to continue coverage. Each qualifying beneficiary has an independent right to elect COBRA coverage. Covered employees may elect coverage on behalf of their spouses, and parents may elect coverage on behalf of their children.

You will receive COBRA materials from the JPMorgan Chase COBRA administrator approximately two weeks following the date they are notified of the qualifying event. These materials will describe the enrollment instructions and time frames for making your elections. You will have a period of 60 days from your termination date to elect COBRA coverage. **Important Note:** You must make an election at the time COBRA coverage is offered — it is not automatically provided.

## Premium Due Dates

If you elect to continue coverage under COBRA, you must pay the first two premiums (including all premiums due but not paid) within 45 days after your election. Thereafter, COBRA premiums are due on the first calendar day of the month for that month's coverage, and must be paid within 31 days of each due date. If you elect to continue your coverage under COBRA but do not make timely payments (even if you do not receive a bill), your coverage will be terminated retroactively to the time frame applicable to your last payment and will not be reinstated.

## Coverage During the Continuation Period

With respect to Medical Plan and Dental Plan coverage, you and your covered dependents may choose to continue the coverage you had as an active employee or you may elect a different option at the time you initially enroll for COBRA coverage. If coverage is changed for active employees, the same changes will be provided to individuals with COBRA coverage. In addition, you and your covered dependents may change coverage during the annual benefits enrollment period, if a qualified change in status occurs, or at other times, to the same extent that active employees may do so.

**Please Note:** Although JPMorgan Chase allows you to elect a different option at the time of your initial COBRA election, not all plans allow a change. Generally, all self-insured options allow a change at this time. It is the responsibility of the employee to contact the health care administrator of his or her Medical and Dental Plan option to verify if coverage is available.

## COBRA Coverage Costs

If you choose to continue under COBRA, you will generally pay the full cost for yourself and/or your qualified beneficiaries, plus a 2% administrative fee. If COBRA coverage is extended due to a disability, the rates for coverage during the additional 11 months are 150% of the full cost.

If a second qualifying event occurs during the initial 18-month period of COBRA coverage, the 102% rate applies to you and your qualified beneficiaries for the full 36 months of COBRA coverage, even if you or one of your covered dependents becomes disabled. However, if a second qualifying event occurs during an extended disability coverage period, then the rates of coverage will continue at the higher disability coverage rates explained above.

**Company-Subsidized COBRA Coverage**

If your employment ends due to a position elimination, you may be eligible for a company-provided COBRA subsidy. You can elect COBRA coverage paying the employee rate (rather than 102% of the total cost) for the lesser of 1) six months; or 2) the number of months of severance benefits you receive.

For calculation purposes, four weeks of severance pay equal one month, and fractional months are rounded up to the next higher whole number of months (e.g., 11 weeks would be rounded up to three months). This subsidy will apply to medical and dental coverage only (vision coverage is available, but not on a subsidized basis). Your eligibility for company-subsidized COBRA coverage is conditioned upon JPMorgan Chase's receipt of the executed Release.

Unsubsidized COBRA coverage (102% of the total cost of coverage) will be available following the subsidized portion of the COBRA period for the remainder of the 18-month COBRA continuation period.

# How Continued Coverage Could End

Under COBRA rules, coverage will end for you and/or your covered dependents when the first of the following occurs:

- Your COBRA coverage period ends;
- You do not make the required premium payments for coverage on a timely basis;
- You obtain coverage under another group plan that does not exclude or limit coverage for pre-existing conditions. However, if the new plan does have pre-existing conditions or limits, you can continue your COBRA coverage for that specific condition up to the end of your original maximum COBRA period (18 or 36 months, depending on your situation);
- You become eligible for Medicare. However, if you become eligible for Medicare, your covered dependents may be eligible to continue coverage through COBRA for up to 36 months from the date of the original qualifying event;
- In the case of an extended disability coverage period, you or your covered dependent is no longer considered disabled under Social Security guidelines;
- For newborns and children adopted by or placed for adoption with you during your COBRA continuation period, the date your COBRA coverage period ends unless a second qualifying event occurs; or
- JPMorgan Chase terminates the plan.

# Special Rule for Health Care Spending Account Participants

Former employees may be eligible to continue participation in the Health Care Spending Account under COBRA if you make after-tax contributions equal to 102% of the total monthly contribution to the plan. Coverage may not be continued into the next plan year.

**Please Note:** You may want to elect to continue your participation in the Health Care Spending Account under COBRA if you have not used your entire account balance prior to your termination date and you anticipate that you will incur expenses after that date. Otherwise, only those expenses incurred through the end of the month in which your employee coverage ends will be eligible for reimbursement.

## Additional Questions About COBRA Coverage

If you have additional questions about your COBRA coverage, or you need to contact the COBRA administrator for any reason, please call or write to:

Aon Hewitt
JPMorgan Chase Benefits Call Center
P.O. Box 785041
Orlando, FL 32826-5041
1-866-717-7716

# Leaves of Absence

## Military Leave of Absence

Your benefits coverage may be affected if you take a paid or unpaid military leave as described below. For detailed information about the JPMorgan Chase Military Leave and Reserve Training Policy, please visit me@jpmc > HR Policies > Leaves of Absence > Military Leave and Reserve Training.

## Paid Military Leave

If you qualify for a paid military leave, you will be provided with full pay and continuation of most benefits. **Please Note:** Certain benefits plans have exclusions for injury or illness that results from an act of war. Benefits which do not continue while you are on a paid military leave include:

- Business Travel Accident Insurance Plan;
- Transportation Spending Account;
- Long-Term Disability Plan (after 12 weeks of paid military leave); and
- Short-Term Disability Plan.

You may resume your benefits coverage when you return to work.

## Unpaid Military Leave

If you qualify for an unpaid military leave, you may continue many of your elected benefits, provided you make the necessary contributions. **Please Note:** Certain benefits plans have exclusions for injury or illness that results from an act of war. Benefits which do not continue while you are on an unpaid military leave include:

- Business Travel Accident Insurance Plan;
- Child/Elder Care Spending Account;
- Transportation Spending Accounts;
- Long Term Disability Plan (after 12 weeks of unpaid military leave);
- Short-Term Disability Plan; and
- Employee Stock Purchase Plan.

Benefits coverage may also end if you do not make the necessary contributions in a timely fashion. You may resume your benefits coverage when you return to work.

# Benefits Coverage While on Approved Short-Term Disability Leave

While you are on a short-term disability leave you may continue many of your elected benefits provided you make the necessary contributions. Benefits which do not continue while you are on short-term disability leave include Business Travel Accident Insurance, Child/Elder Care Spending Account, and the Transportation Spending Accounts.

In addition, if your leave is unpaid, you cannot continue participating in the Employee Stock Purchase Plan. For information about participating in the 401(k) Savings Plan or Retirement Plan while on leave, please refer to the Summary Plan Descriptions for those plans.

Benefits coverage may also end if you do not make the necessary contributions in a timely fashion. Generally, if your benefits coverage ended during your leave, you may resume certain coverage when you return to work.

---

**Please Note**

*You should refer to each individual summary plan description for more information about what happens to your benefits in the event of a leave of absence.*

---

**Making Contributions While on Unpaid Leave**

*If you wish to continue certain benefits while on any unpaid leave, you must make the necessary contributions on a timely basis, even if you do not receive a bill.*

---

## Benefits Coverage While on Approved Parental Leave

While you are on a parental leave, you may continue many of your elected benefits provided you make the necessary contributions. Benefits which do not continue while you are on a parental leave include Long-Term Disability (LTD) Insurance (coverage stops after 12 weeks), Business Travel Accident Insurance, Child/Elder Care Spending Account, and the Transportation Spending Accounts. In addition, if your leave is unpaid, you cannot continue participating in the Employee Stock Purchase Plan.

Generally, benefits coverage may also end if you do not make the necessary contributions. If your benefits coverage ended during your leave, you may resume coverage when you return to work.

## Benefits Coverage While on Approved Family and Medical Leave

You may continue many of your elected benefits while you are on family and medical leave provided you make the necessary contributions. Benefits which do not continue while you are on family leave include Long-Term Disability (LTD) Insurance (your coverage stops after 12 weeks), Business Travel Accident Insurance, Transportation Spending Accounts, and Child/Elder Care Spending Account.

If your leave is unpaid, you cannot continue participating in the Employee Stock Purchase Plan. For information on participating in the 401(k) Savings Plan or Retirement Plan while on leave, please refer to the Summary Plan Descriptions for those plans.

Benefits coverage may also end if you do not make the necessary contributions. Generally, you may resume your benefits coverage when you return to work.

### Special Rules for Health Care Spending Account

Special rules apply to your Health Care Spending Account. When you take a leave covered under the Family and Medical Leave Policy, the entire amount you elected under your Health Care Spending Account will be available to you during your leave period, less any prior reimbursements that you have received for that plan year, as long as you continue to make your contributions during your leave of absence. If you stop making contributions, your participation in the Health Care Spending Account will terminate while you are on a leave and you may not receive reimbursement for any health care expenses you incur after your coverage terminated.

If your Health Care Spending Account participation terminates during your leave, your Health Care Spending Account contributions will begin again if you return to work during the same year in which your leave began. You will not be able to submit claims for reimbursement for expenses incurred during your leave, and your contributions will increase to "make up" for the contributions you missed during your leave. The amount available for reimbursement will be the same annual amount you elected before the leave.

You may not use your Health Care Spending Account for expenses incurred during the period you did not participate.

# Special Notice for Employees Who Have Been Rehired by JPMorgan Chase

If your employment has been reinstated with JPMorgan Chase (i.e., you have been rehired within 31 days of your employment termination date or your coverage termination date), your coverage for certain benefits under the JPMorgan Chase Benefits Program may be affected, as highlighted in the following chart:

| | |
|---|---|
| **Medical (including Medical Reimbursement Account), Dental, and Vision Plans** | You and your dependents will be assigned the same coverage you had prior to your coverage termination date. **Please Note:** If you are a retired employee when rehired, you must take active employee coverage and discontinue any retiree coverage you may have elected. |
| **Health Care Spending Account** | Your previously elected annual contribution amount will be reinstated and prorated accordingly for the balance of the plan year. **Please Note:** Expenses incurred during your break in service are not eligible for reimbursement, unless you elected to make after-tax contributions under COBRA. |
| **Child/Elder Care Spending Account** | Your previously elected annual contribution amount will be reinstated and prorated accordingly for the balance of the plan year. **Please Note:** Expenses incurred during your break in service are not eligible for reimbursement. |
| **Transportation Spending Accounts (Transit/Parking)** | There are no reinstatement provisions for these accounts. You will need to make a new enrollment election upon your date of hire. |
| **Long-Term Disability (LTD) Insurance Plan including Individual Disability Insurance** | You will be assigned the coverage level you had prior to your coverage termination date. |
| **Life Insurance Plan** | You and your dependents will be assigned the same coverage amount in effect prior to your termination date. |
| **Accidental Death and Dismemberment (AD&D) Insurance Plan** | You and your dependents will be assigned the same coverage amount in effect prior to your termination date. |
| **Group Personal Excess Liability Insurance Plan** | You will be assigned the same coverage in effect prior to your termination date. |
| **Group Legal Services Plan** | You will be assigned the same coverage in effect prior to your termination date. |

**Please Note:** If you are rehired after 31 days of your termination date, you will need to make new benefits elections for all plans for which you would like to participate.

# Other Important Information

In addition to the details provided on other pages, below you'll find more important information.

Your benefits as a participant in plans listed in **Your Guide to Benefits at JPMorgan Chase** are provided under the terms of the official plan text, this document and insurance contracts, if any, issued to JPMorgan Chase. If there is a discrepancy between the insurance contracts and this document, the insurance contracts will control.

**Please Note:** No person or group, other than the Plan Administrators for the JPMorgan Chase U.S. Benefits Program has any authority to interpret the plans listed in **Your Guide to Benefits at JPMorgan Chase** (or official plan documents) or to make any promises to you about them. The Plan Administrators for the JPMorgan Chase U.S. Benefits Program have complete authority in their sole and absolute discretion to construe and interpret the terms of the plans and any underlying policies and/or contracts, including eligibility to participate in the plans.

All decisions of the Plan Administrators for the JPMorgan Chase U.S. Benefits Program, or their delegates, are final and binding upon all affected parties. The Plan Administrators have delegated their discretion to decide claims and appeals to the claims administrators and to the Heath and Income Protection Plans Appeals Committee and the Short-Term Disability Plan Appeals Committee, as described in this Guide.

## No Assignment of Benefits

The plans summarized in this Guide are used exclusively to provide benefits to you and, in some cases, your survivors. Neither you nor JPMorgan Chase can assign, transfer, or attach your benefits, or use them as collateral for a loan. You may not assign your right to file actions under ERISA regarding the plans.

**Please Note:** You may assign certain employee life insurance benefits and may assign to a health care service provider the right to payment. Please contact the Benefits Call Center for more information.

## Right to Amend

JPMorgan Chase reserves the right to amend, modify (including cost of coverage), reduce or curtail benefits under, or terminate all of the plans and policies described in this Guide at any time for any reason by act of the Human Resources Executive, other authorized officers, or the Board of Directors or other authorized officers. In addition, all of the plans and policies described in this Guide do not represent a vested benefit.

JPMorgan Chase also reserves the right to amend any of the plans and policies, to change the method of providing benefits, to curtail or reduce future benefits, or to terminate at any time for any reason any or all of the plans and policies described in this Guide.

## Not a Contract of Employment

Neither this Guide, nor the benefits described in this Guide, creates a contract of employment nor a guarantee of employment between JPMorgan Chase and any employee.

## Plan Documents Control

This section is a summary of the plan documents and may not contain all the information important to you. We urge you to read the text of the plan documents. You may obtain a copy of the plan documents and information regarding the Plan Administrators by writing to:

**Plan Administrator for the JPMorgan Chase Benefits Program:**

JPMorgan Chase & Co.
One Chase Manhattan Plaza
20th Floor
Mail Code: NY1-A341
New York, NY 10005-1402

# JPMORGAN CHASE & CO.

December 11, 2015

Elizabeth Stone

█████████████

Case #: 2015043928
Re: Short-TermDisability

Hello,

Disability Management Services (DMS) has considered your claim for benefits under the JPMorgan Chase Short-Term Disability (STD) Plan. Your claim has been approved from October 13, 2015 to November 29, 2015. However, your claim for disability benefits beyond this period is denied because we have not received the medical information needed to substantiate your claim.

The Important Terms section of the Plan indicates that in order to establish "disability," an employee must provide a medical certification from a licensed physician confirming the status of the employee's medical condition as it relates to the claim of disability. The physician must also provide objective documentation that the employee's medical condition disables the employee from performing his or her job. Your physician did not provide a medical certification that you are unable to perform your job after November 29, 2015.

Although STD benefits have been denied under the STD Plan, you may still be eligible for a leave of absence under the JPMorgan Chase Family and Medical Leave Policy and/or applicable state or local leave laws or other firm policies.

If you have any questions about other available leave options, contact DMS at 888-931-3100.

**State Temporary Disability Insurance**

If you are employed in New York or Hawaii, your state temporary disability insurance has been approved from October 13, 2015 to November 29, 2015. However your claim for disability leave beyond this period has been denied as no updated medical information was received.

If you work in the State of New Jersey, you will receive a separate letter addressing your New Jersey temporary disability benefit.

**Right to Appeal**

You have the right to appeal this decision. To file an appeal, submit a written request and supporting documentation within **180 calendar days** of the date of receipt of this letter. To perfect your appeal, your physician must provide the medical certification described above. You may fax the information to Disability Management Services at 866-209-5276, email it to dms.appeals@jpmchase.com or mail it to:

JPMorgan Chase

Disability Management Services Appeals Coordinator

10 S. Dearborn

Mail Code: IL1-0708

Chicago, IL 60670

EXHIBIT 3

Your appeal request must be addressed to Disability Management Services, include your name, and the case number noted above. State the reason for your appeal and include any relevant supporting documentation that you would like to have considered.

Under normal circumstances, you will be notified of a decision on your appeal within 45 calendar days of the date your request for review is received. However, the following will impact the decision notification:

-   If special administrative circumstances require a delay, you will be notified of the reason for delay within 45 calendar days of the date your request is received.

-   If you require additional time to secure relevant information you may notify us of that need and may be allowed up to 45 days to provide such information.

You have the right to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal. If you bring a civil action under ERISA, you must commence the action within one year of the date of the denial of your final appeal, regardless of any state or federal statutes relating to limitations of actions.

**For More Information**

If you have questions regarding your return to work, please contact your manager. If you have questions regarding your unapproved time off, please contact your aligned HR team and Manager.

If you have any questions about your claim or leave of absence policy, you can visit My Health from work, myhealth.jpmorganchase.com from your home or call Disability Management Services at 888-931-3100. Customer Service Representatives are available from 8:00 a.m. to 8:00 p.m., Eastern Time, Monday-Friday, except certain U.S. holidays.

If you have any payroll questions, please call access HR at 877-576-2427. Service Representatives are available from 8:00 a.m. to 8:30 p.m., Eastern Time, Monday-Friday, except certain U.S. holidays.

Thank you,

Katrina Johnson

888-931-3100 x 4211032

STD Case Manager

# JPMorgan Chase & Co.

July 15, 2016


Elizabeth Stone

Re: Appeal of denial of Short-Term Disability Plan benefits; Case #: 2015043928

Dear Ms. Stone:

By letter received May 10, 2016, you appealed the denial of your request for benefits under the JPMorgan Chase Short-Term Disability Plan ("Plan.") The JPMorgan Chase Short-Term Disability Plan Appeals Committee has reviewed your request to appeal the decision to deny your claim for benefits under the Plan.

**Plan Provision**

The section of the Plan entitled "Important Terms" provides that an employee must support a request for disability leave by providing objective documentation from a licensed physician showing that the employee is unable to perform the material and substantial duties of the employee's position on an active employment basis.

**Decision**

After carefully considering all the information in your claim file, including that gathered during the review process, the Committee determined that the decision to deny your claim for benefits will be upheld based on the following reasons:

Review of medical documentation received, including the Advisory Report by Reliable Review Services, dated July 5, 2016, does not indicate that objective evidence shows that you were unable to perform the material and substantial duties of your job from November 30, 2015 onward.

You applied for leave of absence on October 15, 2015, for your leave of absence that began on October 13, 2015 because of major depression, depressive disorder due to another medical condition, and anxiety disorder due to another medical condition. On October 16, 2015, the case manager contacted you to discuss your claim.

On November 9, 2015, the case manager reviewed your certification form signed by Kelli Pacicco, M.A., L.A.C., on November 6, 2015. It documented a diagnosis of recurrent severe major depressive disorder. Your GAF score was 45, and you were being seen weekly. Your documented symptoms were: depressed, anxious, angry, dysphoric, labile, irritability, anhedonia, insomnia, decreased energy, indecisiveness, poor concentration, thoughts of death, lack of concentration and ability to focus, fatigue, feelings of hopelessness, psychosocial factors creating significant anxiety, and panic attacks. Your work assessments were none to severe impairments. Your estimated return to work date was documented as November 30, 2015. Your claim was approved through November 29, 2015.

On December 10, 2015, your claim was denied because no medical documentation had been received for consideration of extending your leave beyond November 29, 2015. On December 11, 2015, the case manager advised you of the denial of your claim and the reason.

On January 25, 2016, the case manager reviewed your medical records. The denial of your claim was upheld because there was lack of clinical evidence to support you were unable to do your job from November 30, 2015 onward.

On May 11, 2016, the case manager reviewed your medical records that consisted of your request for an appeal and medical documentation that had been previously received. Also included was a certification form signed by Ms. Pacicco on November 20, 2015 providing a return to work date of December 14,

EXHIBIT 4

2015. It documented that you continued to struggle with lack of concentration and ability to focus. Your work assessment was documented as mild to severe impairments. The denial of your claim was upheld because there was lack of clinical evidence to support you were unable to do your job from November 30, 2015 onward.

On May 20, 2016, the appeal case manager confirmed your request for an appeal had been received. The appeal process was explained to you. You requested time through May 27, 2016 to allow you to obtain and submit additional medical documentation for the appeal review.

On May 27, 2016, you requested an additional week to submit your additional medical documentation. On June 6, 2016, the appeal case manager contacted you to confirm you were still submitting additional medical documentation for the appeal review. You advised us that you were too sick to submit your medical documentation that day, and requested time through June 8, 2016 to submit it. On June 13, 2016, you advised us via voice mail message that you needed additional days to submit your updated medical documentation. The appeal case manager returned your call, and advised you that your file was scheduled to be forwarded to the consultant for the peer review on June 14, 2016. You advised us that you would have the medical submitted by June 17, 2016. On June 20, 2016, you advised us via voice mail message that you were unable to submit your medical documentation because you were still sick. You requested additional time to submit your medical documentation. The appeal case manager returned your call and advised you that the appeal review would resume on June 21, 2016, and that should any medical documents be received after your file has been forwarded for the peer review, would be included once received. On June 21st, 22nd, and 24th, your medical records were received. On June 24, 2016, your file was forwarded to the consultant for the peer review. On July 1, 2016, a letter was mailed to you advising that the completion date on your appeal had been extended.

Warren R. Taff, M.D., M.P.H., consultant for Reliable Review Services, concluded as follows: "The employee is a 58 year old female "…" with no evidence that she is suffering from significant physical pathology. Her inability to leave her home is secondary to her GI symptoms and not due to symptoms of her depression. She has only been able to do telephonic sessions which prevents the attending provider in assessing her objectively and her MSE appears to be consistently WNL so the submitted medical records are insufficient and inadequate to support the employee's subjective self-assessment that she is incapable of working as of 11/30/2015 onward due to symptoms of a primary mental health disorder."

On July 6, 2016, your claim was reviewed for the final decision. The denial of your claim was upheld because there was lack of clinical evidence to support you were unable to do you job from November 30, 2015 onward.

**What Happens Next**

This represents the Plan's final decision with respect to your claim.

Upon request, you have the right to receive, free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

You have the right to obtain identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with your adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

You and the Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency. Please be advised that non-insured short term disability plans are not subject to state insurance regulatory agencies.

You have a right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA). If you bring a civil action under ERISA, you must commence the action within one year of the date of the denial of your final appeal, regardless of any state of federal statutes relating to limitations of actions.

Sincerely,

Karen Watkins

312-385-7257

Appeal Case Manager

On behalf of the JPMorgan Chase Short-Term Disability Plan Appeals Committee

# EXHIBIT B

*1996 ERISA LEXIS 28*

Department of Labor Pension & Welfare Benefit Programs

August 27, 1996

**Reporter**
1996 ERISA LEXIS 28 *

# OPINION 96-16 A

[*1] 3(1) Definitions

## Core Terms

phase, retirement, disability, elect, retirement plan, payroll, employee welfare benefit plan

**Request By:** Mr. Scott J. Morris
Assistant General Counsel
Northwestern Mutual Life
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4797

## Opinion

 This responds to your request for an advisory opinion that the NML Employee Disability Income Plan (Plan) is an employee welfare benefit plan within the meaning of section 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA).

Your submission contains the following facts and representations. The Northwestern Mutual Life Insurance Company (Company) maintains the Plan to provide benefits to all regular full-time and part-time employees who are unable to work due to illness or injury. [1] The Plan specifies that benefits are provided according to three phases, as follows:

Phase I. After an employee is absent from work for five consecutive workdays due to disability, the employee is entitled to a wage continuation benefit equal to 100% of compensation or each workday of absence. The total benefit amount is limited to the greater of ten days' compensation or five days' compensation for each year of service with the Company.

Phase II. After the expiration of Phase I benefits, an employee is entitled to 70% of [*2] compensation until the earlier of the date the employee recovers from the disability or the expiration of one year from the commencement of the disability.

Phase III. If the disability continues beyond one year, the employee becomes entitled to long-term disability benefits equal to 70% of annual compensation up to $ 20,000 and 60% of annual compensation in excess of $ 20,000. The employee is also entitled to a cost-of-living adjustment, before certain benefit reductions described below, as calculated under the Northwestern Mutual Retirement Plan (Retirement Plan). Phase III benefits are paid monthly and continue until the earliest of (a) the employee's recovery from disability, (b) the end of the "maximum benefit period," or (c) the employee's death. The Plan's provisions specify that the maximum benefit

---

[1] Certain other employees, described as "long-term temporary" and "long-term accommodation" employees, are eligible for Phase I benefits only. These employees comprise approximately two percent of all plan participants.

EXHIBIT B

1996 ERISA LEXIS 28, *2

period is determined by the employee's age when the disability begins. If disabled at age 61 or younger, the maximum benefit period runs to age 65, or 3 years 6 months, if longer. For employees disabled at age 62 or older, the maximum benefit period is scaled downward from 3 years 6 months to a period of one year in the case of employees disabled at age 69 or older. [*3]

The Plan specifies that benefits under Phases I, II, and III are to be reduced by any amount the employee or any dependent of the employee receives under certain other programs, including Social Security and the Retirement Plan. In addition, if the employee reaches his or her normal retirement date and does not elect to retire, Phase III benefits are offset by the amount that the individual would receive as a normal retirement annuity under the Retirement Plan, if he or she had elected to retire.

The Plan further provides that an employee who is receiving Phase I or II benefits and has not elected to retire under the Retirement Plan is deemed an employee of the Company for purposes of all fringe benefits, including vacation credits and seniority. An employee who is receiving Phase III benefits and has not elected to retire under the Retirement Plan ceases to be considered an employee for any purpose except accrual of benefits under the Retirement Plan and participation [*4] in the Company's group life insurance and flexible benefit plans. The Plan indicates that employees who are receiving any benefits under the Plan and have elected retirement are no longer considered employees of the Company for any purpose. [2]

You represent that the Plan is unfunded and all benefits are paid out of the general assets of the Company. The Plan specifies, however, that the Company retains discretion to pay benefits through a group disability income insurance policy, a trust, separate account or any other lawful means.

For the reasons that follow, it is the opinion of the Department of Labor (Department) that the Plan is an employee welfare benefit plan within the meaning of section 3(1) of ERISA.

Section 3(1) of ERISA defines the term "employee welfare benefit plan" to include, as relevant here, any plan or program established or maintained by an employer to provide to its employees benefits in the event of sickness, accident, or disability. The Department clarified the scope of section 3(1) in regulations that, among other things, identify certain employer ***payroll*** [*5] ***practices*** that are not included within this definition. Specifically, as relevant here, regulation section _29 CFR 2510.3-1(b) (2)_ describes the following employer practice as excluded from the meaning of "employee welfare benefit plan: "

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) . . . .

The information furnished indicates that the Plan is clearly an employee welfare benefit plan as defined in section 3(1) of ERISA, unless the Plan is excluded from that definition as a ***payroll*** ***practice*** described in regulation section 2510.3-1(b) (2). On the basis of the information furnished, it is the view of the Department that the Plan is not a ***payroll*** ***practice*** within the meaning of that regulation.

In the preamble of the regulation, the Department stated that "section 2510.3-1(b) distinguishes welfare plans from employer ***payroll*** ***practices*** which, although related to benefits described in [section 3(1) of ERISA], [*6] are _more closely associated with normal wages or salary_," and that "paragraphs b(2) and b(3) of § 2510.3-1 are designed to deal with payment of compensation out of general assets of the employer during periods of _employee absences_." 40 Fed. Reg. 34526 (August 15, 1975) (emphasis added). It is thus evident that the "sick pay" exclusion is intended to apply to arrangements in which compensation continues to be paid to individuals who are absent from service, but who remain employees during the periods for which their compensation continues to be paid. This ***payroll*** ***practice*** exception is not intended to apply to arrangements that continue cash payments to individuals, in amounts related to the individuals' prior compensation for services, after the individuals have ceased to be considered employees, such as when they resign or retire. Under any of the three Phases of the Plan, benefits may be paid to

---

[2] See section 4, Art. VI. of the Plan together with sections 1,2, and 3, Art. VI. of the Plan.

Eric P. Mathisen

1996 ERISA LEXIS 28, *6

individuals who have elected retirement and are no longer considered to be employees of the Company. In addition, recipients of Phase III benefits who have not elected retirement are considered employees only for the limited purpose of coverage under certain benefit plans.

We note **[*7]** as further indication that the Plan is not an arrangement contemplated by regulation section 2510.3-1(b)(2) that the benefit amount paid under Phase III includes a cost-of-living adjustment that is calculated under the terms of the Retirement Plan and the benefit amount is offset by the amount of the normal retirement annuity that would be payable upon reaching normal retirement eligibility, even though the benefit recipient does not elect retirement. A sick pay plan that determines benefits in part on the basis of the benefit provisions of the employer's retirement plan and by treating the benefit recipient as if he had elected retirement, when in fact the recipient has not so elected, does not, in the view of the Department, provide "normal compensation" within the meaning of the sick pay regulation.

You also expressed concern that the Plan should be considered a single employee welfare benefit plan, rather than several plans in which Phase I and/or II benefits would be separately classified as ***payroll practices*** while Phase III benefits are treated as an ERISA-covered plan. In this regard, it has been the position of the Department that whether there is a single plan or **[*8]** multiple plans is an inherently factual question on which the Department ordinarily will not opine in the advisory opinion process. See section 5.01 of ERISA Procedure 76-1 (41 Fed. Reg. 36281, August 27, 1976). We note, however, that the information you submitted does not include anything that would necessarily indicate that the Plan is other than a single welfare benefit plan under ERISA.

This letter constitutes an advisory opinion under ERISA Procedure 76-1 and, accordingly, is issued subject to the provisions of that procedure, including section 10 thereof relating to the effect of advisory opinions.

SUSAN G. LAHNE
Chief, Division of Coverage
Office of Regulations and Interpretations

**Load Date:** 2014-05-29

---

End of Document

Eric P. Mathisen

# EXHIBIT C

1   Scott E. Davis
     State Bar No. 016160
2   SCOTT E. DAVIS, P.C.
     8360 E. Raintree Drive, #140
3   Scottsdale, AZ 85260

4   Telephone:  (602) 482-4300
     Facsimile:   (602) 569-9720
5   email: davis@scottdavispc.com

6   Scott M. Harris
     State Bar No. 011524
7   Scott M. Harris, P.C.
     8360 E. Raintree Drive, Suite 140
8   Scottsdale, AZ 85260

9   Telephone: (602) 252-7400
     Facsimile: (602) 795-5610
10   email: harris@smharrislaw.com

**ORIGINAL**

11   *Attorneys for Plaintiff Elizabeth Stone*

12

13     **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
         **IN AND FOR THE COUNTY OF MARICOPA**

14

15   Elizabeth Stone,         Case No.   **CV2016-055000**

16        Plaintiff,           **SUMMONS**

17      v.

18   JPMorgan Chase Short-Term Disability Plan;    **If you** would like legal advice from a lawyer,
     JPMorgan Chase & Company; JPMorgan         contact the Lawyer Referral Service at
19   Chase Short-Term Disability Plan Appeals            602-257-4434
     Committee; JPMorgan Chase Disability                or
20   Management Services,              www.maricopalawyers.org
                                        Sponsored by the
21        Defendants.         Maricopa County Bar Association

22

23   THE STATE OF ARIZONA TO DEFENDANTS:

24         ***JPMorgan Chase Short-Term Disability Plan***
25            ***c/o JPMorgan Chase & Co.***

26

                                        1

EXHIBIT C

*One Chase Manhattan Plaza*
*20th Floor*
*Mail Code: NY1-A336*
*New York, NY 10005-1401*

**YOU ARE HEREBY SUMMONED** and required to appear and defend in this action, in this Court within the following time limits:

If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona, whether by direct service, by registered or certified mail, or by publication, you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where a process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this State, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt an affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. RCP 4; ARS § 20-22, 28-502, 28-503.

**YOU ARE HEREBY NOTIFIED** that a copy of the Summons and Complaint may be obtained from the Clerk of the Maricopa County Superior Court located at 201 West Jefferson, Phoenix, Arizona.

2

**YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney. RCP 10(d); ARS § 12-311; RCP 5.

The Plaintiff's attorneys are:

> Scott E. Davis, Esq.
> Scott M. Harris, Esq.
> 8360 East Raintree Drive
> Suite 140
> Scottsdale, AZ 85260
> (602) 482-4300
> (602) 252-7400

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least three (3) judicial days in advance of a scheduled proceeding.

Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

SIGNED AND SEALED this _____ day of _____ DEC – 7 2016



MICHAEL K. JEANES, CLERK

Clerk of Superior Court

**B. Lopez**
**Deputy Clerk**

Deputy Clerk

3

**In the Superior Court of the State of Arizona**
**In and For the County of Maricopa**

Case Number _____ **CV2016-055000**

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorneys
Scott M. Harris
Scott E. Davis

Attorneys' Bar Numbers
011524 – Scott M. Harris, Esq.
016160 – Scott E. Davis, Esq.

Plaintiff's Name(s): (List all)

Elizabeth Stone

Is Interpreter Needed? ☐ Yes ☒ No

If yes, language type: _____

Attorney/Pro Per Signature

To the best of my knowledge, all information is true and correct.

**COPY**

DEC – 7 2016

COURT SEAL

MICHAEL K. JEANES, CLERK
B. LOPEZ
DEPUTY CLERK

Plaintiff's Address:

c/o Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

c/o Scott E. Davis, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

JPMorgan Chase Short-Term Disability Plan, JPMorgan Chase & Company, JPMorgan Chase Short-Term Disability Plan Appeals Committee and JPMorgan Chase Disability Management Services.

(List additional defendants on page two and/or attach a separate sheet).

EMERGENCY ORDER SOUGHT: ☐ Temporary Restraining Order ☐ Provisional Remedy
☐ OSC
☐ Election Challenge ☐ Employer Sanction ☐ Other _____

☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**).

☐ RULE 8(i) COMPLEX LITIGATION APPLIES   Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties. (Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

## NATURE OF ACTION

(Place an "**X**" next to the **one** case category that most accurately describes your primary case.)

| **100 TORT MOTOR VEHICLE:** | **110 TORT NON-MOTOR VEHICLE:** |
|---|---|
| ☐ 101 Non-Death/Personal Injury | ☐ 111 Negligence |
| ☐ 102 Property Damage | ☐ 112 Product Liability – Asbestos |
| ☐ 103 Wrongful Death | ☐ 112 Product Liability – Tobacco |

Page 1 of 3

☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort
☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☒ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D.   ☐ 123 Hospital
☐ 122 Physician D.O   ☐ 124 Other

**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds - Sale
☐ Construction Defects (Residential/Commercial)
  ☐ 136 Six to Nineteen Structures
  ☐ 137 Twenty or More Structures


**150-199  OTHER CIVIL CASE TYPES:**
☐ 156 Eminent Domain/Condemnation
☐ 151 Forcible Detainer
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)
☐ 187 Real Property
☐ Sexually Violent Persons (A.R.S. §36-3704)

(Except Maricopa County)
☐ Minor Abortion (See Juvenile in Maricopa County)
☐ Special Action Against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

**150-199 UNCLASSIFIED CIVIL CASE TYPES:**
☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)


☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute - Other
☐ 159 Restoration of Civil Rights (Federal)
☐ 159 Clearance of Records (A.R.S. §13-4051)
☐ 190 Declaration of Factual Innocence(A.R.S.§12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain–Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute - Discrimination
☐ 185 Employment Dispute - Other
☐ 163 Other

_____
(Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐ Antitrust/Trade Regulation
☐ Construction Defect with many parties or structures
☐ Mass Tort
☐ Securities Litigation with many parties
☐ Environmental Toxic Tort with many parties
☐ Class Action Claims
☐ Insurance Coverage Claims arising from the above-listed case types

Additional Plaintiff(s)

_____

Page 2 of 3

Superior Court of Arizona in Maricopa County

**Additional Defendant(s)**

Superior Court of Arizona in Maricopa County

1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   8360 E. Raintree Drive, #140
3  Scottsdale, AZ 85260

4  Telephone:  (602) 482-4300
   Facsimile:  (602) 569-9720
5  email: davis@scottdavispc.com

6  Scott M. Harris
   State Bar No. 011524
7  Scott M. Harris, P.C.
   8360 E. Raintree Drive, Suite 140
8  Scottsdale, AZ 85260

9  Telephone: (602) 252-7400
   Facsimile: (602) 795-5610
10 email: harris@smharrislaw.com

11 *Attorneys for Plaintiff Elizabeth Stone*

12

13        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
             IN AND FOR THE COUNTY OF MARICOPA
14

15 Elizabeth Stone,                          Case No.  **CV2016-055000**

16            Plaintiff,

17     v.                                    **PLAINTIFF'S CERTIFICATE
                                             REGARDING COMPULSORY
18 JPMorgan Chase Short-Term Disability Plan;       ARBITRATION**
   JPMorgan Chase & Company; JPMorgan
19 Chase Short-Term Disability Plan Appeals
   Committee; JPMorgan Chase Disability
20 Management Services,

21            Defendants.

22

23        The undersigned certifies that the largest award sought by Plaintiff, including

24 punitive damages, but excluding interest, attorneys' fees and costs **does** **not** exceed the

25

26

                                        1

COPY

DEC – 7 2016

MICHAEL K. JEANES, CLERK
B. LOPEZ
DEPUTY CLERK

limits set by Local Rule for Compulsory Arbitration.  This case **is** subject to Compulsory Arbitration.

DATED this 7th day of December, 2016.

**SCOTT E. DAVIS, P.C.**

Scott E. Davis, Esq.
Scott M. Harris, Esq.
Attorneys for Plaintiff

Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 252-7400
Facsimile: (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Elizabeth Stone*

**COPY**

DEC − 7 2016

MICHAEL K. JEANES, CLERK
B. LOPEZ
DEPUTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

Elizabeth Stone,

      Plaintiff,

v.

JPMorgan Chase Short-Term Disability Plan;
JPMorgan Chase & Company; JPMorgan
Chase Short-Term Disability Plan Appeals
Committee; JPMorgan Chase Disability
Management Services,

      Defendants.

Case No.  CV2016-055000

**COMPLAINT**

(Breach of Contract)

1

Now comes the Plaintiff Elizabeth Stone (hereinafter referred to as "Plaintiff"), by and through her attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, she states:

### Jurisdiction

1. This is an action for the failure to approve and pay Plaintiff her short-term disability benefits (hereinafter referred to as "STD") in the form of salary continuation (i.e. wages) under the JPMorgan Chase Short-Term Disability Plan (hereinafter referred to as the "Plan").

2. The Plan and all claims related herein are subject to the jurisdiction of this court.

### Parties

3. Plaintiff is a resident of Maricopa County, Arizona.

4. JPMorgan Chase & Company (hereinafter referred to as the "Company") sponsored and administered the Plan. The Company hired the Claim Administrator, JPMorgan Chase Disability Management Services (hereinafter referred to as "DMS") to administer and make claim decisions. In this role, DMS functioned as the Company and the Plan's agent.

5. The JPMorgan Chase entities operated under financial conflict of interest given that a JPMorgan Chase entity was not only responsible for making all of the claim decisions, but also paying the short-term disability benefits in the event Plaintiff was found disabled.

6. The JPMorgan Chase Short-Term Disability Plan Appeals Committee (hereinafter referred to as the "Committee") also functioned as the Company and the Plan's agent by administering short-term disability claims at the final level of administrative review and making claim decisions at the final level of administrative review.

2

7. The Plan is a payroll practice disability benefit not subject to ERISA. 29 U.S.C. § 1001 et seq.; 29 C.F.R. § 2510.3-1(b)(2).

8. Upon information and belief, the Company established the Plan which in turn provided a salary continuation program for the benefit of its employees, including Plaintiff, in the event they become disabled.

*Venue*

9. Venue is proper in Maricopa County, Arizona. Plaintiff worked for the Company in Maricopa County, Arizona. The Company breached its obligations and Plaintiff's resulting damages occurred in Maricopa County, Arizona.

10. The Company, Committee, DMS, the Plan and Plan Administrator conduct business within Maricopa County, Arizona and all events giving rise to this Complaint occurred within Maricopa County, Arizona.

*General Allegations*

11. The Plan is an express written contract between the Company and its employees to provide certain employee benefits. At all relevant times hereto, Plaintiff was an employee and covered by the Plan. Plaintiff seeks STD benefits from the Plan as well as any other non-disability income employee benefits she may be entitled to from the Plan and/or any other Company Plan as a result of being found disabled in this action.

12. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 13, 2015. Due to her serious medical conditions, Plaintiff has been unable to work in her designated occupation as a MB Customer Assistance Specialist since October 13, 2015 and has remained continuously disabled as that term is defined in the Plan since that date.

3

13.     Following her October 13, 2015 disability date, Plaintiff applied for STD benefits under the relevant Plan.  According to the Plan, the definition of "Disability" is as follows:

>   "A period of illness or injury that continues for eight or more consecutive calendar days during which you are unable to perform the material and substantial duties of your position on an active employment basis."

14.     In support of her claim for STD benefits, Plaintiff submitted to DMS medical records from her treating physicians that supported her allegation that she met the Plan's relevant definition of disability.

15.     In a September 22, 2015 medical record Plaintiff's treating physician confirmed, "Plaintiff is considered worse."

16.     DMS initially approved Plaintiff's claim for short-term disability benefits and Plaintiff was paid benefits from October 13, 2015 through November 29, 2015, when her disability benefits were terminated without any credible medical documentation proving that her condition had improved in a way that would have allowed her to return to work.

17.     In a letter dated December 11, 2015, the Company notified Plaintiff DMS had reviewed her claim and determined benefits were not payable beyond November 29, 2015.

18.     Plaintiff timely appealed DMS' December 11, 2015 termination of her STD benefits and, in support of her claim, Plaintiff submitted additional medical evidence which demonstrated that she met the definition of disability set forth in the Plan.

19.     Plaintiff submitted to the Committee (who administers short-term disability claims at the final level of review), a November 20, 2015 medical questionnaire completed by her treating medical provider who marked "yes" when asked whether, "…the employee remains unable to work at this time."

4

20. As part of its review of Plaintiff's claim for short-term disability benefits, the Committee obtained a medical records only "paper review" of Plaintiff's claim from a physician named Warren R. Taft, M.D., who is a consulting physician for Reliable Review Services (hereinafter referred to as "RRS").

21. Upon information and belief, Plaintiff asserts Dr. Taft may be a long time medical consultant for the disability insurance industry, RRS, DMS and/or the Committee. As a result, Plaintiff asserts Dr. Taft may have an incentive to protect his own consulting relationship(s) with the disability insurance industry, RRS, DMS and/or the Committee by providing medical records only paper reviews, which selectively review, ignore and minimize evidence of disability such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to DMS and/or the Committee and/or other disability insurance companies, and which supported the denial of Plaintiff's short-term disability claim.

22. Prior to its final denial, the Committee never shared with Plaintiff the report authored by Dr. Taft so she could have an opportunity to respond to it.

23. In a letter dated July 15, 2016, the Company notified Plaintiff her claim had been reviewed by the JPMorgan Chase Short-Term Disability Plan Appeals Committee and her claim for short-term disability benefits had been denied. The Company informed Plaintiff in its July 15, 2016 denial letter that the Committee's decision was final and that she had exhausted her administrative remedies.

24. Plaintiff provided DMS and the Committee with sufficient evidence to prove that she met the specific terms of the Plan in order to be found disabled and entitled to STD benefits. Plaintiff alleges that her evidence was repeatedly ignored, de-emphasized and minimized by DMS and the Committee when they denied her claim.

25. Upon information and belief, in addition to STD benefits, by virtue of meeting the Plan's definition of disability, Plaintiff may also be entitled to other non-disability income employee benefits pursuant the terms of the Plan or any other Company Plan.

26. At the time of filing this Complaint, Plaintiff is not in a position to know whether any other employee benefits may be available to her in the event she is found disabled.

## I.    *Breach of Contract*

27. All previous paragraphs are incorporated herein by reference.

28. The Plan states that Plaintiff is entitled to the continuation of her wages at a certain amount if she meets the Plan's definition of disability.

29. Plaintiff has submitted documentary evidence that is sufficient to prove that she met the definition of disability, and any other terms set forth in the Plan from October 13, 2015 through the entire STD period, which exhausted on April 12, 2016.

30. DMS and the Committee's failure to find that Plaintiff was disabled pursuant to the Plan and failure to pay her the benefits she was entitled to is a breach of Defendants' contractual duty under the Plan.

31. As a direct result of Defendants' breach of the Plan, Plaintiff has been injured and suffered damages in the form of lost STD benefits.

32. As a further result of Defendants' breach of the Plan, in addition to Plaintiff's loss of STD benefits, she may have lost other potential non-disability income employee benefits she was entitled to from the Plan, from any other Company Plan and/or the Company itself as a result of being found disabled.

33.     As a result of Defendants' breach of the Plan, Plaintiff is entitled to recover unpaid STD benefits and any other non-disability employee benefits, prejudgment interest and reasonable attorney's fees and costs pursuant to A.R.S. § 12-341.01 from Defendants.

## II.     Unpaid Wage Claim pursuant to A.R.S. §23-355

34.     All previous paragraphs are incorporated herein by reference.

35.     The Company is an employer under Arizona law and is subject to the wage laws of the State of Arizona.

36.     Plaintiff was an employee of the Company as defined in the Plan and under Arizona law.

37.     Under the Plan covering the Plaintiff and administered by the Defendants, the Company agreed to pay her wages in the form of disability benefits if she met the definition of disability and any other relevant terms set forth in the Plan.

38.     Plaintiff had a reasonable expectation under the Plan that she would receive disability benefits and any potential non-disability employee benefits if she met the definition of disability and any other relevant terms in the Plan.

39.     The Company and/or the Plan failed to pay Plaintiff the wages to which she is entitled to under the Plan in violation of Arizona wage law, specifically A.R.S. §23-355.

40.     Plaintiff has suffered damages as a direct result of the Company and/or the Plan's failure to pay her wage continuation payments.

41.     Pursuant to A.R.S. §23-355 Plaintiff is entitled to treble damages of the amount of wrongfully withheld wages.

7

42.     Plaintiff is also entitled to compensatory damages as well as her attorney's fees and costs pursuant to A.R.S. § 12-341.01, and other damages to be proven at trial.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     That Defendants breached the terms of the Plan and that Plaintiff met the definition of disability and any other relevant terms set forth in the Plan from October 13, 2015 through the entire duration of the STD period;

B.     That Defendants are required to pay Plaintiff the remaining STD benefits that are owed, and any other non-disability income employee benefits she may be entitled to from the Defendants as a result of being found disabled pursuant to the Plan, or pursuant to any other Company Plan, from October 13, 2015 through the end of the STD period;

C.     That Plaintiff is entitled to pre and post-judgment interest on the wrongfully denied STD benefits;

D.     That Defendants are required to pay Plaintiff the wages to which she is entitled to under the Plan, as well as treble damages on the amount of Plaintiff's unpaid wages under A.R.S. §23-355;

E.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to A.R.S. § 12-341.01; and

F.     For such other and further relief as the Court deems just and proper.

DATED this 7th day of December, 2016.

SCOTT E. DAVIS, P.C.

By: _____
Scott E. Davis
Scott M. Harris
Attorneys for Plaintiff

8

# EXHIBIT D

Jim Mackie, SBN 013314
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., SBN 00504800
3430 E. Sunrise Drive, Suite 220
Tucson, AZ 85718
Telephone: 520.544.0300
Fax: 520.544.9675
jim.mackie@ogletreedeakins.com

Attorneys for Defendants

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Elizabeth Stone,<br><br>          Plaintiff,<br><br>vs.<br><br>JPMorgan Chase Short-Term Disability Plan; JPMorgan Chase & Company; JPMorgan Chase Short-Term Disability Plan Appeals Committee; JPMorgan Chase Disability Management Services,<br><br>          Defendants. | No. CV2016-055000<br><br>**NOTICE OF FILING NOTICE OF REMOVAL** |

TO:    Scott E. Davis, Esq.
          Scott M. Harris, Esq.
          Scott E. Davis, P.C.
          8360 Raintree Dr., Suite 140
          Scottsdale, AZ 85260

        Please take notice that on January 13, 2017 Defendants filed a Notice of Removal, a copy of which is attached hereto, of the above-entitled action from the Superior Court, Maricopa County, Arizona, to the United States District Court for the District of Arizona.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
3430 E. SUNRISE DRIVE, SUITE 220
TUCSON, AZ 85718
TELEPHONE: 520.544.0300

DATED this 13th day of January, 2017.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: s/ Jim Mackie
Jim Mackie, SBN 013314
3430 E. Sunrise Dr., Suite 220
Tucson, AZ 85718
Ph.: (520) 544-0300
Fax: (520) 544-9675
jim.mackie@ogletreedeakins.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2017, I electronically filed the attached document.

AND a copy of the foregoing document
was served by Firsts Class Regular Mail
this same day on:

Scott E. Davis, Esq.
Scott M. Harris, Esq.
Scott E. Davis, P.C.
8360 Raintree Dr., Suite 140
Scottsdale, AZ 85260

By: s/ Carol A. Essig

26861207.1